**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE KIROMIC BIOPHARMA INC., SECURITIES LITIGATION | Case No. 1:22-cv-06690 (JHR) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

i

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL AND PROCEDURAL HISTORY .........................................................2

III. ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ................................3

    A. Numerosity.............................................................................................................4

    B. Commonality.........................................................................................................5

    C. Typicality ..............................................................................................................6

    D. Adequacy ..............................................................................................................7

        (i) Adequacy of the Proposed Class Representatives ............................................7

        (ii) Rule 23(g) Adequacy of the Proposed Class Counsel ......................................8

    E. Common Questions Predominate and the Class Is
       Superior to Other Methods of Adjudication ..................................................................8

        (i) Common Questions of Law or Fact Predominate.............................................9

        (ii) A Class Settlement is Superior to
           Alternate Methods of Adjudication .................................................................10

IV. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR
     THIS COURT TO GRANT PRELIMINARY APPROVAL...........................................12

    A. Standards for Preliminary Approval ......................................................................12

    B. Adequacy of Representation..................................................................................14

    C. Existence of Arm's-Length Negotiations..................................................................15

    D. Adequacy of Relief...............................................................................................16

    E. Equitableness of Treatment of Class Members ......................................................18

    F. Remaining *Grinnell* Factors ...............................................................................18

    G. The Settlement Has No Obvious Deficiencies ......................................................19

V.     THE PROPOSED NOTICE TO
       CLASS MEMBERS SATISFIES RULE 23(C)(2)(B) ........................................................20

VI.    PROPOSED SCHEDULE OF EVENTS.........................................................................23

VII.   CONCLUSION ............................................................................................................25

## TABLE OF AUTHORITIES

*Amchem Products, Inc., v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... *passim*

*Aranaz et al. v. Catalyst Pharmaceutical Partners Inc.*,
  1:13-cv-23878-UU (S.D. Fl. 2014)..........................................................................17

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) *cert. denied*, 429 U.S. 816 (1976)......................................5

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...............................................................13, 16, 17, 18

*Cohen et al. v. Kitov Pharmaceuticals Holdings LTD., et al.*,
  No. 1:17-cv-00917-LGS (S.D.N.Y. 2019)...............................................................17

*Consol. Edison, Inc. v. Ne. Utils.*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004).....................................................................21

*Consolidated Raid Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)........................................................................................4

*Cordes & Co. Fin. Servs. V. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)......................................................................................14

*CV Reit, Inc. v. Levy,*
  144 F.R.D. 690 (S.D. Fla. 1992).................................................................................7

*Eisen v. Carlisle & Jacqueline*,
  417 U.S. 156 (1974)..................................................................................................22

*Fogarazzo v. Lehman Bros.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) ..............................................................................4, 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)......................................................................................6

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982).................................................................................................10

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968).......................................................................................5

*Haynes v. Logan Furniture Mart, Inc.*,

503 F.2d 1161 (7th Cir. 1974) ........................................................................................10

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..................................................................18

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)...........................................................................15

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)..........................................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
  2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) .......................................12, 14

*In re Deutsche Telekom AG Sec. Litig.*,
  229 F. Supp. 2d 277 (S.D.N.Y. 2002)........................................................................5, 10

*In Re Dynex Capital, Inc. Secs. Litig.*,
  2011 U.S. Dist. LEXIS 22484 (S.D.N.Y. Mar. 7, 2011) .........................................5, 6

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................................4, 5, 6, 7

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................19

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)......................................................................12, 19

*In re HealthSouth Corp. Secs. Litig.*,
  261 F.R.D. 616 (N.D. Ala. 2009).....................................................................................6

*In re Medical X-Ray Film Antitrust Litig.*,
  1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ...........................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................13, 19

*In Re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................12, 16

*In re Priceline.com Inc. Sec. Litig.*,
  236 F.R.D. 89 (D. Conn. 2006)....................................................................................10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................................19

iv

*In re TikTok, Inc. Consumer Privacy Litig.,*
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ....................................................................7, 10

*Tyson Foods, Inc. v. Bouaphakeo,*
  577 U.S. 442 (2016) ...............................................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.,*
  242 F.R.D. 76 (S.D.N.Y. 2007) ...........................................................................4, 6

*Karvaly v. eBay, Inc.,*
  245 F.R.D. 71 (E.D.N.Y. 2007) ..............................................................................14

*Kelen v. World Fin. Network Nat'l Bank,*
  302 F.R.D. 56 (S.D.N.Y. 2014) ..............................................................................12

*Krangel v. Golden Rule Resources, Ltd.,*
  194 F.R.D. 501 (E.D. Pa. 2000) ........................................................................ 22-23

*Leung v. Home Boy Rest. Inc.,*
  2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ...........................................................15

*Marisol v. Guiliani,*
  126 F.3d 372 (2d. Cir. 1997) ...................................................................................7

*Mullane v. Central Hanover Central Bank & Trust Co.,*
  339 U.S. 306 (1950) ...............................................................................................22

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) .....................................................................................4

*Shapiro v. JPMorgan Chase & Co.,*
  2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014) .........................................21

*Silver v. 31 Great Jones Rest.,*
  2013 WL 208918 (S.D.N.Y. Jan. 4, 2013) ..............................................................12

*Smilow v. S.W. Bell Mobile Sys. Inc.,*
  323 F.3d 32 (1st Cir. 2003) .......................................................................................9

*Teachers' Retirement Sys. of Louisiana v. ACLN Ltd.,*
  2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ...........................................................5

*Vargas v. Capital One Fin. Advisors,*
  559 Fed. Appx. 22 (2d Cir. 2014) ..........................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)....................................................................................12, 15

*Whiteley, et al. v. Zynerba Pharmaceuticals, Inc., et al.*,
  No. 2:19-cv-04959-NIQA (E.D. Pa. 2022).................................................................17

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)............................................................12

## Statutes

Fed. R. Civ. P. 23(a) ........................................................................................ *passim.*

Fed. R. Civ. P. 23(b) ........................................................................................ *passim.*

Fed. R. Civ. P. 23(e) ........................................................................................ *passim.*

Fed. R. Civ. P. 23(g) ..............................................................................................7, 8

15 U.S.C. § 78u-4(a)(7) .....................................................................................19, 21

## Other Material

7A Wright, Miller & Kane,
  Federal Practice and Procedure: Civil 2d, § 1788 at 528 (1986) ...................................9

4 H. Newberg & A. Conte,
  Newberg on Class Action (4th ed. 2002)...................................................................12

5 James Wm. Moore,
  Moore's Federal Practice (3d ed. 2002)....................................................................12

Newberg on Class Actions § 3.10 (4th) .......................................................................5

## I.    INTRODUCTION

Lead Plaintiffs Ronald H. Karp, Ari Karp, and Ethan Karp (collectively, "Lead Plaintiffs" or "Plaintiffs"), respectfully submit this memorandum in support of Lead Plaintiffs' Motion for Preliminary Approval of the proposed global settlement documented in the Stipulation of Settlement entered into with Defendant Kiromic Biopharma, Inc. ("Kiromic") dated September 29, 2023 (the "Settlement" or "Stipulation"), filed with the Court herewith.[1]  Pursuant to the Stipulation, Lead Plaintiffs move the Court for an order (1) preliminarily certifying the Settlement Class for the purposes of settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement to the Settlement Class; and (4) scheduling a Final Approval Hearing at which the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds, the request for attorneys' fees, legal expenses and case contribution awards, and entry of the Final Judgment will be considered.

In preliminarily approving the Settlement, this Court must satisfy itself that the above-captioned action (the "Action") may proceed as a class action.  Upon satisfying itself that the Action is appropriate for class action status, the Court must then approve the form, content, and means of notifying the preliminarily certified Settlement Class of the existence of the Action and of the terms of the Settlement.  The Court must then set deadlines for Plaintiffs' Lead Counsel to disseminate and publish the various notice documents, for Settlement Class Members to either opt-out of the Settlement Class, object to the terms of the Settlement, and/or file their Proof of Claim Form.  Lastly, the Court must set a date for the Final Approval Hearing to determine whether it will give final approval to the Settlement as fair, reasonable, and adequate.  Thus, at this stage, the

---

[1]    Unless otherwise defined, all terms set forth herein shall have the same meaning as the terms in the Stipulation.

Court need not engage in a detailed analysis of the fairness of the Settlement, as that is reserved for the hearing on final approval, at which time interested Settlement Class Members shall be heard on the matter.

## II.      FACTUAL AND PROCEDURAL HISTORY

On August 5, 2022, Plaintiff Ronald Karp filed a complaint on behalf of himself and a putative class against Defendants alleging violations of the Securities Act and Exchange Act in the Southern District of New York, in the case captioned *Karp v. Kiromic BioPharma, Inc., et al*., Case No. 1:22-cv-6690-VM.  Subsequently, on October 3, 2022, another plaintiff, Joseph Podmore, filed a similar action in the Southern District of New York concerning these same allegations in the case captioned *Podmore v. Kiromic BioPharma, Inc., et al*., Case No. 1:22-cv-08433.  On October 27, 2022, the Court consolidated all related cases into this Action, appointing Ronald Karp, Ari Karp, and Ethan Karp as Lead Plaintiffs and the law firm of Gainey McKenna & Egleston as Lead Counsel. *See* ECF Nos. 1, 23, 37.

Lead Plaintiffs alleged that Kiromic and certain named officers and directors of Kiromic, along with ThinkyEquity LLC, violated the securities laws in making, or allowing to be made, false and/or misleading statements and material omissions in the Company's June 5, 2021 Registration Statement and June 29, 2021 Final Prospectus (together, "Offering Documents") and in other public statements.  Among other things, Lead Plaintiffs alleged that the Defendants (i) failed to disclose in their Offering Documents that the FDA had imposed a clinical hold on Kiromic; and (ii) in fact published statements in the Offering Documents and in other public statements indicating that the FDA had not imposed a clinical hold, which, when revealed as false, ultimately caused the Company's share price to fall, causing damage to Lead Plaintiffs and Settlement Class Members.

2

On February 6, 2023, certain parties entered into a stipulation adjourning all case deadlines for a 45-day period, during which time period those parties engaged in settlement discussions. Lead Plaintiffs and Kiromic made progress towards settlement in that period and agreed to extend the adjournment period on March 20, 2023 and once again on May 4, 2023, in order to engage in continued settlement discussions. Both of these agreements were so-ordered by the Court on April 5, 2023 and May 5, 2023, respectively. *See* ECF Nos. 48 and 50.

On August 7, 2023, following continued extensive, arms-length settlement discussions, Lead Plaintiffs, through their counsel, wrote to the Court to inform the Court that a global settlement in principle of the Action had been reached, which needed to be documented and memorialized in a Stipulation of Settlement and its accompanying exhibits. The Court then stayed the proceedings and ordered on August 8, 2023 that the parties submit the necessary papers seeking preliminary approval of the proposed settlement by September 22, 2023. *See* ECF No. 52. That deadline was extended to September 29, 2023. ECF No. 54.

Lead Plaintiffs and Kiromic agreed to a settlement amount of Two Million Three Hundred Thousand Dollars ($2,300,000) to resolve Lead Plaintiffs' claims, to be paid in installments over time, with the last installment payment due on or before June 1, 2024. To date, Kiromic has made four installment payments totalling $640,000.00, all being held in the interest-bearing Escrow Account.

## III.  ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

In deciding whether to preliminarily approve the proposed Settlement, this Court should first consider whether to conditionally to certify the proposed Settlement Class. *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues

in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

While the ultimate decision to certify the class is not made until the final approval hearing, during the preliminary approval stage, "the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Advisory Committee Note to Subdivision (e)(1). To proceed as a class action, Lead Plaintiffs must satisfy the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, at least one of the three requirements of Rule 23(b) must be met. Fed. R. Civ. P. 23(b). Here, the proposed Settlement Class meets the requirements of both Rule 23(a) and Rule 23(b).

### A.    Numerosity

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Impracticable," however, does not mean "impossible," as "joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consolidated Raid Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). In this case, although the exact size of the proposed

4

Settlement Class is not yet known, there are mostly likely at least hundreds or thousands of members in the proposed class. In fact, according to the Company's quarterly reports filed with the SEC on Form 10-Q during the Class Period, the Company had over 15,000,000 shares of common stock outstanding, approximately double the number of shares outstanding in the month before the Class Period begins. Thus, the numerosity requirement is met.

### B. Commonality

The commonality element of Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *EVCI,* 2007 WL 2230177 at *13. In a securities class action like this one the commonality requirement "is applied permissively." *Id*. Commonality is "not defeated by slight differences in class members' positions," *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976), or because "all of the allegations of the class do not fit together like pieces in a jigsaw puzzle." *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968); *see also In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *5 (S.D.N.Y. Mar. 7, 2011) ("Class certification will not necessarily be precluded by differing individual circumstances of class members"); *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members"). The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. Therefore, this requirement is easily met in most cases. *Newberg on Class Actions* § 3.10 (4th).

Here, there are common questions of law and fact pertaining to whether false statements and/or omissions of material fact were made in the Company's Offering Documents and other public statements, whether Defendants' acts violated federal securities laws, and what the proper

measure of damages is.  Thus, commonality is easily met.  *See*, *e.g.*, *Teachers' Retirement Sys. of Louisiana v. ACLN Ltd.*, 2004 WL 2997957, at \*4 (S.D.N.Y. Dec. 27, 2004) (commonality is satisfied when it is alleged that class members have been injured by the same fraudulent scheme.).

### C.     Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the Members of the Settlement Class.  A representative's claim is typical if each Settlement Class Member's claim arose from the same course of conduct and is based on the same legal theories.  However, "typical" does not mean identical.  *EVCI*, 2007 WL 2230177 at \*13; *see also In re Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims.  Such allegations are generally considered sufficient to satisfy the typicality requirement").  As with the commonality requirement, the typicality requirement is not demanding.  *In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at \*8; *see also In re HealthSouth Corp. Secs. Litig.,*, 261 F.R.D. at 627 (N.D. Ala. 2009) ("Typicality generally presents a low burden that is easily satisfied").

The heart of this requirement is that Lead Plaintiffs and each member of the proposed Settlement Class have an interest in prevailing on similar legal claims.  Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical.  *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Lead Plaintiffs are the proposed class representatives in this Action.  Lead Plaintiffs purchased Kiromic common stock during the Class Period between June 25, 2021 and February 2, 2022, pursuant and/or traceable to the Offering Documents and on the open market, exactly as the

6

proposed Settlement Class Members did.  Lead Plaintiffs were also subsequently damaged by the alleged wrongdoing of Defendants in the same way as the proposed Settlement Class and thus seek the same recovery as the proposed Settlement Class.  Lead Plaintiffs have the same interest in prevailing on not just similar, but the exact same claims as the proposed Settlement Class.

Accordingly, typicality is satisfied as to both groups of purchasers within the proposed Settlement Class: (i) Offering Document purchasers and (ii) open market purchasers.

### D.    Adequacy

Rule 23(a)(4) requires "the representative party will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement has traditionally entailed a two-pronged inquiry: (1) the representatives must show that the interests of the representative parties will not conflict with the interests of the class members, and (2) that counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation.  *EVCI*, 2007 WL 2230177 at *13; *see also In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021) ("*TikTok I*") (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)).

The requirement of adequacy "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol v. Guiliani*, 126 F.3d 372, 378 (2d. Cir. 1997).  Pursuant to Federal Rule of Civil Procedure 23(g), adequacy of class counsel is now considered separately from the determination of the adequacy of the class representatives. In any event, both prongs of the adequacy requirement are satisfied here.

(i)    **Adequacy of the Proposed Class Representatives**

7

The proposed Settlement Class representatives – Lead Plaintiffs – have no interests that are antagonistic to those of the members of the proposed Settlement Class. The Lead Plaintiffs purchased Kiromic common stock during the Class Period. The Lead Plaintiffs are seeking on their own behalf and on behalf of all members of the Settlement Class, to recover from Defendants the damages caused by Defendants' unlawful conduct. The representatives' interests are therefore congruent with and not antagonistic to other Settlement Class Members' interests.

### (ii)     Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed Lead Counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g); *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel is experienced in prosecuting class actions as class counsel and/or lead counsel, having successfully prosecuted class actions in courts throughout the country. Courts have consistently found Lead Counsel, Gainey McKenna & Egleston, to be well suited as class counsel in stockholder class actions, as demonstrated by Lead Counsel's firm résumé, attached as Exhibit 2 to the Declaration of Thomas J. McKenna in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("McKenna Decl.").

### E.      Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), Lead Plaintiffs must establish that the proposed Settlement Class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that:

> The questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  Here, Lead Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3).

### (i)      Common Questions of Law or Fact Predominate

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.  It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "When one or more of the central issues in the action are common to the class and can be said to predominate, that action may be considered proper under Rule 23(b)(3)." *Id.*

Moreover, it is well established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability.  Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Smilow v. S.W. Bell Mobile Sys. Inc.*, 323 F.3d 32, 40 (1st Cir. 2003).  When common questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate.  *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (1986).  "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39.  Rule 23(b)(3) is satisfied by "quintessential securities fraud class action[s]" such as this one because there exists "[a]n enormous group of potential plaintiffs" seeking to recover damages and "[t]he focus of the litigation is on defendants' conduct" and "defendants' potential liability." *In re*

*Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 101-02 (D. Conn. 2006); *see also In re Deutsche Telekom*, 229 F. Supp. 2d at 282 ("Courts have recognized that class actions are generally appropriate when plaintiffs seek redress for violations of the securities laws").

In the instant Action, the existence of common questions and their predominance over individual issues are exemplified by the fact that if every Settlement Class Member were to bring an individual action, each plaintiff would be required to demonstrate the same omissions or misrepresentations to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 421 U.S. at 625.

### (ii)    A Class Settlement is Superior to Alternate Methods of Adjudication

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Superiority is met where, like here, "it is improbable that many 'would possess the initiative to litigate individually.'" *Tiktok I*, 565 F. Supp. 3d at 1086 (quoting *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974); *see also Amchem Prods. Inc.*, 521 U.S. at 617; *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").

Factors relevant to a finding of superiority include:

> (a)    the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (b)    the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;
>
> (c)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (d)    the difficulties likely to be encountered in the management of a class action.

10

Fed. R. Civ. P. 23(b)(3).

In the present case, class treatment is inarguably superior to other methods of adjudication. Many, if not most, of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. Additionally, with potentially hundreds, if not thousands, of Class Members, the maintenance of individual lawsuits by Settlement Class Members would be cost-prohibitive, an inefficient use of individual resources, and simply impractical. *See Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of … groups of people whose individual claims would be too small to warrant litigation").

Class certification will enable a large number of Kiromic shareholders to adjudicate their common claims in a single forum simultaneously, effectively, and efficiently, without the duplication of effort or expense, or the burden on judicial resources, that numerous individual actions would involve. The class action vehicle further provides the Settlement Class Members with the opportunity for a relatively expeditious resolution as opposed to continued protracted litigation. Moreover, the class action vehicle will enable a greater number of Kiromic shareholders to rightly benefit from the action and its resolution than if they were to institute individual proceedings as many of the Settlement Class Members may not have the means or ability to institute or manage such litigation. Thus, the class action vehicle provides a superior means to resolve this controversy efficiently and effectively for the benefit of all Settlement Class Members.[2]

---

[2] As provided in the Proposed Order Granting Preliminary Approval of the Settlement, Lead Plaintiffs move for class certification solely for purposes of Settlement. Defendants preserve each and every defense and right with respect to class certification and waive none.

11

**IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL**

**A.    Standards for Preliminary Approval**

It is within a district court's discretion to approve proposed class action settlements. *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11:53, at 167 (4th ed. 2002)). Lead Plaintiffs, Kiromic and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that these parties have chosen to settle. *See Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement. Review of a proposed settlement generally involves preliminary approval followed by a fairness hearing. *Silver v. 31 Great Jones Rest.*, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013). Under the standards of the 2018 amendments to Rule 23, a district court must consider whether the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i-ii)); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted). In making this determination, courts consider the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3)

adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). In addition to these four factors, courts in the Second Circuit also consider whether the settlement is fair, reasonable, and adequate under the nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[3] which overlap with Rule 23(e)(2)(C)–(D).

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

Nevertheless, preliminary approval does not require this Court to make an ultimate determination of whether the Settlement is fair, reasonable, and adequate. Rather, that determination is made after notice of the Settlement has been given to the members of the Settlement Class and after they have been given an opportunity to voice their views of the Settlement or to elect to be excluded from the Settlement Class. *See* 5 James Wm. Moore, *Moore's Federal Practice* ¶¶ 23.83[1], 23-336.2 to 23-339 (3d ed. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (At the preliminary approval stage, the court must only determine whether "[t]he settlements are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."). For this reason, if "the proposed settlement appears to be the product of serious, informed, non-collusive

---

[3]    The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these "*Grinnell*" factors. *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ("2018 Advisory Note").

negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval, preliminary approval" should be granted. *In re Currency Conversion Fee Antitrust Litig.*, 2006 U.S. Dist. LEXIS 81440, at \*13 (S.D.N.Y. Nov. 8, 2006); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) ("Preliminary approval of settlements should be given if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys' fees") (quoting *In re Medical X-Ray Film Antitrust Litig.*, 1997 WL 33320580, at \*6 (E.D.N.Y. Dec. 26, 1997)).

Accordingly, at this stage of the settlement process, the Court conducts only a preliminary evaluation to determine whether the proposed Settlement falls within the reasonable range of possible final approval.

### B.    Adequacy of Representation

As discussed above in relation to class certification, "[d]etermination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted).

Here, Lead Plaintiffs have no interests that are antagonistic to those of the members of the proposed Settlement Class. As noted above, Lead Plaintiffs purchased Kiromic common stock during the Class Period. Lead Plaintiffs are seeking, on their own behalf and on behalf of all members of the Settlement Class, to recover from Defendants the damages caused by the unlawful

14

conduct. The representatives' interests are therefore congruent with and not antagonistic to other Settlement Class Members' interests.[4]

Furthermore, as noted above, Lead Counsel is experienced in prosecuting class actions as class counsel and/or lead counsel, having successfully prosecuted class actions and stockholder cases in courts throughout the country. Courts have consistently found Lead Counsel, Gainey McKenna & Egleston, to be well suited as class counsel in class actions and stockholder cases, as demonstrated by Lead Counsel's firm résumé, attached as an Exhibit 2 to the McKenna Decl. Thus, adequacy of representation weighs in favor of preliminary approval.

### C.      Existence of Arm's-Length Negotiations

A presumption of fairness applies to a proposed class settlement that is the result of arm's length negotiations between counsel knowledgeable in complex class litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also Leung v. Home Boy Rest. Inc.*, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000) ("If the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.").

Here, the proposed Settlement for Two Million Three Hundred Thousand ($2,300,000) is the product of extensive negotiations that spanned the course of several months between experienced counsel, knowledgeable in complex class litigation after examining the strengths and

---

[4] As described further in the accompanying Stipulation of Settlement, Defendants neither admit nor deny allegations of securities law violations and have reserved their rights.

15

weaknesses in the parties' respective positions and the costs and benefits of continued litigation. These negotiations were at all times hard-fought, non-collusive and at arm's-length, and have produced a result that Lead Plaintiffs and Kiromic believe to be in their respective best interests, as averred by Lead Counsel in the McKenna Decl., filed herewith, at ¶¶ 5-8 confirming that all negotiations were at arms-length and free of any collusion.

### D.    Adequacy of Relief

In assessing the adequacy of a settlement under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible class-wide recoveries and the likelihood of success in obtaining such results." *In re Payment Card*, 330 F.R.D. at 36 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). This inquiry overlaps with the *Grinnell* factors of "complexity, expense, and likely duration of the litigation" along with "the risks of establishing liability," "the risks of establishing damages" and "the risks of maintaining a class through the trial." *See Grinnell*, 495 F.2d at 463.

Lead Plaintiffs faced significant litigation risks that are inherent with complex class litigation. Such risks involve the uncertainties with pre-litigation proceedings, class certification, summary judgment, a trial, and any appeals which could result in Lead Plaintiffs and the Settlement Class receiving no recovery. Lead Plaintiffs' expert has calculated the maximum damages attributable to the alleged wrongdoing according to a "plaintiff style" damages analysis to be approximately $22.7 million if all claims are sustained in full, to a low of $3.5 million under Rule 105-5 if damages for the shares issued in the Offering are not permitted. Kiromic has its own view of the potential damages which is, not surprisingly, much lower.

However, as Lead Plaintiffs note, the 'maximum damages' number is wholly contingent on all claims being sustained in full. Indeed, Lead Plaintiffs acknowledge the risk that the Court could

find damages recoverable for some claims but not others, thus lowering the overall damages recoverable by a significant amount.  Not only are these estimated damages incredibly uncertain and subject to various factors, but any one of them being unsuccessful at any stage of the litigation would reduce the recoverable damages for the Settlement Class by millions of dollars.

Defendants have denied and continue to deny that the proposed Settlement Class suffered any damages at all. Lead Plaintiffs acknowledge that at trial, recoverable damages could be significantly less if the Court were to determine that some part of the alleged stock decline was attributable to other factors than those alleged, as Defendants would likely argue.  Indeed, as stated above, Lead Plaintiffs recognize that the potential damages recoverable is wide, uncertain, and wholly dependent on being able to sustain each and every claim in its fullest throughout the pendency of risky litigation.  Thus, the certain and instant relief of $2,300,000 is an excellent outcome for Lead Plaintiffs and the Settlement Class and is certainly within the range of possible approval. *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")

Moreover, this Settlement is in line with other class action settlements against similar pharmaceutical companies for violations of federal securities laws, thus weighing in favor of this Settlement amount being fair, adequate, and reasonable. *See e.g. Cohen, et al. v. Kitov Pharmaceuticals Holdings LTD., et al.*, No. 1:17-cv-00917-LGS (S.D.N.Y. 2019) ($2,000,000), attached to the McKenna Decl. as Exhibit 4; *Aranaz, et al. v. Catalyst Pharmaceutical Partners Inc., et al.*, 1:13-cv-23878-UU (S.D. Fl. 2014) ($3,500,000), attached to the McKenna Decl. as Exhibit 3; *and Whiteley, et al. v. Zynerba Pharmaceuticals, Inc., et al.*, No. 2:19-cv-04959-NIQA (E.D. Pa. 2022) ($4,000,000), attached to the McKenna Decl. as Exhibit 5.

With the potential recovery being so wide and uncertain, and the Settlement amount falling within the range of similar cases, this factor clearly supports the Settlement that secures certain relief, avoids the additional costs of continued litigation, and will confer substantial benefits upon the Settlement Class. Thus, the relief here is fair, reasonable, and adequate.

### E.    Equitableness of Treatment of Class Members

Rule 23(e)(2)(d) finally requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P 23(e)(2)(D). Here, the Claims Administrator will calculate the recognized losses of each Authorized Claimant who timely submits a Proof of Claim Form and Lead Plaintiffs will thereafter request the Court to approve the distribution of the Net Settlement Fund to Authorized Claimants pursuant to the proposed Plan of Allocation, attached to the Stipulation as Exhibit F.  Each Authorized Claimant shall be treated equitably and, as such, the Settlement is sufficiently fair, reasonable, and adequate to warrant preliminary approval.

### F.    Remaining *Grinnell* Factors

The *Grinnell* factors not expressly assessed under Rule 23(e)(2)(C)(i) include "[] the reaction of the class to the settlement; [] the stage of the proceedings and the amount of discovery completed; . . . [] the ability of the defendants to withstand a greater judgment; [] the range of reasonableness of the settlement fund in light of the best possible recovery; and [] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell,* 495 F.2d at 463. Each of these remaining factors favor the preliminary approval of the Settlement.

First, Lead Plaintiffs and Kiromic favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued.  Second, Lead Plaintiffs "have

18

obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc*., 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).  Third, given Kiromic's early status as a public corporation attempting to take an experimental drug to market, it is unknown whether Kiromic could potentially withstand a greater judgment than the proposed Settlement Amount. This fact "does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re Global Crossing Sec. and ERISA Litig*., 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (internal quotation marks omitted).  Finally, in considering the Settlement in light of the best possible recovery and the risks of litigation, the Settlement provides adequate recovery for the Class, not only through its monetary value, but also through the cooperation of Kiromic in making reasonable efforts to provide to Lead Counsel, at no cost to Lead Plaintiffs or the Settlement Class, transfer records for purchases and acquisitions of the Company's common stock during the Class Period, thus assisting with the identification of potential Class Members.  *See In re GSE Bonds*, 414 F. Supp. 3d at 697 ("[Deutsche Bank] has offered cooperation which has added significant value to its settlement agreement").

## G.    The Settlement Has No Obvious Deficiencies

As a further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval.  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  In all key respects, the terms embodied in the Settlement Stipulation are customary in nature.  Specifically, Lead Plaintiffs' recovery from the Settlement Amount will be determined according to precisely the same formula as the recoveries of other Settlement Class Members, with the exception of any reimbursement to the Lead Plaintiffs of the burden incurred in representing the Settlement Class and so approved by the Court, as contemplated by 15 U.S.C. §78u-4(a)(4).  *See NASDAQ*, 176 F.R.D. at 102 (settlement

19

may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives …").  The proposed Plan of Allocation sets forth a formula for the compensation of purchasers of Kiromic common stock that is fair to each under the factual circumstances.  In particular, the Plan of Allocation, attached as Exhibit F to the Stipulation, provides that the Claims Administrator "shall determine each Authorized Claimant's *pro rata* share of the Net Cash Settlement Amount  based upon each Authorized Claimant's Recognized Loss" (defined therein) and provides the specific calculations for the separate claims to fairly adjust the allocated shares based on when the Authorized Claimants purchased Kiromic securities.

Additionally, the Settlement does not mandate excessive compensation for Plaintiffs' Counsel.  As set forth in the Notice, Plaintiffs' Counsel will apply for an award of no more than one-third (33 1/3%) of the gross Settlement Amount, as defined in the Stipulation filed herewith, and for reimbursement of their actual out-of-pocket litigation expenses. Any award of fees and expenses is further subject to Court approval.

Accordingly, on a review of all applicable factors, the Settlement is sufficiently fair, adequate, and reasonable and falls within the range of possible final approval and contains no obvious deficiencies, thus preliminary approval should be granted at this stage.

## V.   THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)

When a settlement is proposed, class notice must meet the requirements of both Rules 23(c)(2) and 23(e) of the Federal Rules of Civil Procedure.  *See In re Citigroup Inc. Sec. Litig.*,

965 F. Supp. 2d 369, 379-80 (S.D.N.Y. 2013). Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 Fed. Appx. 22, 26-27 (2d Cir. 2014) (finding delivery of notice by first class mail to be reasonable). In addition to being sent by an adequate delivery method, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.*; *Shapiro v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 37872, at *60 (S.D.N.Y. Mar. 21, 2014) ("Rule 23(e) requires notice that is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.").

Here, the Proposed Order for to preliminarily approve the Settlement ("Preliminary Approval Order"), which is attached as Exhibit A to the Stipulation, mandates that within 21 days of the Court's order preliminarily approving the Settlement (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form annexed to the Stipulation as Exhibit D, to be mailed by First-Class Mail to all Class Members who can be identified within a reasonable effort. For all Postcard Notices returned as undeliverable, the Claims Administrator shall use its best efforts to locate updated addresses. In addition, the Summary Notice, Exhibit to the Stipulation, will be published in *Investor's Business Daily* and released via

21

press release on a nation-wide press release service. The Claims Administrator shall also cause the long form Notice (Exhibit B), the Stipulation and its accompanying exhibits, the Preliminary Approval Order, and a copy of the Summary Notice and Postcard Notice to be posted on the Claims Administrator's website within 28 calendar days following the Notice Date (as defined in the proposed Preliminary Approval Order, Ex. A to the Stipulation). The proposed Notice provides detailed information concerning (a) the rights of Settlement Class Members, including the manner in which objections could be lodged; (b) the nature, history, and progress of the Action; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) a description of the proposed Plan of Allocation; (f) the fees and expenses to be sought by Plaintiffs' Counsel; and (g) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so.

Seven (7) calendar days after the Notice Date, the Claims Administrator shall cause the Summary Notice to be published once in *Investors' Business Daily*, and once over a national newswire service.

Class Counsel, through the Claims Administrator, shall also make all reasonable efforts to give Notice to nominees or custodians who held Kiromic securities during the Class Period as record owners but not as beneficial owners.

The content of the proposed Settlement and various forms of notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As well, the proposed plan of notice described above, specifically mailing, publication, press release and posting on a dedicated settlement website on the internet, satisfies the requirements of Rule 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *see also, Krangel v. Golden Rule Resources,*

*Ltd.*, 194 F.R.D. 501, 505 (E.D. Pa. 2000) ("The mailing of the notice to identifiable class members and major financial institutions and publication of the summary notice in *The Wall Street Journal* and *The Globe and Mail* was the best means practicable to notify class members and, thus, satisfies Rule 23.").

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs propose the following schedule of events leading to the Final Approval Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Deadline for Kiromic to make reasonable efforts to provide to Claims Administrator a list in electronic searchable form, containing the names and addresses of Settlement Class Members. | Seven (7) business days after the entry of the Preliminary Approval Order. |
| Deadline for Claims Administrator to mail a copy of the Postcard Notice to all Class Members. | Twenty-one (21) days after the entry of the Preliminary Approval Order. |
| Deadline for Claims Administrator to publish the Summary Notice in Investors' Business Daily and over a national newswire service. | Seven (7) calendar days after the Notice Date. |
| Deadline for the Settlement Stipulation and its exhibits, this Order, and a copy of the Summary Notice and Postcard Notice to be posted on the Claims Administrator's website. | Twenty-eight (28) calendar days after entry of the Preliminary Approval Order. |
| Deadline for Proofs of Claim and Release to be submitted by Class Members. | Ninety (90) calendar days after the Notice Date. |
| Final Hearing Date. | To be scheduled by the Court. |
| Deadline to submit all papers in support of the Settlement, Plan of Allocation, and any application by Lead Counsel for an award of attorneys' fees, costs, charges, and expenses. | Thirty-five (35) calendar days prior to the Final Hearing. |
| Deadline for Class Members to enter an appearance in the Action. | Twenty-one (21) calendar days prior to the Final Hearing. |
| Deadline for Class Members to submit a Request for Exclusion. | Twenty-one (21) calendar days prior to the Final Hearing. |
| Deadline for Class Members to file an objection to Final Approval. | Twenty-one (21) calendar days prior to the Final Hearing. |
| Deadline to file any reply papers in relation to the Settlement, Plan of Allocation, and any | Seven (7) calendar days prior to the Final Hearing. |

| Event | Deadline for Compliance |
|---|---|
| application by Lead Counsel for an award of attorneys' fees, costs, charges, and expenses. | |
| Deadline for Lead Counsel to serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing of Notice. | Seven (7) calendar days prior to the Final Hearing. |
| Deadline for Lead Counsel or the Claims Administrator to provide to Defendants' Counsel all copies of all Requests for Exclusion and any written revocation of Request for Exclusion. | Promptly upon receipt, but in any event, no later than seven (7) calendar days before the Final Hearing. |
| Deadline for Class Member who submitted a Request for Exclusion to submit to the Claims Administrator a written revocation of their Request for Exclusion. | No later than two (2) business days before the Final Hearing. |
| Date for the Court to determine whether the Plan of Allocation and any Fee and Expense Application should be approved. | At or after the Final Hearing. |

This schedule is similar to those used in numerous class action settlements and provides due process for the putative Settlement Class Members with respect to their rights concerning the Settlement.

The Court may schedule the Final Approval Hearing at least ninety (90) days after the service of CAFA Notice on the appropriate government officials in order for there to be sufficient time for the required events to occur: mailing the Postcard Notice, publishing the Summary Notice, posting the Notice and Proof of Claim and Release Form (Exhibit C to Stipulation ) on the Claims Administrator's website, together with copies of the Postcard Notice and Summary Notice, filing of the Proof of Claim Forms, and for submission of any requests for exclusion or objections, filing the motion in support of final approval of the Settlement and the Plan of Allocation, an application for attorneys' fees and reimbursement of expenses, and filing any reply papers in support of final approval.

## VII.    CONCLUSION

Counsel for Lead Plaintiffs and Kiromic have reached this Settlement following extensive discussions and arm's-length negations.  For all the above-stated reasons, Lead Plaintiffs request that the Court (1) certify the Settlement Class for the purposes of Settlement; (2) preliminarily approve the Settlement under the terms set forth in the Settlement Stipulation; (3) approve the various forms and manner of notice; and (4) set a Final Approval Hearing date for final approval of the proposed Settlement.

DATED: September 29, 2023

**GAINEY McKENNA & EGLESTON**

By:    */s/ Thomas J. McKenna*
          Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Fl.
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Counsel for Lead Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this on the 29th day of September 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Thomas J. McKenna</u>
Thomas J. McKenna