# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE KIROMIC BIOPHARMA, INC.

No. 1:22-cv-06690-JHR

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement, dated September 29, 2023 (the "Settlement" or "Stipulation")[1] in the above-captioned consolidated action (the "Action"), is entered into by and between: (i) Lead Plaintiffs Ronald H. Karp, Ari Karp, and Ethan Karp (collectively, "Lead Plaintiffs"), individually and on behalf of all other Settlement Class Members (as defined herein); and (ii) Defendant Kiromic Biopharma, Inc. ("Kiromic" or the "Company"), by and through their respective counsel. Lead Plaintiffs and Kiromic agree on behalf of their respective clients, and with respect to each other defendant – Maurizio Chiriva Internati, Tony Tontat, Gianluca Rotino, Pietro Bersani, Americo Cicchetti, Michael Nagel, Jerry Schneider ("Individual Defendants") and ThinkEquity LLC (collectively, with Kiromic and Individual Defendants, the "Defendants") – that this Stipulation is intended by Lead Plaintiffs and Kiromic (together, "the Parties") to fully, finally, and forever resolve, discharge, release, and settle the Released Claims, as defined below, subject to the approval of this Court and the terms and conditions set forth in this Stipulation.

**I.      SUMMARY OF CLAIMS AND PROCEDURAL HISTORY**

On August 5, 2022, Plaintiff Ronald Karp filed a complaint on behalf of himself and a putative class against Defendants alleging violations of the Securities Act of 1933 and the

---

[1] All capitalized words and terms that are not otherwise defined in text have the meaning to ascribed to them below in the section entitled "Definitions."

1

Securities Exchange Act of 1934 in the Southern District of New York. *See* No. 22 Civ. 6690, Dkt. No. 1 ("Karp Action").

On October 3, 2022, Joseph Podmore also filed a complaint on behalf of himself and a putative class against Defendants alleging substantially similar violations of the securities laws as Ronald Karp. *See* No. 22 Civ. 8433, Dkt. No. 1 ("Podmore Action").

Then, on October 4, 2022, both Lead Plaintiffs and Joseph Podmore filed competing motions to consolidate the cases, to be appointed as Lead Plaintiff, and for approval of their selection of Lead Counsel. *See* No. 22 Civ. 6690, Dkt. No. 8 and 12. Shortly thereafter on October 18, 2022, Lead Plaintiffs filed a Response to Joseph Podmore's Motion, *See Id.* at Dkt. No. 22, and Joseph Podmore filed a notice of non-opposition to Lead Plaintiffs' Motion. *See Id.* at Dkt. No. 23.

Following this, on October 27, 2022, United States District Judge Victor Marrero ordered the consolidation of the Karp Action and the Podmore Action and assigned the caption *In re Kiromic Biopharma Inc. Securities Litigation*, No. 1:22-cv-6690 to the Action. Judge Marrero further ordered Ronald Karp along with Ari Karp and Ethan Karp to serve as Lead Plaintiffs in the action and appointed Gainey McKenna & Egleston ("GM&E" or "Lead Counsel") as Lead Counsel. *See Id.* at Dkt. No. 31. Lead Plaintiffs then filed a Consolidated Complaint in this Action on December 21, 2022. *Id.* at Dkt. No. 37.

On February 6, 2023, certain Defendants and Lead Plaintiffs entered into a stipulation adjourning all case deadlines for a 45-day Adjournment Period, during which the Parties engaged in settlement discussions. The Parties made progress during that period and certain Defendants and Lead Plaintiffs agreed to extend the Adjournment Period on March 20, 2023, and once again on May 4, 2023, in order to engage in further settlement discussions. Both of these agreements were so-ordered by this Court on April 5, 2023 and May 5, 2023, respectively. *See Id.* at Dkt. Nos. 48 and 50.

2

On August 7, 2023, following extensive settlement discussions, Lead Plaintiffs, through their counsel, wrote to this Court on behalf of the Parties to inform the Court that the Parties had reached a global settlement in principle of the Action. This Court then stayed the proceedings and ordered on August 8, 2023 that the Parties submit the necessary papers seeking preliminary approval of the proposed settlement by September 22, 2023. *See Id.* at Dkt. No. 52. That deadline was extended to September 29, 2023.  ECF No. 54.

## II.    LEAD PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in this Action have merit and that the information developed to date supports their claims. Lead Plaintiffs and their counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals.

Lead Plaintiffs and Lead Counsel have also taken into account the inherent risks of litigation, especially in complex actions such as this, which result in uncertain outcomes, difficulties, and delays, in addition to the costs of continued litigation. Lead Plaintiffs and Lead Counsel are also mindful of the inherent problems of proof and the possible defenses to the securities law violations asserted in this Action. Lead Plaintiffs and Lead Counsel further considered the information uncovered in investigating this Action and during settlement discussions with Kiromic. Lead Plaintiffs and Lead Counsel believe that the settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class and is fair, reasonable, adequate, and in the best interests of Lead Plaintiffs and the Settlement Class.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants deny each and all of the claims alleged by Lead Plaintiffs and the Settlement Class in this Action. Defendants deny all claims of liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in this Action. Defendants deny, among other allegations, the allegations that Lead Plaintiffs and/or

the Settlement Class have suffered any economic loss or damage, allegations that Defendants made false and/or misleading statements and/or material omissions, allegations that Defendants engaged in conduct with any untoward intent or scienter, or that Lead Plaintiffs or the Settlement Class were harmed by the conduct alleged in this Action or that could have been alleged as part of this Action, among all other allegations alleged in this Action or that could have been alleged as part of this Action. Nor do Defendants believe that the claims and allegations alleged in this Action have been sufficiently pleaded to make out any claim against Defendants. Defendants believe that they acted properly at all times and that this Action is without merit. In addition, Defendants maintain that they have meritorious defenses to all claims and allegations alleged in this Action or that could have been alleged as part of this Action, including that any class could be certified in this Action, and expressly preserve each and every such defense and right. The foregoing paragraph is defined as "Defendants' Denials and Reservation of Rights".

Nonetheless, Defendants have concluded that continued litigation, with its inherent risks, would be protracted and expensive, and that it is desirable that this Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, without any concession by Lead Plaintiffs that this Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and the Settlement Class Members) and Kiromic, by and through their respective counsel and with respect to each other Released Party that, subject to the approval of this Court, this Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

4

## 1. Definitions

In addition to the terms that may be defined elsewhere in this Stipulation, the following terms as used in this Stipulation have the meanings specified below:

(a) "Action" means the civil case captioned *In re Kiromic Biopharma Inc. Securities Litigation*, No. 1:22-cv-6690, pending in the United States District Court for the Southern District of New York before the Honorable Judge Jennifer H. Rearden, United States District Judge.

(b) "Alternative Judgment" means a form of judgment with terms materially different from those set forth in the form of judgment that is attached hereto as Exhibit G.

(c) "Authorized Claimant" means a Settlement Class Member who submits a valid and timely Proof of Claim form that is approved for payment by the Claims Administrator or the Court.

(d) "Bar Order" means the language set forth at ¶ 15 of the Proposed Order and Final Judgment, attached hereto as Exhibit G.

(e) "Claim" means the submission to be made by any Settlement Class Member, on the Proof of Claim form attached hereto as Exhibit E, or as may be required by the Court.

(f) "Claims Administrator" means Strategic Claims Services, the firm retained by Lead Counsel, subject to Court approval, which shall mail and publish the various notices, process Proofs of Claim, and distribute the Net Settlement Fund to Authorized Claimants.

(g) "Class Period" means the period between June 25, 2021 and February 2, 2022, both dates inclusive, and subject to 15 U.S.C. § 78u-4(e)(1).

(h) "Court" means the United States District Court for the Southern District of New York and the Honorable Judge Jennifer H. Rearden, United States District Judge, or any successor Judge.

5

(i) "Defendants" means Kiromic Biopharma, Inc., Maurizio Chiriva-Internati, Tony Tontat, Gianluca Rotino, Pietro Bersani, Americo Cicchetti, Michael Nagel, Jerry Schneider, and ThinkEquity LLC.

(j) "Defendants' Denials and Reservation of Rights" is defined above.

(k) "Effective Date," or the date upon which this settlement becomes "effective," means the later of (i) the date of final payment as set forth in § 2, below, and (ii) the date of the Court's Final approval of the Settlement.

(l) "Escrow Account" means the segregated and separate interest-bearing escrow account established by the Escrow Agent pursuant to the Escrow Agreement.

(m) "Escrow Agent" means PNC Bank, National Association, or its duly appointed successor.

(n) "Escrow Agreement" refers to the Escrow Agreement between PNC Bank, Plaintiffs' Counsel, and Kiromic dated August 7, 2023 governing the Escrow Account, attached hereto as Exhibit H.

(o) "Fee and Expense Application" means the application of Lead Counsel for a Fee and Expense Award.

(p) "Fee and Expense Award" means any portion of the Gross Settlement Fund approved by the Court for payment to Lead Counsel who have represented Lead Plaintiffs, including such counsel's attorneys' fees, costs, litigation expenses (excluding Notice and Administration Expenses).

(q) "Final" means, with respect to a Judgment or order of the Court, a Judgment or order as to which there is no pending stay, motion for reconsideration, motion for rehearing, motion to vacate, appeal, petition for writ of certiorari or similar requests for relief; and

    a. If no appeal or review is filed, the time to appeal or petition for review has expired; or

b.  If there is an appeal or review, such Judgment or order has been affirmed or the appeal or review is dismissed or denied, and such Judgment or order is no longer subject to further judicial review, including upon appeal or review by writ of certiorari.

c.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation, or to the Court's Fee and Expense Award to Lead Counsel, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

(r) "Final Approval Hearing" means the hearing scheduled by the Court to determine whether (i) the Settlement is fair, adequate, and reasonable; (ii) the Plan of Allocation is fair, adequate, and reasonable; (iii) a class solely for the purposes of Settlement should be certified; and (iv) Lead Counsel's request for a Fees and Expense Award is reasonable.

(s) "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit G, or an Alternative Judgment, if expressly agreed in writing by all the Parties.

(t) "Kiromic's Counsel" refers, exclusively, to Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Alex J. Kaplan and Yolanda C. Garcia.

(u) "Lead Counsel" means Gainey McKenna & Egleston ("GM&E"), 501 Fifth Avenue, 19th Floor, New York, New York, 10017.

(v) "Lead Plaintiffs" means Ronald H. Karp, Ari Karp, and Ethan Karp.

(w) "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, expenses, provided for herein or approved by the Court, and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

(x) "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, Fairness Hearing and Class Members' Rights, which, subject to the Court's approval, shall be substantially in the form attached hereto as Exhibit B.

(y) "Notice and Administration Expenses" means reasonable costs and expenses incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, soliciting claims, assisting with the submission of claims, processing Proof of Claim forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any.

(z) "Offering Documents" means the Company's public offering which closed on July 2, 2021 (the "Offering") and was conducted pursuant to a registration statement filed with the SEC on June 25, 2021 ("Registration Statement") and the final prospectus dated June 29, 2021 (the "Prospectus," with the Registration Statement and any other public document issued by the Company regarding the Offering, the "Offering Documents").

(aa) "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and each of their respective spouses, heirs, predecessors, successors, representatives, or assigns.

(bb) "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. The Plan of Allocation is attached hereto as Exhibit F, but is not part of this Stipulation.  Lead Counsel shall have all responsibility for implementing said Plan of Allocation with the assistance of the Claims Administrator, and for the avoidance of doubt, Defendants shall have no responsibility or liability with respect thereto.

8

(cc) Postcard Notice" means the postcard notice, which, subject to the Court's approval, shall be substantially in the form attached hereto as Exhibit D.

(dd) "Preliminary Approval Hearing" means the hearing scheduled by the Court to determine whether the Settlement could be approved at the Final Approval Hearing.

(ee) "Preliminary Approval Order" means the Order preliminarily approving the Settlement and providing for notice as approved by the Court, substantially in the form attached hereto as Exhibit A.

(ff) "Proof of Claim" means a Proof of Claim and Release Form, which, subject to the Court's approval, shall be substantially in the form attached hereto as Exhibit E.

(gg) "Related Parties" means each Defendant's respective (a) immediate family members and any trust that each Person is the settlor of or which is for their benefit and/or the benefit of their family; and (b) current or former predecessors, successors, parent corporations, sister corporations, subsidiaries, affiliates, assigns, assignors, divisions, joint ventures, heirs, legatees, executors, administrators, estates, receivers and trustees, settlors, beneficiaries, officers, directors, shareholders, employees, agents, consultants, contractors, auditors, partners, insurers, reinsurers, representatives, attorneys, legal representatives, and all persons acting by, through, under, or in concert with them or any of them.

(hh) "Released Claims" means any and all complaints, claims, third-party claims, cross claims, counterclaims, demands, allegations, liabilities, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, damages, costs, losses, debts, charges, expenses (including attorneys' fees, expert fees, and disbursements of counsel and other professionals) of any and every nature whatsoever, whether in law or in equity, whether arising under federal, state, local, or foreign statutory or common law or any other law, rule, or regulation (whether foreign or domestic), whether currently known or unknown (including Unknown Claims (as defined herein)), fixed or contingent, suspected or unsuspected, foreseen

9

or unforeseen, ripened or unripened, accrued or unaccrued, liquidated or unliquidated, or matured or not matured, whether arising in equity or under the law of contract, tort, malpractice, statutory breach, or any other legal right or duty, whether direct, class, individual, representative, or any other capacity, to the fullest extent that the law permits to be released, that Lead Plaintiffs, or any other member of the Settlement Class: (a) asserted in the Action, or (b) could have asserted against any of the Released Parties in the Action or in any forum that: (i) arise out of, relate to, are connected with, or in any way concern the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations, misrepresentations, or omissions involved, set forth, alleged, or referred to, in this Action, or which could have been alleged in this Action; (ii) arise out of, are based upon, or relate in any way to the purchase or acquisition of the publicly traded common stock of Kiromic on the NASDAQ Capital Market during the Class Period; (iii) arise out of, are based upon, or relate in any way to the Offering; or (iv) otherwise could have been brought against any of the Defendants at law, equity, or otherwise. Released Claims do not include any claims relating to the enforcement of the Settlement.

(ii) "Released Party" or "Released Parties" means each and all of the Defendants and their respective Related Parties.

(jj) "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means Lead Plaintiffs, each and every Settlement Class Member, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, representatives, affiliates, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the respective spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Releasing

10

Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

(kk) "Settled Defendants' Claims" means all known or unknown claims, demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action or in any forum by the Released Parties or any of them against Lead Plaintiffs, Settlement Class Members, and Lead Counsel, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution or the Action (except for claims to enforce the Settlement). "Settled Defendants' Claims" includes "Unknown Claims" as defined in ¶ 1(tt).

(ll) "Settlement" or "Stipulation" is defined above.

(mm) "Settlement Amount" means Two Million Three Hundred Thousand U.S. Dollars ($2,300,000) in cash to be paid into the Escrow Account pursuant to ¶ 2(a) of this Stipulation.

(nn) "Settlement Class" means, for the purposes of settlement only, a class consisting of all persons and entities (other than Defendants (defined herein)) that purchased or otherwise acquired (a) Kiromic common stock pursuant and/or traceable to the Offering Documents (defined herein) and/or (b) Kiromic common stock between June 25, 2021 and February 2, 2022, both dates inclusive.  Excluded from the Settlement Class are: (i) Defendants; (ii) the officers and directors of the Company at all relevant times; (iii) members of any Defendant's immediate families; (iv) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (v) the legal representatives, heirs, successors, and assigns of such excluded Persons; (vi) those who purchased or otherwise acquired Kiromic common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010); (vii) the plaintiffs in *Sabby Volatility Warrant Master Fund Ltd., et al. v. Kiromic Biopharma, Inc.*, No. 22-cv-1927(AT) (S.D.N.Y.), and any claims that were or could have been filed or

11

consolidated therewith and (viii) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

(oo) "Settlement Class Member" or "Member of the Settlement Class" means a Person who falls within the definition of the Settlement Class as set forth in ¶ 1(nn) of this Stipulation.

(pp) "Settlement Fund" means the Settlement Amount plus any accrued interest or income earned thereon.

(qq) "Settling Parties" means, collectively, Defendants and their respective Related Parties, and Lead Plaintiffs, on behalf of themselves and Members of the Settlement Class.

(rr) "Summary Notice" means the summary notice for publication, which, subject to approval of the Court, shall be substantially in the same form attached as Exhibit C.

(ss) "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

(tt) "Unknown Claims" means: (i) any and all Released Claims that Lead Plaintiffs or any Settlement Class Member do not know or suspect to exist in his, her, their or its favor at the time of the release of the Released Parties, or might have affected his, her, their, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, themself, or itself from the Settlement Class; and (ii) any Settled Defendant's Claims that any Released Party does not know or suspect to exist in his, her, their, or its favor at the time of the release of Lead Plaintiffs, Settlement Class Members, and Lead Counsel, which if known by him, her, them, or it, might have affected his, her, their, or its decision(s) with respect to the Settlement with and release of the Lead Plaintiffs, Settlement Class Members, and Lead Counsel. With respect to any and all Released Claims and Settled Defendants' Claims, Lead Plaintiffs and Kiromic stipulate and agree that, upon the Effective Date, Lead Plaintiffs and Defendants shall expressly waive, and each of the

Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542 and any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Lead Plaintiffs and Settlement Class Members may hereafter discover facts, legal theories, or authorities in addition to or different from those that any of them now knows or believes to be true with respect to this Action, the Released Claims, or the Settled Defendants' Claims, but Lead Plaintiffs and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have fully, finally, and forever settled and released, upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Settled Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiffs and Kiromic acknowledge, and all Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims was separately bargained for and was a material element of the settlement.

**2.      The Settlement**

(a)      The Settlement Amount

i.      Kiromic, on behalf of itself and Defendants, shall pay or cause to be paid the Settlement Amount.

ii.      The Settlement Amount has already been paid or will be paid into the Escrow Account in installment payments as follows: (1) $190,000 by August 7, 2023; (2) $150,000 by

August 7, 2023; (3) $150,000 by September 1, 2023; (4) $150,000 by October 1, 2023; (5) $150,000 by November 1, 2023; (6) $245,000 by December 1, 2023; (7) $245,000 by January 1, 2024; (8) $245,000 by February 1, 2024; (9) $245,000 by March 1, 2024; (10) $245,000 by April 1, 2024; (11) $245,000 by May 1, 2024; and (12) $40,000 by June 1, 2024.

iii.     Upon the Court's Final approval of the Settlement, and subject to the terms herein, including the Plan of Allocation, GM&E shall distribute such amounts to Lead Plaintiffs and Settlement Class Members in a manner that is standard and customary for such distributions, less a Court approved Fee and Expense Award to Lead Counsel.

iv.     In the event of a payment default, any payments made up to that point would be forfeited to Lead Plaintiffs and subject to distribution to Lead Plaintiffs and Settlement Class Members, and GM&E would be permitted to execute on the Confession of Judgment previously executed by Kiromic pursuant to the relevant Delaware statutory law and Superior Court Rules and subject to the terms of the Confession of Judgment, if the payment default is not cured within (30) days after Kiromic's receipt of written notice of such default. In such event, GM&E would then be permitted to seek the remaining balance, subject to applicable law, along with (1) interest on the remaining balance (which shall accrue in accordance with N.Y. C.P.L.R. § 5004, and become a part of and in addition to the cash consideration described in § 2(a)(ii), above), and (2) all costs of enforcement to collect the remaining balance, including reasonable attorneys' fees.

v.     Other than the Class Action Fairness Act ("CAFA") expenses referred to in ¶ 3(a), which will be paid (or caused to be paid) by Kiromic, Defendants shall have no obligation to make any payment besides the payment of the Settlement Amount in connection with the Settlement. The obligations incurred pursuant to this Stipulation shall be in full and final disposition and settlement of all Released Claims. The Settlement Amount paid by Kiromic is the sole monetary responsibility of the Released Parties under this Stipulation, and Releasing

Plaintiff Parties who do not timely seek to exclude themselves from the Settlement Class shall not look to any of the Defendants or their Related Parties for satisfaction of any and all Released Claims. The Released Parties are not responsible for payment of Notice and Administrative Expenses, or any out-of-pocket expenses, other than out of the Settlement Account. The Released Parties shall have no responsibility for, interest in, or liability with respect to: (1) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees, in connection with the administration of the Settlement or otherwise; (2) the management, investment, or distribution of the Settlement Fund; (3) the Plan of Allocation; (4) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (5) any loss suffered by, or fluctuation in the value of, the Settlement Fund; or (6) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

(b)     The Escrow Agreement

i.      As provided in the Escrow Agreement, the Parties hereto agree that the Escrow Agent shall perform only such duties as expressly set forth in the Escrow Agreement.  Such terms include:

a.  The Escrow Agent shall hold the Settlement Funds in a PNC Interest Bearing Deposit Account.

b.  The Escrow Agent shall only disburse the Settlement Funds in accordance with the terms and conditions at ¶ 1.3 of the Escrow Agreement and/or pursuant to further order of this Court. ¶ 1.3(a) of the Escrow Agreement sets out the sole and exclusive circumstances under which the Settlement Funds may be disbursed by the Escrow Agent.

15

c.  The Settlement is non-recapture; *i.e.*, it is not a claims-made settlement. Upon the occurrence of the Effective Date, neither Kiromic nor any other Person who paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, except as set forth in ¶ 7(c) below.

d.  The Settlement Fund shall be treated as owned by Lead Counsel for U.S. federal income tax purposes. All income earned under the Escrow Agreement shall be allocated to the Settlement Fund and timely reported by Escrow Agent to GM&E, the Internal Revenue Service ("IRS") or other applicable taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Settlement Funds by the Settlement Funds whether or not said income has been distributed during such year.

e.  Lead Counsel shall duly complete such tax documentation or other procedural formalities necessary for Escrow Agent to complete required tax reporting and for the Settlement Fund to receive interest or other income without withholding or deduction of tax in any jurisdiction. Should any information supplied in such tax documentation change, GM&E shall promptly notify Escrow Agent.  In all events, the Defendants and their respective Related Persons shall have no liability for Taxes or Tax Expenses.

f.  Escrow Agent shall withhold any taxes it deems appropriate in the absence of proper tax documentation or as required by law, including without limitation, the Foreign Account Tax Compliance Act ("FACTA"), and shall remit such taxes to the appropriate authorities.

16

(c)    Non-Approval of Settlement

i.    In the event that this Stipulation is not granted Final approval by the Court, the Settlement Fund shall be returned to Kiromic, less any claims administration or notice costs previously incurred by Lead Counsel or its Claims Administrator, and the Settling Parties shall revert to their litigation postures as of the day before the Term Sheet was signed.

ii.    In such event, the Settling Parties will work in good faith to prepare and submit a reasonable schedule to the Court within seven (7) business days.

**3.    Preliminary Approval Order and Final Approval Hearing**

(a)    Shortly after the execution of this Stipulation, Lead Plaintiffs shall submit it together with the exhibits to the Court and apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A, attached hereto, requesting, *inter alia*, the preliminary approval of the settlement set forth in this Stipulation, and approval for the posting of the Notice, Summary Notice, Postcard Notice and Proof of Claim on the Claims Administrator's website, the publication of the Summary Notice, and the mailing of the Postcard Notice. All substantially in the forms of Exhibits B, C and D, attached hereto. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and the date of the Final Approval Hearing. In accordance with CAFA, Defendants, at their own cost, shall serve proper notice of the Settlement upon those who are entitled to notice pursuant to CAFA and shall be solely responsible with respect to issuing such notice and the cost of such notice.  Notice shall be timely pursuant to 28 U.S.C § 1715, and shall not be served later than 10 days after this Stipulation is filed in Court.  In order to comply with Section 1715(d), none of the Parties shall schedule, or request to schedule, a Final Approval Hearing until at least 90 days following service of notice on the appropriate officials.

17

(b)     The Company shall make reasonable efforts to provide to Lead Counsel, at no cost to Lead Plaintiffs or the Settlement Class, transfer records for purchases and acquisitions of the Company's common stock during the Class Period in a usable electronic format, such as an Excel spreadsheet. It shall be Lead Counsel's sole responsibility to disseminate the Postcard Notice, Notice, Proof of Claim, and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court. Defendants shall not bear any cost or responsibility for class notice, administration, or the allocation of the Net Settlement Fund among Authorized Claimants, besides the payment of the Settlement Amount. Settlement Class Members shall have no recourse as to the Released Parties with respect to any claims they may have that arise from any failure of the notice process. The Settlement Fund shall indemnify and hold each of the Released Parties and their counsel harmless for any Notice and Administration Expenses.

(c)     Lead Counsel shall request that, after notice is given, the Court hold the Final Approval Hearing and approve the settlement of the Action as set forth herein and to enter the Judgment. At or after the Final Approval Hearing, Lead Counsel will also request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4.     Releases**

(a)     Upon the Effective Date, as defined at ¶ 1(k), Lead Plaintiffs shall, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Parties and shall forever be barred, enjoined, and estopped from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Parties, whether or not such Settlement Class Member executes and delivers a Proof of Claim.

18

(b)      Upon the Effective Date, as defined at ¶ 1(k), each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, and discharged Lead Plaintiffs, Lead Counsel, and each and all of the Settlement Class Members from all Settled Defendants' Claims.

(c)      The Company can elect to be released from the proposed Settlement if shareholders, who are neither employees, officers, and/or directors of the Company, who are holding more than a certain specified percentage of the outstanding shares of the Company provide notice of an intention to opt-out of the Settlement. Lead Counsel must provide Kiromic's Counsel with copies of requests to opt-out as expeditiously as possible, but in any event no later than five (5) business days after the receipt thereof and in any event at least twenty-one (21) calendar days prior to the Final Approval Hearing.

5.      **Administration and Calculation of Claims, Final Awards, and Supervision of the Settlement Fund**

(a)      The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the Claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

(b)      The Settlement Fund shall be applied as follows:

     i.      To pay all Notice and Administration Expenses;

     ii.      To pay the Taxes and Tax Expenses;

     iii.      To pay Lead Counsel's attorneys' fees and expenses, with interest thereon, if and to the extent allowed by the Court following the Fee and Expense Application;

19

iv.      To pay any case contribution award to Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(4); and

v.      To distribute the Net Settlement Fund to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

(c)      Upon the Effective Date and thereafter, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

(d)      Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Settlement Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form and content of Exhibit E, attached hereto, signed under a penalty of perjury and supported by such documents as are specified in the Proof of Claim.

(e)      Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payment pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. Lead Counsel shall have no liability for not accepting late claims.

(f) All Proofs of Claim must be postmarked or received within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class

Member who fails to submit a properly completed Proof of Claim within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Stipulation or from the Net Settlement Fund (unless Lead Counsel in its discretion deems such late submission to be a formal or technical defect and waives the lateness of the submission in the interest of achieving substantial justice, or unless by order the Court approves that Settlement Class Member's untimely submitted Proof of Claim), but will in all other respects be subject to the provisions of this Stipulation and the Judgment (or any Alternative Judgment), including, without limitation, the release of the Released Claims and dismissal of the Action.

(g)     Provided that it is received before the motion for approval of the Settlement Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

(h)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator who shall determine, under the supervision of Lead Counsel, in accordance with this Stipulation and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court as provided in ¶ 5(l), below.

(i)     Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim, the Claims Administrator shall communicate with the Authorized Claimant to give the Authorized Claimant the opportunity to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Plaintiffs' Counsel, shall notify in a timely fashion and in writing, all Authorized Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons

thereof, and shall indicate in such deficiency notice that the Authorized Claimant whose claims are to be rejected has the right to review by the Court if the Authorized Claimant so desires and complies with the requirement of ¶ 5(l) below.

(j)     If any Authorized Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Authorized Claimant must, within twenty (20) calendar days after the date of mailing of the notice required by ¶ 5(i) above, serve upon the Claims Administrator a written statement of reasons indicating the Authorized Claimant's ground for contesting the rejection along with copies of any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

(k)     The administrative determination of the Claims Administrator accepting and rejecting claims shall be presented by Lead Counsel to the Court in a motion for approval by the Court.

(l)     Without regard to whether a Proof of Claim is allowed, each Authorized Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to such Authorized Claimant's claim, and such Authorized Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Authorized Claimant's status as a Settlement Class Member and the validity and amount of the Authorized Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

(m)     Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall otherwise be bound by all of the terms of the Judgment (or

22

Alternative Judgment) to be entered in the Action and the releases provided for in this Stipulation, and will be barred from bringing any action against the Released Parties arising out of or relating to the Released Claims.

(n)     All proceedings with respect to the administration, processing, and determination of claims described in this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

(o)     After the Claims Administrator calculates the recognized losses of each Authorized Claimant, Lead Counsel shall file a motion for distribution of the Net Settlement Fund with the Court, requesting the Court (a) to authorize the payment from the Settlement Fund any as yet unpaid Notice and Administration Expenses; (b) to resolve (if it has not previously done so or been asked to do so) any objections with respect to any rejected or disallowed claims; and (c) approve the distribution of the Net Settlement Fund to the Authorized Claimants upon final resolution of any rejected or disallowed claims. Such motion shall not be filed until after all of the following conditions have been met: (i) the Effective Date has occurred; (ii) all claims have been processed; and (iii) all Authorized Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard by the Claims Administrator concerning such rejection or disallowance.

(p)     After the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their Distribution checks, but no earlier than six (6) months after the Distribution, Claims Administrator shall, if Lead Counsel, in consultation with Claims Administrator, determine that it is cost effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), in which any amounts remaining in the Net Settlement Fund after the Distribution, after deducting Claims Administrator's fees and expenses

23

incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to all Authorized Claimants in the Distribution who cashed their Distribution check and who would receive at least $10.00 from such re-distribution based on their pro rata share of the remaining funds. Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur until Lead Counsel, in consultation with Claims Administrator, determine that further re-distribution is not cost effective.  Thereafter, any balance which still remains in the Net Settlement Fund shall be donated, as a *cy pres* award, to a public interest cause approved by the Court.

(q) No Person shall have any claim against Lead Plaintiffs, Lead Counsel, the Claims Administrator, any other Person designated by Lead Counsel, or any of the Released Parties based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  None of the Released Parties shall have any role in, or any liability, obligation, or responsibility for, the dissemination of the Notice (except as otherwise stated herein), the administration of the Settlement, or the distribution of the Settlement Fund, including with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; or (iii) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

(r) It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an

Authorized Claimant's claim set forth therein, is not an essential part of this Settlement and is to be considered by the Court separately from the Court's consideration of the fairness, adequacy, and reasonableness of the Settlement set forth in this Stipulation. Further, any other order or proceeding concerning or relating to the Plan of Allocation shall have no impact whatsoever on this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to this Stipulation.

### 6. Lead Counsel's Attorneys' Fees and Expenses

(a) Lead Counsel may submit to the Court a Fee and Expense Application for distributions from the Settlement Fund for: (i) an award of attorneys' fees; plus (ii) expenses incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred, subject to Court approval.

(b) The fees and expenses awarded by the Court shall be payable to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses notwithstanding any objection thereto.

(c) Any payment of attorneys' fees and expenses to Lead Counsel is subject to the obligation of Lead Counsel to make repayment to the Settlement Fund, or to Kiromic, if appropriate, of any paid amounts, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is not granted Final approval by the Court, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the Fee and Expense Award is reduced or reversed by Final non-appealable court order. Lead Counsel agrees that it is subject to the jurisdiction of the Court for the purpose of enforcing this paragraph. Lead Counsel shall make the appropriate refund or repayment in full no later than

thirty (30) business days after receiving notice of the termination of the Settlement pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the non-approval of the Settlement by Final non-appealable court order, or by notice of any reduction or reversal of the award of attorneys' fees and/or expenses by Final non-appealable court order.

(d)     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, to be paid out of the Settlement Fund, are not an essential part of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, adequacy, and reasonableness of the Settlement set forth in this Stipulation. Any order or proceeding relating to the Fee and Expense Application or Fee, or any appeal from any Fee and Expense Award or reversal or modification thereof, shall have no impact whatsoever on the Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Action set forth herein.

(e)     Any Fee and Expense Award granted by the Court shall be paid solely from the Settlement Fund. With the sole exception of Kiromic's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶ 2(a), the Released Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Lead Counsel.

**7.     Conditions of Settlement, Effect of Non-Approval**

(a)     The Effective Date of this Stipulation is the later of (i) the date of final payment into the Escrow Account, and (ii) the date of the Court's Final approval of the Settlement.

(b)     Upon the Effective Date, any and all remaining interest or right of Kiromic or any other Person who has made any payments in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

(c)     Unless otherwise ordered by the Court, in the event this Stipulation is not approved by the Court, within twenty (20) business days after written notification of such event

is sent by counsel for Kiromic or Lead Counsel to the Escrow Agent, the Settlement Fund (including any interest or earnings accrued thereon), less any claims administration or notice costs previously incurred by Lead Plaintiffs or their Claims Administrator, shall be refunded by the Escrow Agent pursuant to written instructions from Kiromic's Counsel pursuant to the terms of the Escrow Agreement and/or any further order of the Court. The Claims Administrator shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from Kiromic's Counsel or further order of the Court.  Further, in the event of non-approval of the Settlement, the Settling Parties shall be restored to their respective positions in the Action as of August 6, 2023, the day before the Term Sheet was signed. In such event, the terms and provisions of this Stipulation, with the exception of ¶¶ 1, 2(b) – 2(c), 6(c), 7(c), 8(a), 8(b), and 8(f) hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of attorneys' fees, expenses, and interest awarded by the Court to Lead Counsel shall have any impact whatsoever on this Stipulation.

**8.    Miscellaneous Provisions**

(a)    The provisions contained in this Stipulation, the Term Sheet, and any other agreement pursuant to the Settlement shall not be deemed a presumption, concession, or admission by any Defendant of any fault, liability, or wrongdoing as to any facts or claims that have been or might be alleged in the Action, or in any other action or proceeding.

(b)    Neither this Stipulation, Term Sheet, nor any other agreement pursuant to the Settlement, nor any act performed or document executed pursuant to or in furtherance of this

27

Stipulation and Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any claim or allegation related to this Action, or of any wrongdoing, liability, or misconduct of any kind by any Released Person; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; (iii) nor used or offered in any proceeding for any purpose, except to enforce the terms of the Term Sheet or this Stipulation or any other agreement pursuant to the Settlement, *provided, however,* that Defendants may file this Stipulation in any action that may be brought against them in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

(c)     Subject to the order of the Court, pending Final determination of whether the Settlement provided for in this Stipulation should be approved, Lead Plaintiffs and all Settlement Class Members are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution, or instigation of any action asserting any claims, whether related or unrelated to this Action, whether known, unknown, or otherwise, either directly, representatively, derivatively, or in any other capacity, against any of the Released Parties. If any claims related to this Action, whether known, unknown, or otherwise, are asserted against any Released Party in any court prior to Final approval of the Settlement, the Settling Parties shall cooperate in obtaining the withdrawal or dismissal of such litigation, including, where appropriate, joining in any motion to dismiss such litigation.

(d)     Lead Plaintiffs represent and warrant that Lead Plaintiffs are Settlement Class Members and that none of the Released Claims have been assigned, encumbered, or in any manner transferred in whole or in part.

28

(e)     This Stipulation, Term Sheet, and any other documents executed pursuant to this Settlement shall be binding upon, and insure to the benefit of, the successors and assigns of the parties hereto; provided, however, in the event of any potential or actual conflict between this Stipulation or the Term Sheet, the Parties agree that this Stipulation shall control.

(f)     All agreements made and orders entered during the course of the Action and all Settlement-related proceedings relating to the confidentiality of information shall survive this Stipulation, the Term Sheet, and any other document executed pursuant to this Settlement.

(g)     The Settling Parties intend this Settlement to be a final and complete resolution of all Released Claims and Settled Defendants' Claims. The Settlement resolves Released Claims and Settled Defendants' Claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any Released Claim and Settled Defendants' Claim, or any defense thereto. The Settling Parties agree that, and the Judgment will contain a finding that, during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties further agree that the parties and their counsel acted in good faith with respect to the Action and will not assert otherwise. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis.

(h)     With the exception of the Plan of Allocation, all Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

(i)     This Stipulation may not be terminated, modified, or amended, except by an agreement in writing signed by the Parties or their respective counsel, or the Court.

29

(j)      This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Parties hereto concerning the Settlement and this Stipulation and its exhibits. By executing this Stipulation, and as a condition precedent to any obligations or liabilities of the Parties, each Party expressly acknowledges, represents, and warrants that (i) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Stipulation; (ii) has been provided with the opportunity to discuss all aspects of this Settlement and negotiations relating thereto with legal counsel of its own choosing; (iii) has made its own investigation of the facts, has had a full opportunity to review the terms of this Settlement, and has and is relying solely upon its own knowledge and the advice of its own legal counsel; (iv) has carefully read and understood all of the provisions of this Stipulation; (v) is entering into this Stipulation freely and voluntarily; (vi) knowingly waives any claim that this Stipulation was induced by any misrepresentation, omission, or nondisclosure and any right to rescind or avoid this Stipulation based upon presently existing facts, whether known or unknown; (vii) is the lawful owner of the Released Claims or Settled Defendants' Claims released in this Stipulation; (viii) has full capacity and authority to settle, compromise, and release the Released Claims or Settled Defendants' Claims released herein and to enter into this Stipulation; (ix) no other person or entity has inherited, acquired, or been assigned, or will in the future inherit, acquire, or have any right to assert any portion of the Released Claims or Settled Defendants' Claims released in this Stipulation; and (x) knows of no other person or entity that intends to assert a Released Claim or Settled Defendants' Claim by, through, or under, or on its behalf relating to the Released Claims and Settled Defendants' Claims released in this Settlement Agreement. By entering into this Stipulation, each Party assumes the risk of any mistake of law or fact.  If any Party should later discover that any fact relied upon in entering into this Stipulation is not true, or the Party's understanding of the facts or the law was incorrect, such Party shall not be entitled to recission of the Stipulation by reason

30

thereof. Each Party stipulates that it is relying upon these representations and warranties in entering into this Stipulation. These representations and warranties shall survive the execution of this Stipulation.

(k)     Except as otherwise provided herein, each party shall bear its own costs, inclusive of attorneys' fees.

(l)     Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and is also expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which Lead Counsel deems appropriate.  For the avoidance of doubt, no such modifications or amendments shall be made without the express written agreement of Kiromic's Counsel. Each counsel or other Person executing this Stipulation and any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

(m)     This Stipulation may be executed in one or more counterparts and the signatures may be by facsimile or electronically. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

(n)     Any failure by the Settling Parties to insist upon the strict performance by any other Settling Party of any provision of this Stipulation shall not be deemed a waiver of any of the provisions thereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

(o)     The waiver, express or implied, by any Party of any breach or default by any other Party in the performance of such Party of its obligations under this Stipulation shall not

31

be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

(p)     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation. Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court, unless otherwise required by an order of the Court.

(q)     This Stipulation and the Exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles, except to the extent that federal law requires that federal law governs. In the event of Kiromic's payment default and Lead Counsel executing the Confession of Judgment against Kiromic, then that Confession of Judgment shall be deemed executed in and governed by the laws, procedures, and Superior Court Rules of the State of Delaware. The Confession of Judgment shall be deemed voided upon the earlier of completion of all payments as described in section 2, above, or the Court's non-approval of the settlement.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated September 29, 2023.

32

**GAINEY McKENNA & EGLESTON**

By:   *Thomas J. McKenna*
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: egleston@gme-law.com

*Lead Counsel for Lead Plaintiffs*

**SIDLEY AUSTIN LLP**

By:   *Alex J. Kaplan*
Alex J. Kaplan
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: ajkaplan@sidley.com

*Attorneys    for    Defendant    Kiromic BioPharma, Inc.*

33

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE KIROMIC BIOPHARMA INC., SECURITIES LITIGATION | Case No. 1:22-cv-06690 (JHR)<br><br>EXHIBIT [A] |

### [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL

WHEREAS, the above-captioned action is pending before this Court (the "Action");

WHEREAS, Lead Plaintiffs, having made a motion pursuant to Federal Rule of Civil Procedure 23(e) for an order preliminarily approving the Settlement of this Action, in accordance with a Stipulation of Settlement, dated September 29, 2023 (the "Stipulation"), which, together with the Exhibits annexed thereto, sets forth the terms and conditions for a proposed Settlement of the Action entered into between Lead Plaintiffs and Defendant Kiromic Biopharma, Inc. ("Kiromic" or the "Company"), and with respect to each other defendant – Maurizio Chiriva Internati, Tony Tontat, Gianluca Rotino, Pietro Bersani, Americo Cicchetti, Michael Nagel, Jerry Schneider ("Individual Defendants") and ThinkEquity LLC (collectively, with Kiromic and Individual Defendants, the "Defendants," and with Lead Plaintiffs and Kiromic, the "Parties" in or to this action);

WHEREAS, the Stipulation provides for complete dismissal of the Action with prejudice upon, and subject to, the terms and conditions set forth therein, subject to the approval of this Court; and the Court having read and considered: (i) the motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith, and (ii) the Stipulation and the Exhibits annexed thereto;

WHEREAS, Lead Plaintiffs and Kiromic having consented to the entry of this Order;

WHEREAS, unless otherwise defined, all terms used herein have the same meanings as set forth in the Stipulation;

WHEREAS, the Court preliminarily finds that:

1

(a)     The Settlement resulted from informed, extensive arm's-length negotiations between experienced and competent counsel;

(b)     The proposed Settlement eliminates the risks and costs to the Parties in this action of continued litigation; and

(c)     The Settlement appears to fall within the range of possible approval and is therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Class.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.     The Court hereby preliminarily approves the Settlement set forth in the Stipulation, subject to further consideration at the Final Approval Hearing described below.

(a) Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and for purposes of this Settlement only, the Action is hereby certified as a class action on behalf of all Persons who purchased or otherwise acquired (a) Kiromic common stock pursuant and/or traceable to the Offering Documents and/or (b) Kiromic common stock between June 25, 2021 and February 2, 2022, both dates inclusive.

(b) Excluded from the Settlement Class are: (i) Defendants; (ii) the officers and directors of the Company at all relevant times; (iii) members of any Defendant's immediate families; (iv) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (v) the legal representatives, heirs, successors, and assigns of such excluded Persons; (vi) those who purchased or otherwise acquired Kiromic common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010); (vii) the plaintiffs in *Sabby Volatility Warrant Master Fund Ltd., et al. v. Kiromic Biopharma, Inc.*, No. 22-cv-1927(AT) (S.D.N.Y.), and any claims that were or could have been filed or

2

consolidated therewith and (viii) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

2.      The Court finds, for the purpose of the Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (i) the number of Class Members is so numerous that joinder of all members is impractical; (ii) there are questions of law and fact common to the Class; (iii) the claims of Lead Plaintiffs are typical of the claims of the Class it seeks to represent; (iv) Lead Plaintiffs and Lead Counsel have and will fairly and adequately represent the interests of the Class; (v) the questions of law and fact common to the Class predominate over any questions affecting only individual Class Members; and (vi) a class action is superior to all other methods for the fair and efficient adjudication of the Action.  Should the Court subsequently decline to finally approve this Settlement, Defendants shall not be deemed to have waived any of their rights, including the right to challenge the aforementioned prerequisites or any preliminary finding herein regarding class certification.

3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds and concludes that, for purposes of the Settlement only, Lead Plaintiffs Ronald H. Karp, Ari Karp, and Ethan Karp are adequate class representatives and are preliminarily certified as Class Representatives and Lead Counsel Gainey McKenna & Egleston are preliminarily certified as Class Counsel, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

4.      The Court preliminarily finds that the proposed Settlement should be approved as: (i) it is the result of serious, extensive arm's-length and non-collusive negotiations; (ii) falling within a range of reasonableness warranting final approval; (iii) having no obvious deficiencies; and (iv) warranting notice of the proposed Settlement to the Class Members and further consideration of the Settlement at the Fairness Approval Hearing described below.

5.      A hearing shall be held before this Court on _____, 202___, at ___ [a.m./p.m.] (the "Final Approval Hearing"), at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007 before the Hon. Jennifer H. Rearden, or any other Judge then and there presiding over this Action, after the Settlement Amount is fully paid into the Escrow Account, to: (i) determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Class and should be approved by the Court; (ii) determine whether a Judgment as provided in ¶ 1(s) of the Stipulation should be entered; (iii) determine whether the proposed Plan of Allocation is fair and reasonable and should be approved; (iv) determine the amount of attorneys' fees, costs, charges, and expenses that should be awarded to Lead Counsel; (v) determine any award to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4); (vi) hear any objections by Class Members to the Settlement or Plan of Allocation, or to the award of attorneys' fees and expenses; and (vii) consider such other matters the Court deems appropriate. The Court may adjourn or change the date and time of the Final Approval Hearing without further notice to the Class and may approve the proposed Settlement with such modifications as the Lead Plaintiffs and Kiromic may agree to, if appropriate, without further notice to the Class. In no case shall the Final Approval Hearing be scheduled until at least 90 days following service of the notices on the appropriate officials as set forth in the Stipulation.

6.      Class Counsel has the authority to enter into the Settlement on behalf of the Settlement Class and has the authority to act on behalf of the Settlement Class with respect to all acts or consents required by or that may be given pursuant to the Settlement Stipulation or such other acts that are reasonably necessary to consummate the Settlement.

7.      Escrow Agent may, at any time after entry of this Order and subject to the terms of the Escrow Agreement,  disburse at the direction of Class Counsel up to $75,000

4

(Seventy-Five Thousand Dollars) from the Settlement Fund prior to the Effective Date to pay Administrative Costs.

8.     The Court approves the form, substance, and requirements of the Notice of Pendency and Proposed Settlement of Class Action, Fairness Hearing and Class Members' Rights ("Notice") and Proof of Claim and Release Form substantially in the forms annexed to the Stipulation as Exhibits B and E.

9.     The Court approves the form of the Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), substantially in the form annexed to the Stipulation as Exhibit C.

10.    The Court approves the form of the Postcard Notice of Proposed Settlement of Class Action ("Postcard Notice"), substantially in the form annexed to the Stipulation as Exhibit D.

11.    The firm of Strategic Claims Services ("Claims Administrator") is hereby appointed to supervise and administer the notice procedure as well as the processing of Claims as more fully set forth below.

12.    Kiromic shall make reasonable efforts to provide or cause to be provided to the Claims Administrator, at no cost to Lead Plaintiffs or the Class, within fourteen (14) business days after the Court signs this Order, transfer records for purchases and acquisitions of the Company's common stock during the Class Period in a usable electronic format. This information will be kept confidential and not used for any purpose other than to provide the Notice contemplated by this Order.

13.    Not later than _____, 2023 (the "Notice Date") (a date twenty-one (21) calendar days after entry by the Court of this Order), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form annexed hereto as Exhibit D, to be mailed by First-Class Mail to all Class Members who can be identified within a reasonable

5

effort. For all Postcard Notices returned as undeliverable, the Claims Administrator shall use its best efforts to locate updated addresses.

14.     Not later than _____, 2023 (a date seven (7) calendar days after the Notice Date), the Claims Administrator shall cause the Summary Notice to be published once in *Investors' Business Daily*, and once over a national newswire service.

15.     Class Counsel, through the Claims Administrator, shall make all reasonable efforts to give notice to nominees or custodians who held Kiromic securities during the Class Period as record owners but not as beneficial owners. Such nominees or custodians shall, within ten (10) calendar days of receipt of the notice, either: (i) request copies of the Postcard Notice sufficient to send the Postcard Notice to all beneficial owners for whom they are nominee or custodian, and within ten (10) calendar days after receipt thereof send copies to such beneficial owners; (ii) request links to the location of the Notice and Proof of Claim and email the links to each beneficial owner for whom they are nominee or custodian within ten (10) calendar days after receipt thereof; or (iii) provide the Claims Administrator with lists of the names, last known addresses and email addresses (to the extent known) of such beneficial owners, in which event the Claims Administrator shall promptly deliver the Postcard Notice to such beneficial owners. If the Claims Administrator receives an email address, it will send a link to the location of the Notice and Proof of Claim electronically. Nominees or custodians who elect to email links to the Notice and Proof of Claim or send the Postcard Notice to their beneficial owners shall send a written certification to the Claims Administrator confirming that the mailing or emailing has been made as directed. Copies of the Postcard Notice shall be made available to any nominee or custodian requesting same for the purpose of distribution to beneficial owners. The Claims Administrator shall, if requested, reimburse nominees or custodians out of the Settlement Fund solely for their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners, which expenses would not have been incurred except for the providing

6

names and addresses, of up to $0.03 per name, address, and email address provided to the Claims Administrator; up to $0.03 per unit for each Postcard Notice actually mailed, plus postage at the pre-sort rate used by the Claims Administrator; or up to $0.03 per email notice sent, and subject to further order of this Court with respect to any dispute concerning such reimbursement.

16.     Class Counsel, through the Claims Administrator, shall cause the Settlement Stipulation and its exhibits, this Order, and a copy of the Notice, Summary Notice and Postcard Notice to be posted on the Claims Administrator's website within twenty-eight (28) calendar days after entry of this Order.

17.     At least seven (7) calendar days prior to the Final Approval Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing.

18.     The Court finds that the form and content of the notice program described herein and the methods set forth herein for notifying the Class of the Settlement and its terms and conditions, the Fee and Expense Application, and the Plan of Allocation meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Action Reform Act of 1995, and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

19.     All fees, costs, and expenses incurred in identifying and notifying Class Members shall be paid from the Settlement Fund and in no event shall any of the Released Parties bear any responsibility or liability for such fees, costs, or expenses. Notwithstanding the foregoing, Kiromic shall be responsible for the costs and expenses of providing to Lead Counsel and/or the Claims Administrator reasonably available transfer records for purposes of mailing the Postcard Notice to the Class and Class Action Fairness Act expenses pursuant to the Stipulation.

7

20.     All Class Members shall be bound by all determinations and judgments in the Action concerning the Settlement (including, but not limited to, the releases provided for therein) whether favorable or unfavorable to the Class, regardless of whether such Persons seek or obtain by any means (including, without limitation, by submitting a Proof of Claim and Release Form or any similar document) any distribution from the Settlement Fund or Net Settlement Fund.

21.     Class Members who wish to participate in the Settlement shall complete and submit a Proof of Claim and Release Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Proofs of Claim and Release Forms must be postmarked or submitted electronically no later than _____, 2024 (a date ninety (90) calendar days from the Notice Date). Any Class Member who does not submit a Proof of Claim and Release Form within the time provided shall be barred from sharing in the distribution of the proceeds of the Net Settlement Fund, unless otherwise ordered by the Court, but shall in all other respects be bound by the terms of the Stipulation and by any final judgment entered by the Court. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund is not materially delayed thereby. No person shall have any claim against Lead Plaintiffs, Lead Counsel, or the Claims Administrator by reason of the decision to exercise such discretion whether to accept late submitted claims.

22.     Any Class Member may enter an appearance in the Action, at his, her, or its own expense, individually or through counsel of his, her, or its own choice by filing with the Clerk of Court and delivering a notice of appearance to both Lead Counsel and Kiromic's counsel, at the addresses set forth in paragraph 26 below, such that it is received no later than twenty-one (21) calendar days prior to the Final Approval Hearing. If any Class Member does not enter an appearance, they will be represented by Lead Counsel.

23.     Any Class Member who wishes to exclude himself, herself, or itself from the Class must request exclusion in writing within the time and in the manner set forth in the Notice. Any such Person must submit to the Claims Administrator a signed request for exclusion ("Request for Exclusion") such that it is postmarked no later than _____, 2024 (a date that is twenty-one (21) calendar days prior to the Final Approval Hearing). A Request for Exclusion must provide: (i) the name, address, and telephone number of the Person requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) a list identifying the number of shares of Kiromic common stock purchased or acquired during the Class Period and the date of each purchase or acquisition; and (iii) a statement that the Person wishes to be excluded from the Settlement Class in the Action and (iv) be signed by the person or entity requesting exclusion or an authorized representative. A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above, or is otherwise accepted by the Court. All Persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph and the Notice shall not be a Settlement Class Member, shall have no rights under the Settlement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Settlement or any final judgment. Unless otherwise ordered by the Court, any Person who purchased or acquired Kiromic common stock during the Class Period who fails to timely request exclusion from the Class in compliance with this paragraph shall (a) be deemed to have waived his, her, or its right to be excluded from the Class; and (b) be forever barred from requesting exclusion from the Class in this or any other proceeding; and (c) be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders and judgments in the Action, including, but not limited to, the Judgment, Alternate Judgment (if applicable) and Releases, whether favorable or unfavorable to the Settlement Class; and (d) be barred from commencing, maintaining, or prosecuting any of the

9

Released Claims against any of the Released Parties, as more fully described in the Stipulation and Notice.

24. Lead Counsel or the Claims Administrator shall cause to be provided to Defendants' Counsel copies of all Requests for Exclusion, and any written revocation of Requests for Exclusion, promptly upon receipt and as expeditiously as possible, but in no event, later than seven (7) calendar days before the Final Approval Hearing.

25. Any Person that submits a request for exclusion may thereafter submit to the Claims Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) Business Days before the Final Approval Hearing, in which event that Person will be included in the Settlement Class.

26. Any Class Members who or which does not request exclusion from the Class may appear at the Final Approval Hearing and object if he, she, or it has any reason why the proposed Settlement of the Action should not be approved as fair, reasonable, and adequate, why a judgment should not be entered thereon, why the Plan of Allocation should not be approved, or why attorneys' fees, together with costs, charges, and expenses should not be awarded to Lead Counsel or to Lead Plaintiffs; provided that any such Class Member files objections and copies of any papers and briefs with the Clerk of the United States District Court for the Southern District of New York and mails copies thereof by first-class mail to Gainey McKenna & Egleston, Thomas J. McKenna, 501 Fifth Avenue, 19th Floor, New York, NY 10017; and Sidley Austin LLP, c/o Alex J. Kaplan and Yolanda C. Garcia, 787 Seventh Avenue, New York, NY 10019, no later than _____, 2024, but in no event, not later than twenty-one (21) calendar days before the Final Approval Hearing.

27. Any Class Member who does not make his, her, or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement

10

as incorporated in the Stipulation, to the Plan of Allocation, to the award of fees, costs, charges, and expenses to Lead Counsel or the award to Lead Plaintiffs, unless otherwise ordered by the Court. Attendance at the Final Approval Hearing is not necessary. However, Persons wishing to be heard orally in opposition to the approval of the Settlement, Plan of Allocation, and/or the application for an award of fees, costs, charges, and expenses are required to indicate in their written objection their intention to appear at the hearing and to include in their written objections the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Final Approval Hearing. Class Members do not need to appear at the Final Hearing or take any other action to indicate their approval.

28.     Any objections, filings, and other submissions by an objecting Class Member must: (i) state the name, address and telephone number of the Person objecting and must be signed by the objector; (ii) contain a statement of the Class Members' objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention and whether the objections apply only to the objector, a specific subset of the Class, or to the entire Class; and (iii) include documents sufficient to prove membership in the Class, including the objecting Class Member's purchases, acquisitions and/or sales of Kiromic common stock during the Class Period, the dates, the number of shares purchased or sold, and the price paid or received for such purchase or sale. Objectors who enter an appearance and desire to present evidence at the Final Approval Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

29.     Any Class Member who does not object to the Settlement, the Plan of Allocation, or the application for an award of attorneys' fees, costs, charges and expenses in the manner prescribed herein and in the Notice shall be deemed to have waived such objection,

11

and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed Settlement, this Order and the Judgment to be entered approving the Settlement, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees together with costs, charges, and expenses, both in this Action or any other proceeding.

30.     All funds held by the Escrow Agent shall be held pursuant to the terms of the Escrow Agreement.

31.     All papers in support of the Settlement, Plan of Allocation, and any application by Lead Counsel for an award of attorneys' fees, costs, charges, and expenses shall be filed by Lead Counsel and served no later than _____, 2024 (a date that is thirty-five (35) calendar days prior to the Final Approval Hearing), and any reply papers shall be filed and served no later than _____, 2024 (a date that is seven (7) calendar days prior to the Final Approval Hearing).

32.     The Released Parties shall have no responsibility or liability for the Plan of Allocation or any application for attorneys' fees, costs, charges, or expenses submitted by Lead Counsel, and such matters will be considered by the Court separately from the fairness, reasonableness, and adequacy of the Settlement.

33.     At or after the Final Approval Hearing, the Court shall determine whether the Plan of Allocation proposed by Lead Counsel, and any application for attorneys' fees, costs, charges and expenses, should be approved. The Court reserves the right to enter the Judgment finally approving the Settlement regardless of whether it has approved the Plan of Allocation or awarded attorneys' fees and/or costs, charges, and expenses.

34.     All reasonable expenses incurred in identifying and notifying Class Members as well as administering the Settlement Fund shall be paid as set forth in the Stipulation. In the event the Court does not approve the Settlement, neither Lead Counsel nor the Claims

12

Administrator shall have any obligation to repay any amounts actually and properly incurred or disbursed pursuant to ¶ 5 of the Stipulation.

35.     This Order, and the Stipulation (including any of their respective terms or provisions), any of the negotiations, discussions, proceedings connected with them, and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement or this Order, may not be construed as an admission or concession by the Released Parties of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind, and may not be offered or received in evidence (or otherwise used by any person in the Action, or in any other action or proceeding, whether civil, criminal, or administrative, in any court, administrative agency, or other tribunal) except in connection with any proceeding to enforce the terms of the Stipulation or this Order. The Released Parties, Lead Plaintiffs, Class Members, and each of their counsel may file the Stipulation, and/or this Order, and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

36.     All proceedings in the Action are stayed until further order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be granted final approval, neither the Lead Plaintiffs nor any Class Member, either directly, representatively, or in any other capacity shall commence or prosecute any of the Released Claims against any of the Released Parties in any action or proceeding in any court or tribunal.

37.     The Court reserves the right to alter the time or the date of the Final Approval Hearing or to hold the hearing via video or telephone without further notice to Class Members and retains jurisdiction to consider all further applications arising out of or connected with the

13

proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by Lead Plaintiffs and Kiromic, if appropriate, without further notice to the Class.

38.     If the Court does not grant final approval of the Settlement, then, in any such event, the Stipulation, including any amendment(s) thereto (except as expressly provided in the Stipulation, and this Order) shall be null and void, of no further force or effect, and without prejudice to Lead Plaintiffs or any defendant in this action, and may not be introduced as evidence or used in any actions or proceedings by any person or entity against any Party in this action. In any such event, the Parties in this action shall be deemed to have reverted to their respective litigation positions as of August 6, 2023.

39.     Neither this Order, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Parties with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Parties or in any way referred to for any other reason as against any of the Released Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Released Parties, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Parties that any of their claims are without merit, that any of the Released

14

Parties had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Released Parties as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; provided, however, that if the Stipulation is approved by the Court, the Parties in this action and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

**IT IS SO ORDERED.**

DATED: _____, 2023

_____
THE HONORABLE JENNIFER H. REARDEN
UNITED STATES DISTRICT JUDGE

15

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE KIROMIC BIOPHARMA, INC., SECURITIES LITIGATION | Case No. 1:22-cv-06690 (JHR) |
| | **EXHIBIT [B]** |

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF THE CLASS ACTION, FAIRNESS HEARING AND CLASS MEMBERS' RIGHTS**

**This Notice of Pendency and Proposed Settlement of the Class Action Settlement, Fairness Hearing, and Class Members' Rights ("Notice") is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "Court"). It is not junk mail, an advertisement, or a solicitation from a lawyer. You have not been sued.**

*PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY THE PROCEEDINGS IN THE ABOVE-CAPTIONED ACTION ("ACTION"). THIS NOTICE ADVISES YOU OF YOUR RIGHTS AND OPTIONS WITH RESPECT TO THIS ACTION, INCLUDING WHAT YOU MUST DO IF YOU WISH TO SHARE IN THE PROCEEDS OF THE SETTLEMENT. TO CLAIM YOUR SHARE OF THE SETTLEMENT, YOU MUST ELECTRONICALLY SUBMIT YOUR PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM") ON OR BEFORE _____, 2024 OR MAIL YOUR CLAIM FORM TO THE ADDRESS IN QUESTION 12 SO THAT IT IS POSTMARKED NO LATER THAN _____, 20___.*

TO: ALL PERSONS AND ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED KIROMIC BIOPHARMA, INC. ("KIROMIC" or the "COMPANY") SECURITIES: (1) PURSUANT AND/OR TRACEABLE TO THE OFFERING DOCUMENTS AND/OR (2) BETWEEN JUNE 25, 2021 AND FEBRUARY 2, 2022, BOTH DATES INCLUSIVE, AND SUBJECT TO 15 U.S.C. § 78U-4(E)(1) (the "CLASS PERIOD").

The purpose of this Notice is to inform you of a proposed settlement in this Action (the "Settlement") with Defendant Kiromic. Lead Plaintiffs entered into the Settlement Agreement with Kiromic on September 29, 2023.

**Please do not contact the Court regarding this Notice.** Inquiries concerning this Notice, the Claim Form, or any other questions by Class Members should be directed to:

| | |
|---|---|
| **Lead Counsel:** | **Claims Administrator:** |
| **GAINEY McKENNA & EGLESTON** | **Kiromic BioPharma, Inc.,** |
| Thomas J. McKenna | **Securities Litigation** |
| Gregory M. Egleston | c/o Strategic Claims Services |
| 501 Fifth Avenue, 19th Floor | P.O. Box 230 |
| New York, NY 10017 | 600 N. Jackson Street, Suite 205 |
| Tel: (212) 983-1300 | Media, PA 19063 |
| Facsimile: (212) 983-0383 | Tel: 866-274-4004 |
| Email: tjmckenna@gme-law.com | Facsimile: 601-565-7985 |

Email: gegleston@gme-law.com        Email: info@strategicclaims.net
                                    www.strategicclaims.net/Kiromic

*If you are a brokerage firm, futures commission merchant, nominee or other person or entity who or which purchased or otherwise acquired Kiromic securities pursuant and/or traceable to the Offering Documents and/or during the Class Period for the beneficial interest of persons or organizations other than yourself,* you are requested to, WITHIN SEVEN (7) DAYS OF YOUR RECEIPT OF THIS NOTICE, either: (i) provide to Strategic Claims Services (the "Claims Administrator") the name and last known address of each person or organization for whom or for which you made such transaction during the Class Period; or (ii) request from the Claims Administrator sufficient copies of the Notice to forward directly to beneficial owners of the Kiromic securities. You may be reimbursed from the Settlement Fund for your reasonable out-of-pocket expenses. Those expenses will be paid upon request and submission of appropriate supporting documentation. All communications regarding the foregoing should be addressed to the Claims Administrator at the address listed above.

Lead Plaintiffs allege that Defendants, Kiromic and certain of Kiromic's officers and directors (Maurizio Chiriva-Internati, Tony Tontat, Gianluca Rotino, Pietro Bersani, Americo Cicchetti, Michael Nagel, and Jerry Schneider), along with ThinkEquity LLC, violated the federal securities laws by making, or allowing to be made, false and/or misleading statements and material omissions to be published in the Company's Offering Documents (June 25, 2021 Registration Statement, June 29, 2021 Final Prospectus, any other public document issued by the Company regarding the offering) and/or in their statements to the investing public during the Class Period.

The Court has preliminarily approved the Settlement <u>with Kiromic</u>. To resolve all Released Claims against all Released Parties, Kiromic has agreed to pay or cause to be paid a total of **$2,300,000** (the "Settlement Amount"). Class Members who or which do not opt out of the Settlement will release their claims against all Defendants in the Action if the Settlement is granted final approval by this Court.

•The approximate recovery, before deduction of attorneys' fees, expenses, and award to Plaintiffs approved by the Court, is an average of $.14 per damaged share of Kiromic securities. This estimate is based on the assumptions set forth in the following two paragraphs. Your actual recovery, if any, will depend on the aggregate losses of all Settlement Class Members, the date(s) you purchased and sold Kiromic securities, the purchase and sales prices, and the total number of claims filed and the aggregate losses of Settlement Class Members.

• Attorneys for Lead Plaintiffs ("Lead Counsel") intend to ask the Court to award them fees of up to one-third of the Settlement Amount; reimbursement of litigation expenses of no more than $35,000; and an award to Lead Plaintiffs not to exceed $10,000 in total. Collectively, the attorneys' fees and expenses and award to Lead Plaintiff are estimated to average $.05 per damaged share. If approved by the Court, these amounts will be paid from the Gross Settlement Fund ("Settlement Fund").

• The Settlement represents an estimated average recovery of $.09 per damaged share of Kiromic securities for the approximately 16.2 million shares damaged during the Settlement Class Period. This is not an estimate of the actual recovery per share you should expect. Your

2

actual recovery will depend on the aggregate losses of all Settlement Class Members, the date(s) you purchased and sold Kiromic securities, and the total number of claims filed.

The following table contains a summary of your rights and options regarding the Settlement. More detailed information about your rights and options can be found in the Settlement Agreement and accompanying documents, which are available at www.strategicclaims/Kiromic/ .

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing in connection with this Settlement, you will receive no payment from the Settlement *and* you will be bound by past and any future Court rulings, including rulings on the Settlement, if approved, and the settlement release. *See* question 18. |
| **FILE A CLAIM FORM** | The only way to receive your share of the Net Settlement Fund is to complete and electronically submit a timely and valid Claim Form to the Settlement Administrator by no later than **[date], 20___** or to mail your completed Claim Form so that it is postmarked no later than **[date], 20___**. *See* question 12. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | If you wish to exclude yourself from the Settlement, you must submit by U.S. first class mail (or, if sent from outside the U.S., by a service that provides for guaranteed delivery within five (5) or fewer calendar days of mailing) or deliver a written request to the Claims Administrator so that it is received by **[date], 20___**. If you exclude yourself, you will not be bound by the Settlement, if approved, or settlement release, and you will not be eligible for any payment from the Settlement. *See* questions 19–23. |
| **OBJECT TO THE SETTLEMENT** | If you wish to object to the Settlement, you must file a written objection with the Court and serve copies on Lead Counsel and Kiromic's Counsel so that it is received by **[date], 20___**. You must be and remain within the Settlement Class in order to object. *See* questions 24 and 25. |
| **PARTICIPATE AT THE FAIRNESS HEARING** | You may ask the Court for permission to speak about the Settlement at the Fairness Hearing, which will be held [in-person-remotely] at Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY 10007, by including such a request in your written objection, which you must file with the Court and serve on Lead Counsel and Kiromic's Counsel so that it is received by **[date], 2024**. The Fairness Hearing is scheduled for **[date], 2024**. *See* questions 28–30. |
| **APPEAR THROUGH AN ATTORNEY** | You may enter an appearance through your own counsel at your own expense. *See* question 30. |

These rights and options and the deadlines to exercise them are explained in this Notice. The capitalized terms used in this Notice are explained or defined below or in the Settlement Agreement, which is available on _____.

3

The Court has appointed the lawyers listed below ("Lead Counsel") to represent you and the Settlement Class in this Action:

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

## <u>WHAT THIS NOTICE CONTAINS</u>

BASIC INFORMATION ...................................................................................................5

   1.  What is a Class Action Lawsuit? .......................................................................5

   2.  Why Did I Get This Notice? .............................................................................6

   3.  What Are the Definitions Used in This Notice? ...............................................6

   4.  What is This Action About? ..............................................................................6

   5.  What is the History of This Action? .................................................................6

   6.  Why is There a Settlement? .............................................................................7

   7.  How Does Settlement Affect the Claims Against Defendants Other than Kiromic? ....8

WHO GETS MONEY FROM THE SETTLEMENT ......................................................8

   8.  How Do I Know if I Am a Class Member? ......................................................8

   9.  Are There Exceptions to Being Included in the Settlement Class? ...............8

   10. I'm Still Not Sure if I Am Included. ..............................................................9

THE SETTLEMENT BENEFITS ....................................................................................9

   11. What Does the Settlement Provide? ................................................................9

   12. How Will I Get a Payment? .............................................................................9

   13. How Much Will My Payment Be? ..................................................................10

   14. What is the Plan of Allocation? .....................................................................10

15. When Will I Receive Payment?........................................................................................15

16. What Do I Have to Do After I File a Claim Form? ........................................................15

17. What Am I Giving Up to Receive a Payment?...............................................................15

18. What If I Do Nothing?...................................................................................................16

EXCLUDING YOURSELF FROM THE SETTLEMENT ........................................................17

19. What If I Do Not Want to Be in the Settlement Class? .................................................17

20. How Do I Exclude Myself? ...........................................................................................17

21. If I Do Not Exclude Myself, Can I Sue Kiromic for the Same Thing Later?..............18

22. If I Exclude Myself, Can I Get Money from the Settlement?........................................18

23. If I Exclude Myself, Can I Still Object? .......................................................................18

OBJECTING TO THE SETTLEMENT .....................................................................................18

24. How Do I Tell the Court What I Think About the Settlement?.....................................18

25. What is the Difference Between Objecting and Excluding Myself? .............................19

THE LAWYERS REPRESENTING YOU.................................................................................20

26. Do I Have a Lawyer in the Case? .................................................................................20

27. How Will the Lawyers be Paid? ...................................................................................20

THE COURT'S FAIRNESS HEARING ...................................................................................20

28. When and Where Will the Court Decide Whether to Approve the Settlement? .........20

29. Do I Have to Participate at the Fairness Hearing?........................................................21

30. May I Speak at the Fairness Hearing? ..........................................................................21

GETTING MORE INFORMATION ..........................................................................................21

31. How Do I Get More Information?..................................................................................21

**<u>BASIC INFORMATION</u>**

### 1.  What is a Class Action?

A class action is a lawsuit in which one or more representative plaintiffs (in this case, Lead Plaintiffs) bring a lawsuit on behalf of themselves and other similarly situated persons (i.e., a

class) who have similar claims against the defendants. The representative plaintiffs, the court, and counsel appointed to represent the class all have a responsibility to make sure that the interests of all class members are adequately represented.

Importantly, class members are NOT individually responsible for payment of attorneys' fees or litigation expenses. In a class action, attorneys' fees and litigation expenses are paid from the settlement fund (or the court-awarded judgment amount) and must be approved by the court. If there is no recovery on behalf of the class, the attorneys do not get paid.

When a representative plaintiff enters into a settlement with a defendant on behalf of a class, such as in this Settlement with Kiromic, the court will require that the members of the class be given notice of the settlement and an opportunity to be heard with respect to the settlement. The court then conducts a hearing (called a Fairness Hearing) to determine, among other things, if the settlement is fair, reasonable, and adequate.

## 2. Why Did I Get This Notice?

You received this Notice because you requested it or records indicate that you may be a Class Member. As a potential Class Member, you have a right to know about the proposed Settlement with Kiromic before the Court decides whether to approve the Settlement.

This Notice explains the Action, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how you can apply to receive your portion of the benefits if you are eligible. The purpose of this Notice is also to inform you of the Fairness Hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement and Plan of Allocation and to consider requests for awards of attorneys' fees, litigation expenses and costs, and any Incentive Awards for Lead Plaintiffs from the Settlement Fund.

## 3. What are the Definitions Used in this Notice?

This Notice incorporates by reference the definitions in the Stipulation of Settlement with Kiromic (the "Stipulation").

The Stipulation and the Court's Preliminary Approval Order are posted on the Settlement Website. All capitalized terms used, but not defined, shall have the same meanings as in the Stipulation and the Court's Preliminary Approval Order.

## 4. What is This Action About?

Lead Plaintiffs allege that Defendants Kiromic and certain named officers and directors of Kiromic, along with ThinkEquity LLC violated the Securities Act of 1933 ("Securities Act") and Securities Exchange Act of 1934 ("Exchange Act") in making, or allowing to be made, false and/or misleading statements and material omissions in the Company's June 25, 2021 Registration Statement, June 29, 2021 Final Prospectus, and any other public document issued by the Company regarding the offering (together, "Offering Documents") and/or in their statements to the investing public during the Class Period. Among other things, Lead Plaintiffs allege that Defendants (i) failed to disclose that the FDA had imposed a clinical hold in their Offering Documents; and (ii) in fact published statements in the Offering Statements indicating

6

that the FDA has not imposed a clinical hold, which caused the Company's share price to fall, causing damage to Lead Plaintiffs and Class Members.

Kiromic maintains that it has good and meritorious defenses to Lead Plaintiffs' claims and would prevail if the case were to proceed. Nevertheless, to settle the claims in this lawsuit, and thereby avoid the expense and uncertainty of further litigation, Kiromic has agreed to pay a total of Two Million Three Hundred Thousand Dollars ($2,300,000) into an escrow account (the "Settlement Amount"), plus interest earned from the date it was established (the "Settlement Fund"), less any taxes, the reasonable cost of Class Notice and administration, any Court-awarded attorneys' fees, litigation expenses and costs, Incentive Awards for Lead Plaintiffs, and any other costs or fees approved by the Court (the "Net Settlement Fund") will be divided among all Class Members who file timely and valid Claim Forms.

If the Settlement is approved, the Action will be resolved against all Defendants. If the Settlement is not approved, Kiromic and the other Defendants will remain as Defendants in the Action, and Lead Plaintiffs will continue to pursue their claims against Defendants.

### 5.   What is The History of This Action?

On August 5, 2022, Plaintiff Ronald Karp filed a complaint on behalf of himself and a putative class against Defendants alleging violations of the Securities Act and Exchange Act in the Southern District of New York, as described above. Subsequently, another plaintiff filed a similar action concerning these same allegations, and on October 27, 2022, the Court consolidated all related cases into this Action, appointing Ronald Karp, Ari Karp, and Ethan Karp as Lead Plaintiffs and law firm Gainey McKenna & Egleston as Lead Counsel. *See* ECF Nos. 1, 23, 37.

On February 6, 2023, certain Parties entered into a stipulation adjourning all case deadlines for a 45-day period, during which the Lead Plaintiffs and Kiromic engaged in settlement discussions. The parties made progress during that period and agreed to extend the adjournment period on March 20, 2023 and once again on May 4, 2023, in order to engage in further settlement discussions. Both of these agreements were so-ordered by the Court on April 5, 2023 and May 5, 2023, respectively. *See* ECF Nos. 48 and 50.

On August 7, 2023, following extensive settlement discussions, Lead Plaintiffs, through their counsel, wrote to the Court to inform the Court that a global settlement in principle of the Action had been reached. The Court then stayed the proceedings and ordered on August 8, 2023 that the Parties submit the necessary papers seeking preliminary approval of the proposed settlement by September 22, 2023. *See* ECF No. 52.

The Court subsequently agreed to extend this deadline to September 29, 2023. *See* ECF No. 54.

### 6.   Why is There a Settlement?

Lead Plaintiffs and Lead Counsel believe that Class Members have been damaged by Defendants' conduct. Kiromic believes that is has meritorious defenses to Lead Plaintiffs' allegations and believes that Lead Plaintiffs claims would have been rejected prior to trial, at trial (had Lead Plaintiffs successfully certified a class and survived summary judgment motions

and motions to dismiss), or on appeal. As a result, Kiromic believes Lead Plaintiffs would have received nothing if the Action had continued.

The Court has not decided in favor of either Lead Plaintiffs or Kiromic. Instead, Lead Counsel engaged in settlement discussions with Kiromic to reach a negotiated resolution of the Action. The Settlement allows both sides to avoid the risks and costs of lengthy litigation and the uncertainty of pre-trial proceedings, a trial, and appeals, and, if approved, will permit eligible Class Members who file timely and valid Claim Forms to receive some compensation, rather than risk ultimately receiving nothing. Lead Plaintiffs and Lead Counsel believe the Settlement is in the best interest of all Class Members.

Kiromic has agreed to pay a total of $2,300,000 in cash for the benefit of the Settlement Class. If the Settlement is granted final approval by this Court, the Net Settlement Fund will be divided among all Class Members who file timely and valid Claim Forms.

If the Settlement is granted final approval by this Court, the Action will be resolved against all Defendants. If the Settlement is not approved, Kiromic and the other Defendants will remain as Defendants in the Action, and Lead Plaintiffs will continue to pursue their claims against Defendants.

### 7. How Does Settlement Affect the Claims Against Defendants Other Than Kiromic?

Lead Plaintiffs' claims against the Individual Defendants (named above) and ThinkEquity LLC will be released and the case will be fully resolved if the Settlement is granted final approval by this Court.

## WHO GETS MONEY FROM THE SETTLEMENT

### 8. How Do I Know if I Am a Class Member?

In the Preliminary Approval Order, the Court Preliminarily approved the following Settlement Class:

> All persons and entities who purchased or acquired Kiromic Biopharma, Inc. ("Kiromic" or the "Company") securities (1) pursuant and/or traceable to the Offering Documents and/or (2) during the period between June 25, 2021 and February 2, 2022, both dates inclusive (the "Class Period").

Not everyone who fits this description will be a Class Member. Please see question 9 for a discussion of exclusions from the Settlement Class.

### 9. Are There Exceptions to Being Included in the Settlement Class?

Yes. You are not included in the settlement class if you are: (i) Defendants; (ii) the officers and directors of the Company at all relevant times; (iii) members of any Defendant's immediate families; (iv) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (v) the legal representatives, heirs, successors, and assigns of such excluded Persons; (vi) the plaintiffs in the action captioned *Sabby Volatility Warrant Master Fund Ltd., et al. v. Kiromic Biopharma, Inc.*, No. 22-cv-

8

1927(AT) (S.D.N.Y.), and any claims that were or could have been filed or consolidated therewith; (vii) those who purchased or otherwise acquired Kiromic common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010); and (viii) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

### 10. I'm Still Not Sure if I'm Included.

If you are still not sure if you are included, you can ask for free help. You can call toll-free at 866-274-4004 or visit the Settlement Website, www.strategicclaimsnet/Kiromic/, for more information.

**THE SETTLEMENT BENEFITS**

### 11. What Does the Settlement Provide?

Kiromic has paid or will cause to be paid a total of $2,300,000 in installments into an Escrow Fund to be held for disbursement to the Settlement Class and to pay for Court-approved fees and expenses if the Settlement is approved. The Settlement gives Kiromic the right to terminate the Settlement in the event that the volume of Class Members who timely exercise their right to request exclusion from the Settlement Class exceeds a certain percentage.

This is not a claims-made settlement, and Kiromic is not involved in the development of the Plan of Allocation for the Settlement. The Parties' expectation is that the Settlement Fund will be fully distributed to Settling Class Members. In the event the Settlement Fund contains any remaining balance after a reasonable period of time after the date of initial distribution, Lead Counsel, if feasible, will reallocate such balance among Class Members in an equitable and economic fashion. These redistributions shall be repeated until the balance remaining in the Settlement Fund is no longer feasible to distribute to Class Members. Thereafter, any remaining balance shall be donated, as a *cy pres* award, to a public interest cause as ordered by the Court.

### 12. How Will I Get a Payment?

If you are a Class Member and do not exclude yourself, you are eligible to file a Claim Form to receive your share of money from the Net Settlement Fund. Claim Forms must be submitted online at www.strategicclaims.net/Kiromic/ on or before [**date], 20____ OR** postmarked by [**date], 20____** and mailed to:

**CLAIMS ADMINISTRATOR:**

Kiromic BioPharma, Inc., Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel.: 866-274-4004
Fax: 610-565-7985
info@strategicclaims.net

Following the timely submission and receipt of your Claim Form, the Claims Administrator will send you a "Confirmation of Claim Receipt," which will acknowledge receipt of your Claim and will inform you of important next steps.

Please keep all data and documentation related to your Kiromic securities. Having data and documentation may be important to substantiating your Claim Form.

If you do not file a Claim Form, you will not receive any payments under the Settlement.

### 13. How Much Will My Payment Be?

Your share of the Net Settlement Fund will or may depend on: (i) the number of claims filed and the numbers of damaged shares per claim; (ii) the dates you purchased and sold Kiromic securities; (iii) the prices of your purchases and sales; (iv) the amount of administrative costs, including the costs of notice; and (v) the amount awarded by the Court to Lead Counsel for attorneys' fees, costs, and expenses, and awards to Plaintiffs.

The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's valid "Recognized Loss." The Recognized Loss formula is not intended to be an estimate of the amount that a Settlement Class Member might have been able to recover after a trial; it also is not an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.

The Net Settlement Fund will be distributed to Settlement Class Members who submit a Proof of Claim and Release Form with required supporting documentation and whose claims for recovery are allowed by the Claims Administrator pursuant to the terms of the Stipulation of Settlement or by order of the Court under the below Plan of Allocation, which reflects Plaintiffs' contention that because of the alleged misrepresentations made by Defendants, the price of Kiromic securities was artificially inflated during the relevant period and that certain subsequent disclosures caused changes in the inflated price of Kiromic securities.

### 14. What is the Plan of Allocation?

**PROPOSED PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND**

The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Court may approve the Plan of Allocation with or without modifications agreed to among the parties, or another plan of allocation, without further notice to Settlement Class Members.  Any orders regarding a modification of the Plan of Allocation will be posted to the Settlement Administrator's website, www.strategicclaims.net/Kiromic/. Further, as provided in the proposed Settlement, Lead Counsel shall have all responsibility for implementing this Plan of Allocation with the assistance of the Claims Administrator; for the avoidance of doubt, Defendants shall have no responsibility or liability with respect to the Plan

10

of Allocation, have not participated in its drafting, and do not admit or deny anything contained herein or therein.

To the extent there are sufficient funds remaining in the Net Cash Settlement Amount, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Loss.  If, however, Net Cash Settlement Amount is not sufficient to permit payment of the total Recognized Loss of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Cash Settlement Amount that each Authorized Claimant's Recognized Loss bears to the total Recognized Losses of all Authorized Claimants (*i.e.*, "*pro rata* share").  Payment in this manner shall be deemed conclusive against all Authorized Claimants.  No distribution will be made on a claim where the potential distribution amount is less than ten dollars ($10.00) in cash.

If any of the Net Cash Settlement Amount remains by reason of uncashed checks, or otherwise, after the Settlement Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Cash Settlement Amount cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution, including the $10.00 minimum check amount set forth in the Notice; (ii) second, to pay any additional Notice and Administrative Expenses incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Cash Settlement Amount and in making this second distribution, if such second distribution is economically feasible.  If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Cash Settlement Amount after the Settlement Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Cash Settlement Amount shall be donated, as a cy pres, to a non-profit charitable organization(s).

### THE BASIS FOR CALCULATING YOUR RECOGNIZED LOSS:

Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants.

11

I)   Recognized Loss for Kiromic common stock purchased in and/or traceable to the Company's Offering[1] at $5.00 per share[2], Recognized Loss shall be calculated as follows:

    A.   For each share of common stock sold between June 30, 2021 and August 5, 2022, inclusive, the Recognized Loss shall be the difference between $5.00 Offering price per share and the selling price per share.

    B.   For each share of common stock retained as of the close of trading on August 5, 2022[3], the Recognized Loss shall be $4.63 per share[4].

II)   Recognized Loss for Kiromic's common stock purchased during the Class Period, excluding share purchased in the Offering, shall be calculated as follows:

    A.   For shares purchased or otherwise acquired during the Class Period, the Recognized Loss per share shall be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below) less the inflation per share upon sale (as set forth in Inflation Table A below); or (2) the purchase price per share minus the sales price per share.

    B.   For shares purchased or otherwise acquired during the Class Period and sold during the period between February 3, 2022 and May 3, 2022, inclusive, the Recognized Loss shall be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below); or (2) the difference between the purchase price per share and the average closing stock price as of date of sale provided in Table B below.

    C.   For shares purchased during the Class Period and retained as of the close of trading on May 3, 2022, the Recognized Loss shall the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below); or (2) the purchase price per share minus $.77 per share[5].

---

[1] The Final Offering Prospectus was filed with the SEC on June 29, 2021.  The shares were offered to the public at $5.00 per share on June 30, 2021.

[2] Only shares purchased at $5.00 per share on or about June 30, 2021 are considered shares traceable to the Offering Documents. All other shares purchased after the Offering at a price different than $5.00 per share are no longer considered traceable to the Offering Documents.

[3] Date of the initial suit.

[4] This represents the difference in Kiromic's $5.00 per share Offering price and the value of the Company's common stock on date of suit on August 5, 2022 of $.37 per share.

[5] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated."  $.77 per share was the mean (average) daily closing trading price of the Company's common stock during the 90-day period between February 3, 2022 and May 3, 2022, dates inclusive.

| INFLATION TABLE A | |
|---|---|
| Common Stock Purchased or Otherwise Acquired During the Class Period | |
| **Period** | **Inflation** |
| Between June 25, 2021 and July 15, 2021, inclusive | $.99 per share |
| Between July 16, 2021 and October 5, 2021, inclusive | $.36 per share |
| Between October 6, 2021 and February 2, 2022 | $.15 per share |
| After February 2, 2022 | $0.00 per share |

Table
B

| Date | Closing Price | Average Closing Price | Date | Closing Price | Average Closing Price |
|---|---|---|---|---|---|
| 2/3/2022 | $0.87 | $0.87 | 3/21/2022 | $0.82 | $0.77 |
| 2/4/2022 | $0.85 | $0.86 | 3/22/2022 | $0.84 | $0.77 |
| 2/7/2022 | $0.95 | $0.89 | 3/23/2022 | $0.89 | $0.77 |
| 2/8/2022 | $0.95 | $0.90 | 3/24/2022 | $0.90 | $0.78 |
| 2/9/2022 | $0.93 | $0.91 | 3/25/2022 | $0.87 | $0.78 |
| 2/10/2022 | $0.95 | $0.92 | 3/28/2022 | $0.86 | $0.78 |
| 2/11/2022 | $0.88 | $0.91 | 3/29/2022 | $0.87 | $0.79 |
| 2/14/2022 | $0.78 | $0.89 | 3/30/2022 | $0.90 | $0.79 |
| 2/15/2022 | $0.72 | $0.87 | 3/31/2022 | $0.85 | $0.79 |
| 2/16/2022 | $0.69 | $0.86 | 4/1/2022 | $0.86 | $0.79 |
| 2/17/2022 | $0.63 | $0.84 | 4/4/2022 | $0.86 | $0.79 |
| 2/18/2022 | $0.67 | $0.82 | 4/5/2022 | $0.86 | $0.79 |
| 2/22/2022 | $0.67 | $0.81 | 4/6/2022 | $0.79 | $0.79 |
| 2/23/2022 | $0.62 | $0.80 | 4/7/2022 | $0.83 | $0.80 |
| 2/24/2022 | $0.60 | $0.78 | 4/8/2022 | $0.84 | $0.80 |
| 2/25/2022 | $0.61 | $0.77 | 4/11/2022 | $0.83 | $0.80 |
| 2/28/2022 | $0.68 | $0.77 | 4/12/2022 | $0.87 | $0.80 |
| 3/1/2022 | $0.78 | $0.77 | 4/13/2022 | $0.85 | $0.80 |
| 3/2/2022 | $0.78 | $0.77 | 4/14/2022 | $0.84 | $0.80 |
| 3/3/2022 | $0.87 | $0.77 | 4/18/2022 | $0.80 | $0.80 |

13

| | | | | | |
|---|---|---|---|---|---|
| 3/4/2022 | $0.87 | $0.78 | 4/19/2022 | $0.75 | $0.80 |
| 3/7/2022 | $0.68 | $0.77 | 4/20/2022 | $0.72 | $0.80 |
| 3/8/2022 | $0.66 | $0.77 | 4/21/2022 | $0.70 | $0.80 |
| 3/9/2022 | $0.75 | $0.77 | 4/22/2022 | $0.65 | $0.79 |
| 3/10/2022 | $0.75 | $0.77 | 4/25/2022 | $0.63 | $0.79 |
| 3/11/2022 | $0.76 | $0.77 | 4/26/2022 | $0.62 | $0.79 |
| 3/14/2022 | $0.70 | $0.77 | 4/27/2022 | $0.60 | $0.78 |
| 3/15/2022 | $0.72 | $0.76 | 4/28/2022 | $0.62 | $0.78 |
| 3/16/2022 | $0.76 | $0.76 | 4/29/2022 | $0.60 | $0.78 |
| 3/17/2022 | $0.82 | $0.77 | 5/2/2022 | $0.59 | $0.78 |
| 3/18/2022 | $0.83 | $0.77 | 5/3/2022 | $0.58 | $0.77 |

For purposes of calculating your Recognized Loss, the date of purchase, acquisition or sale is the "contract" or "trade" date and not the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of the Company's common stock shall not be deemed a purchase, acquisition or sale of the Company's common stock for the calculation of an Authorized Claimant's Recognized Loss. Shares purchased in and/or traceable to the Company's Offering under the Section 11 Claim will not be eligible to participate in the 10b-5 Claim.

For purposes of calculating your Recognized Loss, all purchases, acquisitions and sales shall be matched on a First In First Out ("FIFO") basis in chronological order. Therefore, on the Proof of Claim enclosed with this Notice, you must provide all your purchases and acquisitions of the Company's common stock during the period between June 15, 2021 and August 5, 2022, dates inclusive.

Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants. No person shall have any claim against Defendants, Defendants' Counsel, Lead Plaintiffs, Lead Counsel or the Settlement Administrator or other agent designated by Lead Counsel based on the distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court. Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's Claim Form. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Cash Settlement Amount shall be released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Cash Settlement Amount, will be barred from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided in any distribution orders entered by the Court.

14

The Plan of Allocation is available for review on the Settlement website, www.strategicclaims.net/Kiromic/. Changes, if any, to the Plan of Allocation based on newly available data or information or any Court order will be promptly posted on the Settlement website. Please check the Settlement website for the most up-to-date information about the Plan of Allocation.

### 15. When Will I Receive a Payment?

The Court will hold the Fairness Hearing on [date], 2024 to decide whether to approve the Settlement and Plan of Allocation. Even if the Court approves the Settlement and Plan of Allocation, there may be appeals after that. It can sometimes take a year or more for the appellate process to conclude.

Please be patient; status updates will be posted on the Settlement website.

### 16. What Do I Have to do After I File a Claim Form?

After you file a Claim Form, the Claims Administrator will evaluate your Claim Form to determine if you have provided sufficient information to validate your membership in the Settlement Class and your claim. If the Settlement Administrator determines that your Claim Form is deficient or defective, it will contact you. If you subsequently provide information that satisfies the Settlement Administrator concerning the validity of your Claim Form, you will not have to do anything else. If any disputes cannot be resolved, Lead Counsel will submit them to the Court, and the Court will make a final determination of the validity of your Claim Form.

Please keep all data and documentation related to your Kiromic securities. Having data and documentation may be important to substantiating your Claim Form.

### 17. What Am I Giving Up to Receive a Payment?

Unless you exclude yourself, you remain a Class Member. That means you cannot sue, continue to sue, or be part of any other lawsuit about the Released Claims in this Action against Kiromic, the Individual Defendants, and any of the Released Parties if this Court grants final approval of the Settlement.  Upon the Effective Date of the Settlement, Lead Plaintiffs and each of the Releasing Parties shall release and be deemed to release and forever discharge and shall be forever enjoined from prosecuting the Released Claims against the Released Parties.

The capitalized terms used in this paragraph are defined in the Settlement Agreement, Preliminary Approval Order, or this Notice. For easy reference, certain of these terms are copied below:

    (a) "Related Parties" means each of the Defendants' respective (a) immediate family members and any trust that each Person is the settlor of or which is for their benefit and/or the benefit of their family; and (b) current or former predecessors, successors, parent corporations, sister corporations, subsidiaries, affiliates, assigns, assignors, divisions, joint ventures, heirs, legatees, executors, administrators, estates, receivers and trustees, settlors, beneficiaries, officers, directors, shareholders, employees, agents, consultants, contractors, auditors, partners, insurers, reinsurers, representatives, attorneys, legal representatives, and all persons acting by, through, under, or in concert with them or any of them.

(b) "Released Claims" means any and all complaints, claims, third-party claims, cross claims, counterclaims, demands, allegations, liabilities, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, damages, costs, losses, debts, charges, expenses (including attorneys' fees, expert fees, and disbursements of counsel and other professionals) of any and every nature whatsoever, whether in law or in equity, whether arising under federal, state, local, or foreign statutory or common law or any other law, rule, or regulation (whether foreign or domestic), whether currently known or unknown (including Unknown Claims (as defined herein)), fixed or contingent, suspected or unsuspected, foreseen or unforeseen, ripened or unripened, accrued or unaccrued, liquidated or unliquidated, or matured or not matured, whether arising in equity or under the law of contract, tort, malpractice, statutory breach, or any other legal right or duty, whether direct, class, individual, representative, or any other capacity, to the fullest extent that the law permits to be released, that Lead Plaintiffs, or any other member of the Settlement Class: (a) asserted in the Action, or (b) could have asserted against any of the Released Parties in the Action or in any forum that: (i) arise out of, relate to, are connected with, or in any way concern the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations, misrepresentations, or omissions involved, set forth, alleged, or referred to, in this Action, or which could have been alleged in this Action; (ii) arise out of, are based upon, or relate in any way to the purchase or acquisition of the publicly traded common stock of Kiromic on the NASDAQ Capital Market during the Class Period; (iii) arise out of, are based upon, or relate in any way to the Offering; or (iv) otherwise could have been brought against any Defendant at law, equity, or otherwise. Released Claims do not include any claims relating to the enforcement of the Settlement.

(c) "Released Parties" means each and all of the Defendants and their respective Related Parties.

(d) "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means Lead Plaintiffs, each and every Settlement Class Member, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, representatives, affiliates, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the respective spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Releasing Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

## 18. What if I Do Nothing?

You are automatically a member of a Settlement Class if you fit the Settlement Class description. However, if you do not submit a timely and valid Claim Form, you will not receive any payment from the Settlement. You will be bound by past and any future Court rulings, including rulings on the Settlement and release. Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be a part of any other lawsuit against Kiromic

16

or any of the other Released Parties on the basis of the Released Claims. Please see question 17 for a description of the Released Claim.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

#### 19. What if I Do Not Want to Be in the Settlement Class?

If you are a Class Member, do not want to remain in the Settlement Class, and do not want a payment from the Settlement, then you must take steps to exclude yourself from the Settlement. This is also sometimes referred to as "opting out" of a class. *See* question 20.

If you act to exclude yourself from the Settlement Class of which you would otherwise be a member, you will be free to pursue Kiromic or any of the other Released Parties on your own for the claims being resolved by the Settlement. However, you will not receive any money from the Settlement, and Lead Counsel will no longer represent you with respect to any claims against Kiromic.

If you want to receive money from the Settlement, do not exclude yourself. You must file a Claim Form in order to receive any payment from the Settlement.

#### 20. How Do I Exclude Myself?

You can exclude yourself by sending a written "Request for Exclusion." You cannot exclude yourself by telephone or email. Your written Request for Exclusion must be mailed by U.S. first class mail (or, if sent from outside the U.S., by a service that provides for guaranteed delivery within five (5) or fewer calendar days of mailing) or delivered so that it is received by **[date], 2024**, to:

### CLAIMS ADMINISTRATOR:

Kiromic BioPharma, Inc., Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel.: 866-274-4004
Fax: 610-565-7985
info@strategicclaims.net

and (a) state the name, address, and telephone number of the Person or entity seeking exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (b) state that such Person or entity requests to be excluded from the Settlement Class in the Action (*In re Kiromic Biopharma, Inc. Securities Litigation*, Case No. 1:22-cv-06690 (JHR) (S.D.N.Y.)); and (c) may provide one or more document(s) sufficient to prove membership in the Settlement Class, as well as proof of authorization to submit the Request for Exclusion if submitted by an authorized representative.

With respect to the kinds of documents that are requested under subsection (c) in the preceding paragraph, any Class Member seeking to exclude himself, herself or itself from the Settlement Class will be requested to and may opt to provide one or more document(s) evidencing eligible purchase or acquisition of Kiromic securities during the Class Period (including the type and

17

number of contract(s) traded, and the date(s) and (if available) price(s) at which the security was purchased). Any Request for Exclusion must be signed by such Person or entity requesting the exclusion or an authorized representative and include proof of authorization to submit the Request for Exclusion if submitted by an authorized representative. The Parties may seek leave of the Court to ask any Person or entity that seeks to be excluded from the settlement to provide documents sufficient to prove membership in the Settlement Class.

A Request for Exclusion that does not include all of the required information, does not contain the proper signature, is sent to an address other than the one designated above, or that is not sent within the time specified shall be invalid and the person(s) filing such an invalid request shall be a Class Member and shall be bound by the Settlement, if approved.

All persons who submit valid and timely Requests for Exclusion in the manner set forth above shall have no rights under the Settlement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Settlement. In addition, such persons will not be entitled to object to the Settlement or participate at the Fairness Hearing.

### 21. If I Do Not Exclude Myself, Can I Sue Kiromic and the Other Defendants for the Same Thing Later?

No. Unless you exclude yourself from this Settlement, you give up any right to sue Kiromic and the other Released Parties for the Released Claims that this Settlement resolves. If you decide to exclude yourself from this Settlement, your decision will apply to Kiromic and the other Released Parties.

### 22. If I Exclude Myself, Can I Get Money from the Settlement?

No. You will not get any money from the Settlement if you exclude yourself.

### 23. If I Exclude Myself, Can I Still Object?

No. If you exclude yourself, you are no longer a Class Member and may not object to any aspect of the Settlement.

### <u>OBJECTING TO THE SETTLEMENT</u>

### 24. How Do I Tell the Court What I Think About the Settlement?

If you are a Class Member and you do not exclude yourself, you can tell the Court what you think about the Settlement. You can object to all or any part of the Settlement, Plan of Allocation, and/or application for attorneys' fees, reimbursement of litigation expenses and costs, and any proposed Incentive Awards for Lead Plaintiffs. You can give reasons why you think the Court should approve them or not. The Court will consider your views. If you want to make an objection, you may enter an appearance in the Action, at your own expense, individually or through counsel of your own choice, by filing with the Clerk of United States District Court for the Southern District of New York a notice of appearance and your objection, and serving copies of your objection on Lead Counsel and Kiromic's Counsel such that it is received by [**date], 20____** to the following email and physical addresses:

**Lead Counsel:**            **Kiromic's Counsel:**

**GAINEY McKENNA & EGLESTON**            **SIDLEY AUSTIN LLP**

18

Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

Alex J. Kaplan
Yolanda C. Garcia
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: ajkaplan@sidley.com
Email: ygarcia@sidley.com

Any Class Member who does not enter an appearance will be represented by Lead Counsel.

If you choose to object, you must file a written objection. You cannot make an objection by telephone or email. Your written objection must include: (i) the name, address, telephone number, and email address of the Person or entity objecting and must be signed by the Class Member (an attorney's signature is not sufficient); (ii) the name of the Action (*In re Kiromic Biopharma, Inc. Securities Litigation*, Case No. 1:22-cv-06690 (JHR) (S.D.N.Y.)); (iii) a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; (iv) whether the objection applies only to the Class Member, a specific subset of the Settlement Class, or the entire Settlement Class; (v) documents sufficient to prove the Class Member's membership in the Settlement Class; (vi) a statement of whether you intend to participate at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, address, telephone number, and email address; and (vii) a list of other cases in which you or your counsel has appeared either as an objector or counsel for an objector in the last five years. If you enter an appearance and desire to present evidence at the Fairness Hearing in support of your objection, you must also include in your written objection or notice of appearance the identity of any witnesses you may call to testify and any exhibits you intend to introduce into evidence at the hearing. Objectors may, in certain circumstances, be required to make themselves available for a deposition by any Party to take place within the Court's federal district in New York or in the county of the objector's residence or principal place of business within seven (7) days of service of the objector's timely written objection.

If you do not timely and validly submit your objection, your views will not be considered by the Court. Check the Settlement website, www.strategicclaims.net/Kiromic/, for updates on important dates and deadlines relating to the Settlement.

### 25. What is the Difference Between Objecting and Excluding Myself?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you remain a Class Member and do not exclude yourself from the Settlement.

Excluding yourself from the Settlement is telling the Court that you do not want to be a part of the Settlement Class. If you exclude yourself, you have no right to object to the Settlement because it no longer affects you.

### <u>THE LAWYERS REPRESENTING YOU</u>

19

### 26. Do I Have a Lawyer in the Case?

The Court has appointed the law firm of Gainey McKenna & Egleston to represent you and the Settlement Class in this Action. Their contact information is:

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

These lawyers are called Lead Counsel. Lead Counsel may apply to the Court for payment of attorneys' fees and litigation expenses and costs from the Settlement Fund. You will not otherwise be charged for Lead Counsel's services. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 27. How Will the Lawyers Be Paid?

To date, Lead Counsel have not been paid any attorneys' fees or reimbursed for any out-of-pocket costs. Any attorneys' fees and litigation expenses and costs will be awarded only as approved by the Court in amounts determined to be fair and reasonable.

The Settlement provides that Lead Counsel may apply to the Court for an award of attorneys' fees and litigation expenses and costs out of the Settlement Fund. Prior to the Fairness Hearing, Lead Counsel will move for an award of no more than one-third of the Settlement Fund in attorneys' fees, plus payment of litigation expenses and costs not to exceed $30,000, and for interest on such attorneys' fees and litigation expenses and costs at the same rate as the earnings in the Settlement Fund, accruing from the inception of the Settlement Fund until the attorneys' fees and litigation expenses and costs are paid. Lead Counsel may allocate any award of attorneys' fees and payment of litigation expenses and costs among Plaintiffs' Counsel in proportion to their contributions to the case. Lead Plaintiffs may also seek Incentive Awards from the Settlement Fund of up to $10,000 in the aggregate.

This is only a summary of the request for attorneys' fees and litigation expenses and costs. Any motions in support of the requests will be available for viewing on the Settlement Website after they are filed by **[date], 20____**. If you wish to review the motion papers, you may do so by viewing them at the Settlement Website: www.strategicclaims.net/Kiromic/.

The Court will consider the motion for attorneys' fees and litigation expenses and costs at or after the Fairness Hearing.

**THE COURT'S FAIRNESS HEARING**

### 28. When and Where Will the Court Decide Whether to Approve the Settlement?

The Court will hold the Fairness Hearing [in-person/remotely] on [date], 2024 at [time], at the Daniel Patrick Moynihan U.S. Courthouse, located at 500 Pearl Street, New York, NY 10007.

20

Any Class Member who wants to participate at the Fairness Hearing can do so by [appearing at/calling into] the Court at the date and time of the Fairness Hearing. The Fairness Hearing may be moved to a different date or time without notice to you; any changes to the date, time, or telephone number of the Fairness Hearing will be posted to the Settlement Website. Although you do not need to participate, if you plan to do so, you should check the Settlement Website for any changes concerning the Fairness Hearing.

At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider whether to approve the Plan of Allocation and requests for attorneys' fees, litigation expenses and costs, and any Incentive Awards for Lead Plaintiffs. If there are any objections, the Court will consider them at this time. We do not know how long the Fairness Hearing will take or when the Court will make its decision. The Court's decision may be appealed.

### 29. Do I Have to Participate at the Fairness Hearing?

No. Lead Counsel will answer any questions the Court may have. You are, however, welcome to participate at the Fairness Hearing. If you send an objection, you do not have to participate at the Fairness Hearing to talk about it. As long as you file and serve your written objection on time, the Court will consider it. You may also hire your own lawyer to participate, but you are not required to do so.

### 30. May I Speak at the Fairness Hearing?

You may ask the Court for permission to speak at the Fairness Hearing. If you want to participate at the Fairness Hearing, you may also enter an appearance in the Action at your own expense, individually, or through counsel of your own choice, by filing with the Clerk of Court a notice of appearance and your objection and serving copies of your objection on Lead Counsel and Kiromic's Counsel at the addresses set forth in in question 24, such that they are received no later than [**date], 20____**, or as the Court may otherwise direct. Any Class Member who does not enter an appearance will be represented by Lead Counsel. You may request to speak at the Fairness Hearing by telephone.

## <u>GETTING MORE INFORMATION</u>

### 31. How Do I Get More Information?

The Court has appointed Strategic Claims Services as Claims Administrator. Among other things, the Claims Administrator is responsible for providing this Notice of the Settlement and processing Claim Forms.

This Notice summarizes the Settlement Agreement. More details are in the Settlement Agreement and Plan of Allocation, which are available for your review at the Settlement Website, www.strategicclaims.net/Kiromic/. The Settlement Website also has answers to common questions about the Settlement, Claim Form, and other information to help you determine whether you are a Class Member and whether you are eligible for a payment. You may also call the Claims Administrator at 866-274-4004, or write to the Claims Administrator at:

### CLAIMS ADMINISTRATOR:

Kiromic BioPharma, Inc., Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel: 866-274-4004
Fax: 610-565-7985
info@strategicclaims.net

If your address changes, please enter your current information online at the Settlement website or send it to the Claims Administrator at the address set forth above in the event the Claims Administrator needs to contact you.

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE OR FOR ADDITIONAL INFORMATION.


DATED: _____, 2023                                BY ORDER OF THE COURT

22

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE KIROMIC BIOPHARMA INC., SECURITIES LITIGATION | Case No. 1:22-cv-06690 (JHR)<br><br>**EXHIBIT [C]** |

**SUMMARY NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

**TO: ALL PERSONS WHO PURCHASED OR ACQUIRED KIROMIC BIOPHARMA, INC. ("KIROMIC") SECURITIES: (1) PURSUANT AND/OR TRACEABLE TO THE OFFERING DOCUMENTS AND/OR; (2)BETWEEN JUNE 25, 2021 AND FEBRUARY 2, 2022, ("Class Period") BOTH DATES INCLUSIVE AND SUBJECT TO 15 U.S.C. § 78U-4(E)(1).**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Southern District of New York, that a hearing will be held on _____, 2024, at _____ [a.m./p.m.] before the Honorable Jennifer H. Rearden, United States District Judge of the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse, located at 500 Pearl Street, New York, NY 10007, to: (i) determine whether the proposed Settlement of the above-captioned Action for consideration including the sum of $2,300,000 to be paid into an escrow account in a series of installments is fair, reasonable, and adequate to the Class and should be approved by the Court; (ii) determine whether the proposed Plan of Allocation to distribute the Settlement proceeds should be approved as fair, reasonable, and adequate; (iii) determine the amount of attorneys' fees, costs, charges, and expenses that should be awarded to Lead Counsel; (iv) determine any award to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4); (v) hear any objections by Class Members to the Settlement or Plan of Allocation, or to the award of attorneys' fees and expenses; (vi) determine whether the Action should be dismissed with prejudice; and (vi) consider such other matters the Court deems appropriate.

*The Class Action and Settlement*

The proposed Settlement would resolve the above-captioned Action alleging that, in violation of the federal securities laws, Defendants made false and/or misleading statements

1

and material omissions in their Offering Documents and/or in their statements to the investing public during the Class Period.

Defendants maintain that they have good and meritorious defenses to Lead Plaintiffs' claims and would prevail if the Action were to proceed. Nevertheless, to resolve all Released Claims against all Released Parties, and thereby avoid the expense and uncertainty of further litigation, Kiromic has agreed to pay a total of $2,300,000 in cash for the benefit of the proposed Settlement Class. If the Settlement is granted final approval by this Court, the Settlement Amount, plus interest earned from the date it was established, less any taxes, the reasonable costs of Class Notice and administration, any court-awarded attorneys' fees, litigation expenses and costs, incentive awards for Lead Plaintiffs, and any other costs approved by the Court (the "Net Settlement Fund") will be divided among all Class Members who file a valid Proof of Claim and Release Form.

If the Settlement is granted final approval by this Court, all Released Claims against all Released Parties will be fully released and the Action will be resolved against all Defendants. If it is not approved, Kiromic and the other named Defendants will remain as Defendants and Lead Plaintiffs will continue to pursue their claims against Defendants.

***The Settlement Class and Your Rights***

If you purchased Kiromic securities: (1) pursuant and/or traceable to the Offering Documents and/or (2) between June 25, 2021 and February 2, 2022, both dates inclusive ("Settlement Class Member"), your rights may be affected by this Settlement, including the release and extinguishment of claims you may possess relating to your ownership interest in Kiromic securities.

You may obtain copies of the detailed Notice of Pendency and Proposed Settlement of the Class Action, Fairness Hearing and Class Members' Rights ("Notice") and the Proof of Claim and Release Form by writing to or calling the Claims Administrator: Kiromic BioPharma

Inc., Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson St., Ste. 205, Media, PA 19063, (Tel) 866-274-4004, (Fax) 610-565-7985, info@strategicclaims.net. If you are a member of the Settlement Class, in order to share in the distribution of the Net Settlement Fund, you must submit a Proof of Claim and Release Form electronically or postmarked no later than _____, 20___ to the Claims Administrator, establishing that you are entitled to recovery. Unless you submit a written exclusion request, you will be bound by any judgment in the Action, whether or not you make a claim.

If you are a Settlement Class Member and desire to be excluded from the Settlement Class, you must submit to the Claims Administrator a request for exclusion so that it is received no later than _____, 20___, in the manner and form explained in the detailed Notice. All members of the Settlement Class who have not requested exclusion from the Settlement Class will be bound by any judgment entered in the Action pursuant to the Settlement Stipulation.

Any objection by a Settlement Class Member to the Settlement, Plan of Allocation, Lead Counsel's requests for an award of fees, costs, charges, and expenses and awards to Lead Plaintiffs must be in the manner and form explained in the detailed Notice and received no later than _____, 20____, by each of the following:

| | |
|---|---|
| Clerk of the Court | LEAD COUNSEL: |
| United States District Court | **GAINEY McKENNA & EGLESTON** |
| Southern District of New York | Thomas J. McKenna |
| Daniel Patrick Moynihan U.S. Courthouse | Gregory M. Egleston |
| 500 Pearl Street | 501 Fifth Avenue, 19th Floor |
| New York, NY 10007 | New York, NY 10017 |
| | |
| | DEFENSE COUNSEL |
| | **SIDLEY AUSTIN LLP** |
| | Alex J. Kaplan |
| | Yolanda C. Garcia |
| | 787 Seventh Avenue |
| | New York, NY 10019 |

If you have any questions about the Settlement, you may call or write to the Lead Counsel:

3

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.**

Dated: _____, 2023

BY ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK

4

*Please read it carefully.*

PRESORTED
FIRST-CLASS
MAIL U.S.
POSTAGE PAID

**Court-Ordered Legal Notice**
**Forwarding Service Requested**

*Important Notice about a Securities*
*Class Action Settlement*

*You may be entitled to a payment.*
*This Notice may affect your legal*
*rights.*

*In re Kiromic Biopharma, Inc. Securities Litigation*
Case No. 1:22-cv-06690 (JHR)
Case Pending in U.S. District Court for the Southern District
of New York

[NAME 1]
[NAME 2]
[NAME 3]
[ADDRESS 1]
[ADDRESS 2]

*In re Kiromic Biopharma Derivative Litigation*, Case No. 1:22-cv-06690-J.N.R.

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*VISIT WWW.[].COM OR CALL _____ FOR MORE INFORMATION.*

The U.S. District Court for the Southern District of New York (the "Court") has preliminarily approved a proposed Settlement of claims against Kiromic Biopharma, Inc. ("Kiromic"), Maurizio Chiriva-Internati, Tony Tontat, Gianluca Rotino, Pietro Bersani, Americo Cicchetti, Michael Nagel, Jerry Schneider and Thinkequity LLC (collectively, "Defendants"). The proposed Settlement would resolve a class action lawsuit alleging that Defendants made false and/or misleading misstatements and/or omissions in certain of Kiromic's offering documents concerning the status of Kiromic's investigational new drug applications. Defendants deny the allegations.

You received this notice because you may have purchased or acquired (a) Kiromic securities pursuant and/or traceable to the Offering Documents (defined in the Settlement) and/or (b) Kiromic common stock on a date(s) between June 25, 2021 and February 2, 2022, both dates inclusive and subject to 15 U.S.C. § 78u-4(e)(1), and you may be a Settlement Class Member. The Settlement provides that, in exchange for dismissal and release of claims against Defendants, a fund consisting of $2,300,000 that will be paid or caused to be paid by Kiromic in installments into an escrow account, less attorneys' fees and expenses, will be divided among Settlement Class Members who timely submit valid Claim Forms if the Court grants final approval of the Settlement. The average recovery per share could be $0.14 before deduction of any fees and expenses. The actual amount disbursed to members of the Settlement Class who participate in the Settlement may be more or less than this figure. Plaintiffs and Defendants disagree as to the amount per share that would be recoverable if Plaintiffs prevailed on each claim. Plaintiffs believe that the proposed Settlement is fair, reasonable and in the best interests of the Settlement Class considering the strengths and weaknesses of the claims, the uncertainties of complex litigation, and the concrete benefits provided by the Settlement. Kiromic has agreed to settle the lawsuit as to all Defendants to avoid the continuing burden and expense of this Action. For a full description of the Settlement and your rights and to make a claim, please view the Stipulation of Settlement and obtain a copy of the Notice of Pendency and Proposed Settlement of Class Action, Fairness Hearing and Class Members Rights' ("Notice") and Claim Form by visiting the website: www.[].com (the "Website"). You may request copies of the Notice and Claim Form by: (1) mail: Kiromic Biopharma Inc. Securities Litigation, c/o Strategic Claims Services, 600 N. Jackson St., Ste. .205, P,O, Box 230, Media, PA 19063: (2) call toll-free: 1-_____; or (3) email: info@strategicclaims.net.

To qualify for payment, you must submit a Claim Form, which can be found on the Website. CLAIM FORMS ARE DUE BY _____, 20____ and should be mailed to the address above or submitted electronically through the Website. If you do not want to be legally bound by the Settlement, you must exclude yourself by _____, 20____. If you exclude yourself, you cannot get money

*In re Forma Therapeutics Securities Litigation, Case No. 1:22-cv-09010-NRB*

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*VISIT WWW.[].COM OR CALL _____ FOR MORE INFORMATION.*

from this Settlement. If you stay in the Settlement, you may object to it by _____, 20____. The Notice explains how to exclude yourself or to object.

The Court will hold a hearing in this case on [], 2024 at [] p.m. at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St. Courtroom 12B, New York, NY 10007-1312, to consider whether to approve the Settlement, the Plan of Allocation, and a request by Lead Counsel for no more than 33 1/3% of the Settlement Fund for their attorneys' fees, plus up to $30,000 in expenses, and Awards to Plaintiffs of no more than $10,000 in total, for litigating the cases and negotiating the Settlement, which amounts to approximately $0.05 per affected share. Lead Counsel is Thomas J. McKenna of Gainey McKenna & Egleston, 501 Fifth Avenue, 19th Floor, New York, New York 10017 (Tel.) 212-983-1300. You may, but do not have to, attend the hearing and ask to be heard by the Court. The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means.

EXHIBIT E

## PROOF OF CLAIM AND RELEASE FORM

**Deadline for Submission:** _____

IF YOU PURCHASED OR OTHERWISE ACQUIRED KIROMIC BIOPHARMA INC. ("KIROMIC") COMMON STOCK PURSUANT AND/OR TRACEABLE TO THE OFFERING DOCUMENTS AND/OR KIROMIC COMMON STOCK BETWEEN JUNE 25, 2021 AND FEBRUARY 2, 2022, BOTH DATES INCLUSIVE, AND SUBJECT TO 15 U.S.C. § 78U-4(E)(1) (THE "CLASS PERIOD") YOU ARE A "SETTLEMENT CLASS MEMBER" AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS. (EXCLUDED FROM THE SETTLEMENT CLASS ARE: (I) DEFENDANTS; (II) THE OFFICERS AND DIRECTORS OF THE COMPANY AT ALL RELEVANT TIMES; (III) MEMBERS OF ANY DEFENDANT'S IMMEDIATE FAMILIES; (IV) ANY ENTITY IN WHICH DEFENDANTS HAVE OR HAD A CONTROLLING INTEREST OR WHICH IS RELATED TO OR AFFILIATED WITH ANY OF THE DEFENDANTS; (V) THE LEGAL REPRESENTATIVES, HEIRS, SUCCESSORS, AND ASSIGNS OF SUCH EXCLUDED PERSONS; (VI) THOSE WHO PURCHASED OR OTHERWISE ACQUIRED KIROMIC COMMON STOCK ON FOREIGN EXCHANGES, IN ACCORDANCE WITH THE UNITED STATES SUPREME COURT'S DECISION IN *MORRISON V. NAT'L AUSTRALIA BANK LTD.,* 561 U.S. 247, 267 (2010); (VII) THE PLAINTIFFS IN *SABBY VOLATILITY WARRANT MASTER FUND LTD., ET AL. V. KIROMIC BIOPHARMA, INC.*, NO. 22-CV-1927(AT) (S.D.N.Y.), AND ANY CLAIMS THAT WERE OR COULD HAVE MAY BEEN FILED OR CONSOLIDATED THEREWITH; AND (VIII) ANY PERSONS WHO EXCLUDE THEMSELVES BY SUBMITTING A REQUEST FOR EXCLUSION THAT IS ACCEPTED BY THE COURT.)

IF YOU ARE A SETTLEMENT CLASS MEMBER, YOU MUST COMPLETE AND SUBMIT THIS PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM") IN ORDER TO BE ELIGIBLE FOR ANY SETTLEMENT BENEFITS. YOU CAN COMPLETE AND SUBMIT THE ELECTRONIC VERSION OF THIS CLAIM FORM BY 11:59 P.M. EST ON _____, 2024 AT WWW.STRATEGICCLAIMS.NET/KIROMIC/.

IF YOU DO NOT COMPLETE AND SUBMIT AN ELECTRONIC VERSION OF THIS CLAIM FORM, YOU MUST COMPLETE AND SIGN THIS CLAIM FORM AND MAIL IT BY FIRST CLASS MAIL, POSTMARKED NO LATER THAN _____, 2024 TO STRATEGIC CLAIMS SERVICES, THE CLAIMS ADMINISTRATOR, AT THE FOLLOWING ADDRESS:

Kiromic Biopharma Inc. Securities Litigation
c/o Strategic Claims Services
600 N. Jackson St., Ste. 205
P.O. Box 230
Media, PA 19063
Tel.: 866-274-4004
info@strategicclaims.net

YOUR FAILURE TO SUBMIT YOUR CLAIM BY _____, 2024 WILL SUBJECT YOUR CLAIM TO REJECTION AND PRECLUDE YOU FROM RECEIVING ANY MONEY IN CONNECTION WITH THE SETTLEMENT OF THIS ACTION.  DO NOT MAIL OR

-1-

-2-

DELIVER YOUR CLAIM TO THE COURT OR TO ANY OF THE PARTIES OR THEIR COUNSEL AS ANY SUCH CLAIM WILL BE DEEMED NOT TO HAVE BEEN SUBMITTED. SUBMIT YOUR CLAIM ONLY TO THE CLAIMS ADMINISTRATOR. IF YOU ARE A SETTLEMENT CLASS MEMBER AND DO NOT SUBMIT A PROPER CLAIM FORM, YOU WILL NOT SHARE IN THE SETTLEMENT BUT YOU NEVERTHELESS WILL BE BOUND BY THE COURT'S ORDER AND FINAL JUDGMENT UNLESS YOU EXCLUDE YOURSELF. SUBMISSION OF A CLAIM FORM DOES NOT ASSURE THAT YOU WILL SHARE IN THE PROCEEDS OF THE SETTLEMENT.

EXHIBIT E

## CLAIMANT'S STATEMENT

1. I (we) purchased or otherwise acquired Kiromic Biopharma Inc. ("Biopharma") common stock during the Class Period. (Do not submit this Proof of Claim and Release Form if you did not purchase Kiromic common stock during the Class Period.)

2. By submitting this Proof of Claim and Release Form, I (we) state that I (we) believe in good faith that I am (we are) a Settlement Class Member(s) as defined above and in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), or am (are) acting for such person(s); that I am (we are) not a Defendant in the Action or anyone excluded from the Settlement Class; that I (we) have read and understand the Notice; that I (we) believe that I am (we are) entitled to receive a share of the Net Settlement Fund, as defined in the Notice; that I (we) elect to participate in the proposed Settlement described in the Notice; and that I (we) have not filed a request for exclusion. (If you are acting in a representative capacity on behalf of a Settlement Class Member [e.g., as an executor, administrator, trustee, or other representative], you must submit evidence of your current authority to act on behalf of that Settlement Class Member. Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.)

3. I (we) consent to the jurisdiction of the Court with respect to all questions concerning the validity of this Claim Form ("Claim Form"). I (we) understand and agree that my (our) claim may be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my (our) status as a Settlement Class Member(s) and the validity and amount of my (our) claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Claim Form.

4. I (we) have set forth where requested below all relevant information with respect to each purchase or acquisition of Kiromic common stock, and each sale, if any, of such common stock. I (we) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so.

5. I (we) have enclosed photocopies of the stockbroker's confirmation slips, stockbroker's statements, or other documents evidencing each purchase and sale of Kiromic common stock listed below in support of my (our) claim. If any such documents are not in your possession, please obtain a copy or equivalent documents from your broker or tax advisor because these documents are necessary to prove and process your claim. **YOUR FAILURE TO SUBMIT COPIES OF OFFICIAL DOCUMENTS EVIDENCING YOUR PURCHASES AND/OR SALES OF KIROMIC COMMON STOCK WILL CAUSE THE CLAIMS ADMINISTRATOR TO REJECT YOUR CLAIM**.

6. I (we) understand that the information contained in this Claim Form is subject to such verification as the Claims Administrator may request or as the Court may direct, and I (we) agree to cooperate in any such verification. (The information requested herein is designed to provide the minimum amount of information necessary to process most simple claims. The Claims Administrator may request additional information as required to efficiently and reliably calculate your Recognized Loss. In some cases, the Claims Administrator may condition acceptance of the claim based upon the production of additional information, including, where applicable, information concerning transactions in any derivatives securities such as options.)

7. Upon the occurrence of the Court's final approval of the Settlement, as detailed in the Notice, I (we) agree and acknowledge that my (our) signature(s) hereto shall effect and constitute a full and complete release, remise and discharge by me (us) and my (our) spouses, heirs, joint tenants, tenants in common, beneficiaries, executors, administrators, predecessors, successors, attorneys, insurers and assigns (or, if I am (we are) submitting this Claim Form on behalf of a corporation, a partnership, estate or one or more other persons, by it, him, her or them, and by its, his, her or their heirs, executors, administrators, predecessors, successors, and assigns) of each of the "Released Parties" of all "Released Claims," as those terms are defined in the Stipulation of Settlement, dated September 29, 2023 ("Stipulation").

-3-

8.  Upon the occurrence of the Court's final approval of the Settlement, as detailed in the Notice, I (we) agree and acknowledge that my (our) signature(s) hereto shall effect and constitute a covenant by me (us) and my (our) heirs, joint tenants, tenants in common, beneficiaries, executors, administrators, predecessors, successors, attorneys, insurers and assigns (or, if I am (we are) submitting this Claim Form on behalf of a corporation, a partnership, estate or one or more other persons, by it, him, her or them, and by its, his, her or their heirs, executors, administrators, predecessors, successors, and assigns) to permanently refrain from prosecuting or attempting to prosecute any Released Claims against any of the Released Parties.

9.  "Released Parties" has the meaning laid out in the Stipulation.

10. "Released Claims" has the meaning laid out in the Stipulation.

11. "Unknown Claims" has the meaning laid out in the Stipulation.

12. I (We) acknowledge that the inclusion of "Unknown Claims" in the definition of claims released pursuant to the Stipulation was separately bargained for and is a material element of the Settlement of which this release is a part.

13. NOTICE REGARDING INSTITUTIONAL FILERS: Representatives with authority to file on behalf of (a) accounts of multiple Settlement Class Members and/or (b) institutional accounts with large numbers of transactions ("Representative Filers") must submit information regarding their transactions in an electronic spreadsheet format. If you are a Representative Filer, you must contact the Claims Administrator at efile@strategicclaims.net or visit their website at www.strategicclaims.net to obtain the required file layout. Claims which are not submitted in electronic spreadsheet format and in accordance with the Claims Administrator's instructions may be subject to rejection. All Representative Filers MUST also submit a manually signed Claim Form, as well as proof of authority to file (see Item 2 of the Claimant's Statement), along with the electronic spreadsheet format. No claims submitted in electronic spreadsheet format will be considered to have been properly submitted unless the Claims Administrator issues to the Claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

14. NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.strategicclaims.net/Kiromic/. If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator prior to filing; you will receive an automated e-mail confirming receipt once your Claim Form has been submitted. If you are unsure if you should submit your claim as a Representative Filer, please contact the Claims Administrator at info@strategicclaims.net or (866) 274-4004. If you are not a Representative Filer, but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form.

## I. CLAIMANT INFORMATION

| Beneficial Owner Name | | |
|---|---|---|
| | | |
| Address | | |
| | | |
| City | State | Zip Code |

-4-

EXHIBIT E

| Foreign Province | Foreign Country |
|---|---|
| Day Phone | Evening Phone |
| Email | |

| Social Security Number (for individuals): | OR | Taxpayer Identification Number (for estates, trusts, corporations, etc.): |
|---|---|---|

## II. SCHEDULE OF TRANSACTIONS IN KIROMIC BIOPHARMA INC. ("KIROMIC") COMMON STOCK

**Beginning Holdings:**
A.  State the total number of shares of Kiromic common stock held at the close of trading on June 24, 2021 (*must be documented*).  If none, write "zero" or "0."

**Purchases/Acquisitions:**
B.  Separately list each and every purchase or acquisition of Kiromic common stock between June 25, 2021 and August 5, 2022, both dates inclusive, and provide the following information (*must be documented):*

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Price per Share | Total Cost (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**Sales:**
C.  Separately list each and every sale of Kiromic common stock between June 25, 2021 and August 5, 2022, both dates inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Price per Share | Amount Received (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

-5-

**Ending Holdings:**

D.  State the total number of shares of Kiromic common stock held at the close of trading on August 5, 2022 (*must be documented*). If none, write "zero" or "0."

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

## III. SUBSTITUTE FORM W-9

Request for Taxpayer Identification Number:

Enter taxpayer identification number below for the Beneficial Owner(s).  For most individuals, this is your Social Security Number.  The Internal Revenue Service ("I.R.S.") requires such taxpayer identification number.  If you fail to provide this information, your claim may be rejected.

| Social Security Number (for individuals) | **or** | Taxpayer Identification Number (for estates, trusts, corporations, etc.) |
|---|---|---|
| _____ | | _____ |

## IV. CERTIFICATION

I (We) submit this Proof of Claim and Release Form under the terms of the Stipulation described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the release and covenant not to sue set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in this Action. I (We) have not submitted any other claim covering the same purchases or sales of Kiromic common stock during the Class Period and know of no other Person having done so on my (our) behalf.

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding; or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM AND RELEASE FORM IS TRUE, CORRECT AND COMPLETE.

Signature of Claimant (If this claim is being made on behalf of Joint Claimants, then each must sign):

-6-

EXHIBIT E

_____
(Signature)

_____
(Signature)

_____
(Capacity of person(s) signing, e.g. beneficial
purchaser(s), executor, administrator, trustee, etc.)
☐ Check here if proof of authority to file is enclosed.
(See Item 2 under Claimant's Statement)

Date: _____

-7-

**THIS PROOF OF CLAIM AND RELEASE FORM MUST BE POSTMARKED NO LATER THAN _____, 2024 AND MUST BE MAILED TO:**

Kiromic Biopharma Inc. Securities Litigation
c/o Strategic Claims Services
600 N. Jackson St., Ste. 205
P.O. Box 230
Media, PA 19063
Fax: (610) 565-7985
info@strategicclaims.net

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by _____, 2024 and if a postmark is indicated on the envelope and it is mailed first class and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to process fully all of the Claim Forms and to administer the Settlement.  This work will be completed as promptly as time permits, given the need to investigate and tabulate each Claim Form.  Please notify the Claims Administrator of any change of address.

**REMINDER CHECKLIST**

- o  Please be sure to sign this Claim Form on page 7. If this Claim Form is submitted on behalf of joint claimants, then each claimant must sign.

- o  Please remember to attach supporting documents. Do NOT send any stock certificates.  Keep copies of everything you submit.

- o  Do NOT use highlighter on the Claim Form or any supporting documents.

- o  If you move or change your address, telephone number or email address, please submit the new information to the Claims Administrator, as well as any other information that will assist us in contacting you. NOTE: Failure to submit updated information to the Claims Administrator may result in the Claims Administrator's inability to contact you regarding issues with your claim or deliver payment to you.

-8-

## EXHIBIT F

## PROPOSED PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND

The Plan of Allocation is a matter separate and apart from the proposed Settlement, is not part of the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Court may approve the Plan of Allocation with or without modifications agreed to among the parties, or another plan of allocation, without further notice to Settlement Class Members.  Any orders regarding a modification of the Plan of Allocation will be posted to the Settlement Administrator's website, www.strategicclaims.net/Kiromic/. Further, as provided in the proposed Settlement, Lead Counsel shall have all responsibility for implementing this Plan of Allocation with the assistance of the Claims Administrator; for the avoidance of doubt, Defendants shall have no responsibility or liability with respect to this Plan of Allocation, have not participated in its drafting, and do not admit or deny anything contained herein.

The Settlement Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Cash Settlement Amount based upon each Authorized Claimant's Recognized Loss. **Please Note**:  The Recognized Loss formula, set forth below, is not intended to be an estimate of the amount of what a Settlement Class Member might have been able to recover after a trial, nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss formula is the basis upon which the Net Cash Settlement Amount will be proportionately allocated to the Authorized Claimants.  To the extent there are sufficient funds remaining in the Net Cash Settlement Amount, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Loss.  If, however, Net Cash Settlement Amount is not sufficient to permit payment of the total Recognized Loss of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Cash Settlement Amount that each Authorized Claimant's Recognized Loss bears to the total Recognized Losses of all Authorized Claimants (*i.e.*, "*pro rata* share").  Payment in this manner shall be deemed conclusive against all Authorized Claimants.  No distribution will be made on a claim where the potential distribution amount is less than ten dollars ($10.00) in cash.

If any of the Net Cash Settlement Amount remains by reason of uncashed checks, or otherwise, after the Settlement Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Cash Settlement Amount cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution, including the $10.00 minimum check amount set forth in the Notice; (ii) second, to pay any additional Notice and Administrative Expenses incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Cash Settlement Amount and in making this second distribution, if such second distribution is economically feasible.  If six (6) months after such second

distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Cash Settlement Amount after the Settlement Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Cash Settlement Amount shall be donated to a non-profit charitable organization(s) selected by Lead Counsel.

## **THE BASIS FOR CALCULATING YOUR RECOGNIZED LOSS:**

Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants.

I)   Recognized Loss for Kiromic common stock purchased in and/or traceable to the Company's Offering[1] at $5.00 per share[2], Recognized Loss shall be calculated as follows:

   A.   For each share of common stock sold between June 30, 2021 and August 5, 2022, inclusive, the Recognized Loss shall be the difference between $5.00 Offering price per share and the selling price per share.

   B.   For each share of common stock retained as of the close of trading on August 5, 2022[3], the Recognized Loss shall be $4.63 per share[4].

II)   Recognized Loss for Kiromic's common stock purchased during the Class Period,[5] excluding share purchased in the Offering, shall be calculated as follows:

   A.   For shares purchased or otherwise acquired during the Class Period, the Recognized Loss per share shall be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below) less the inflation per share upon sale (as set forth in Inflation Table A below); or (2) the purchase price per share minus the sales price per share.

   B.   For shares purchased or otherwise acquired during the Class Period and sold during the period between February 3, 2022 and May 3, 2022, inclusive, the Recognized Loss shall be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below); or (2) the difference between the purchase price per share and the average closing stock price as of date of sale provided in Table B below.

---

[1] The Final Offering Prospectus was filed with the SEC on June 29, 2021.  The shares were offered to the public at $5.00 per share on June 30, 2021.

[2] Only shares purchased at $5.00 per share on or about June 30, 2021 are considered shares traceable to the Offering Documents. All other shares purchased after the Offering at a price different than $5.00 per share are no longer considered traceable to the Offering Documents.

[3] Date of the initial suit.

[4] This represents the difference in Kiromic's $5.00 per share Offering price and the value of the Company's common stock on date of suit on August 5, 2022 of $.37 per share.

[5] The Class Period for this Action means between June 25, 2021 and February 3, 2022, both dates inclusive, and subject to 15 U.S.C. § 78u-4(e)(1).  *See also* n. 6, *infra*.

C.  For shares purchased during the Class Period and retained as of the close of trading on May 3, 2022, the Recognized Loss shall the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below); or (2) the purchase price per share minus $.77 per share[6].

| INFLATION TABLE A | |
| :-- | :-- |
| Common Stock Purchased or Otherwise Acquired During the Class Period | |
| **Period** | **Inflation** |
| Between June 25, 2021 and July 15, 2021, inclusive | $.99 per share |
| Between July 16, 2021 and October 5, 2021, inclusive | $.36 per share |
| Between October 6, 2021 and February 2, 2022 | $.15 per share |
| After February 2, 2022 | $0.00 per share |

Table B

| Date | Closing Price | Average Closing Price | Date | Closing Price | Average Closing Price |
| :-- | :-- | :-- | :-- | :-- | :-- |
| 2/3/2022 | $0.87 | $0.87 | 3/21/2022 | $0.82 | $0.77 |
| 2/4/2022 | $0.85 | $0.86 | 3/22/2022 | $0.84 | $0.77 |
| 2/7/2022 | $0.95 | $0.89 | 3/23/2022 | $0.89 | $0.77 |
| 2/8/2022 | $0.95 | $0.90 | 3/24/2022 | $0.90 | $0.78 |
| 2/9/2022 | $0.93 | $0.91 | 3/25/2022 | $0.87 | $0.78 |
| 2/10/2022 | $0.95 | $0.92 | 3/28/2022 | $0.86 | $0.78 |
| 2/11/2022 | $0.88 | $0.91 | 3/29/2022 | $0.87 | $0.79 |
| 2/14/2022 | $0.78 | $0.89 | 3/30/2022 | $0.90 | $0.79 |
| 2/15/2022 | $0.72 | $0.87 | 3/31/2022 | $0.85 | $0.79 |
| 2/16/2022 | $0.69 | $0.86 | 4/1/2022 | $0.86 | $0.79 |
| 2/17/2022 | $0.63 | $0.84 | 4/4/2022 | $0.86 | $0.79 |
| 2/18/2022 | $0.67 | $0.82 | 4/5/2022 | $0.86 | $0.79 |
| 2/22/2022 | $0.67 | $0.81 | 4/6/2022 | $0.79 | $0.79 |
| 2/23/2022 | $0.62 | $0.80 | 4/7/2022 | $0.83 | $0.80 |
| 2/24/2022 | $0.60 | $0.78 | 4/8/2022 | $0.84 | $0.80 |
| 2/25/2022 | $0.61 | $0.77 | 4/11/2022 | $0.83 | $0.80 |
| 2/28/2022 | $0.68 | $0.77 | 4/12/2022 | $0.87 | $0.80 |
| 3/1/2022 | $0.78 | $0.77 | 4/13/2022 | $0.85 | $0.80 |

---

[6] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated."  $.77 per share was the mean (average) daily closing trading price of the Company's common stock during the 90-day period beginning on February 3, 2022 through and including on May 3, 2022. *See also supra* n.5.

| | | | | | | |
|---|---|---|---|---|---|---|
| 3/2/2022 | $0.78 | $0.77 | | 4/14/2022 | $0.84 | $0.80 |
| 3/3/2022 | $0.87 | $0.77 | | 4/18/2022 | $0.80 | $0.80 |
| 3/4/2022 | $0.87 | $0.78 | | 4/19/2022 | $0.75 | $0.80 |
| 3/7/2022 | $0.68 | $0.77 | | 4/20/2022 | $0.72 | $0.80 |
| 3/8/2022 | $0.66 | $0.77 | | 4/21/2022 | $0.70 | $0.80 |
| 3/9/2022 | $0.75 | $0.77 | | 4/22/2022 | $0.65 | $0.79 |
| 3/10/2022 | $0.75 | $0.77 | | 4/25/2022 | $0.63 | $0.79 |
| 3/11/2022 | $0.76 | $0.77 | | 4/26/2022 | $0.62 | $0.79 |
| 3/14/2022 | $0.70 | $0.77 | | 4/27/2022 | $0.60 | $0.78 |
| 3/15/2022 | $0.72 | $0.76 | | 4/28/2022 | $0.62 | $0.78 |
| 3/16/2022 | $0.76 | $0.76 | | 4/29/2022 | $0.60 | $0.78 |
| 3/17/2022 | $0.82 | $0.77 | | 5/2/2022 | $0.59 | $0.78 |
| 3/18/2022 | $0.83 | $0.77 | | 5/3/2022 | $0.58 | $0.77 |

For purposes of calculating your Recognized Loss, the date of purchase, acquisition or sale is the "contract" or "trade" date and not the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of the Company's common stock shall not be deemed a purchase, acquisition or sale of the Company's common stock for the calculation of an Authorized Claimant's Recognized Loss. Shares purchased in and/or traceable to the Company's Offering under the Section 11 Claim will not be eligible to participate in the 10b-5 Claim.

For purposes of calculating your Recognized Loss, all purchases, acquisitions and sales shall be matched on a First In First Out ("FIFO") basis in chronological order. Therefore, on the Proof of Claim enclosed with this Notice, you must provide all your purchases and acquisitions of the Company's common stock during the period between June 15, 2021 and August 5, 2022.

Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants. No person shall have any claim against Defendants, Defendants' Counsel, Lead Plaintiffs, Lead Counsel or the Settlement Administrator or other agent designated by Lead Counsel based on the distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court. Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's Claim Form. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Cash Settlement Amount shall be released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Cash Settlement Amount, will be barred from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided in any distribution orders entered by the Court.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE KIROMIC BIOPHARMA INC., SECURITIES LITIGATION | Case No. 1:22-cv-06690 (JHR) |
| | **EXHIBIT [G]** |

## [PROPOSED] ORDER AND FINAL JUDGMENT

This matter came before the Court for hearing on _____, 2024 to consider, among other things, the approval of the proposed settlement ("Settlement") set forth in the Stipulation of Settlement, dated September 29, 2023 (the "Stipulation"). The Court has reviewed and considered all documents, evidence, objections (if any), and arguments presented in support of or against the Settlement. Good cause appearing therefore, the Court enters this Order and Final Judgment (the "Judgment").

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that**:

1. This Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein. This Order further incorporates and makes a part hereof: (a) the Stipulation filed with the Court on __; and (b) the Notice, Summary Notice, Postcard Notice and Proof of Claim and Release Form, all of which were filed with the Court on ___. This includes, without limitation, the Releases set forth in paragraphs (hh), (ii) (jj) and (kk) of Section IV(1) of the Stipulation, together with the definitions contained in Section IV(1) of the Stipulation related thereto.

2. This Court has jurisdiction over the subject matter of the Action, including all matters relating to the Settlement.  This determination is solely for purposes of the Settlement proceedings.

3. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determination in the Preliminary Approval Order and finally certifies, solely for

purposes of effectuating the Settlement, a Settlement Class defined as: all persons and entities (other than Defendants) that purchased or otherwise acquired (a) Kiromic common stock pursuant and/or traceable to the Offering Documents (defined below) and/or (b) Kiromic common stock between June 25, 2021 and February 2, 2022, both dates inclusive, and subject to 15 U.S.C. § 78u-4(e)(1).

4.       Excluded from the Settlement Class are: (i) Defendants; (ii) the officers and directors of the Company at all relevant times; (iii) members of any Defendant's immediate families; (iv) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (v) the legal representatives, heirs, successors, and assigns of such excluded Persons; (vi) those who purchased or otherwise acquired Kiromic common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010); (vii) the plaintiffs in *Sabby Volatility Warrant Master Fund Ltd., et al. v. Kiromic Biopharma, Inc.*, No. 22-cv-1927(AT) (S.D.N.Y.), and any claims that may have been filed or consolidated therewith and (viii) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

5.       Solely for purposes of the Settlement of this Action, the Court finds that: (a) the Members of the Settlement Class are so numerous that joinder of all Settlement Class Members in the Settlement Class is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual question; (c) the claims of Lead Plaintiffs are typical of the claims of the Settlement Class; (d) Lead Plaintiffs and Lead Counsel have fairly and adequately represented and protected the Members of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering (i) the interests of the Members of the Settlement Class individually controlling the prosecution with separate actions; (ii) the extent and nature of any

2

litigation concerning the controversy already commenced by Members of the Settlement Class; (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of the class action. Pursuant to Federal Rule of Civil Procedure 23, the Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation, the amount of the Settlement, the Releases provided for therein, and the dismissal with prejudice of the claims asserted against Defendants in the Action) and finds that:

(a)     Said Stipulation and the Settlement contained therein, are, in all respects, fair, reasonable, and adequate and in the best interests of the Settlement Class;

(b)     Lead Plaintiffs and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively;

(c)     There was no collusion in connection with the Stipulation;

(d)     The Settlement was the product of informed, arm's-length negotiations among competent, able counsel.

(e)     The relief provided for the Settlement Class is adequate, having taken into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing Settlement Class Members' Claims; (iii) the terms of any proposed award of attorneys' fees, including the timing of payment; and (iv) any agreement required to be identified under Federal Rule of Civil Procedure 23(e)(2);

(f)     The proposed Plan of Allocation treats Settlement Class Members equitably relative to each other; and

3

(g)     The record is sufficiently developed and complete to have enabled Lead Plaintiffs and Lead Counsel to have adequately evaluated and considered their positions.

6.     Accordingly, the Court authorizes and directs the implementation and performance of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof. Except as to any individual claim of those Persons who have validly and timely requested exclusion from the Settlement Class, the Court hereby dismisses the Action and all claims asserted therein with prejudice.

7.     Without further action by anyone, upon the Effective Date, and as provided in the Stipulation, Lead Plaintiffs shall, and each of the Class Members, on behalf of themselves, their successors and assigns, shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed with prejudice all Released Claims (including Unknown Claims) against the Released Parties to the fullest extent as provided in the Stipulation, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release Form or shares in the Net Settlement Fund. Claims to enforce the terms of the Stipulation or any order of the Court in the Action are not released. Nothing contained herein shall release or bar any Party from bringing any action or claim to enforce the terms of the Stipulation or this Final Judgment.

8.     Upon the Effective Date, and as provided in the Stipulation, all Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from asserting, commencing, instituting, prosecuting, continuing to prosecute or maintaining any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any of the Released Claims against any of the Released Parties.

9.     Without further action by anyone, upon the Effective Date, and as provided in the Stipulation, each of the Released Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged all

4

Released Parties' Claims (including Unknown Claims) against the Lead Plaintiffs, each and all of the Settlement Class Members, and Lead Counsel. Claims to enforce the terms of the Stipulation or any order of the Court in the Action are not released.

10.     The notice given to the Settlement Class (a) was implemented in accordance with the Preliminary Approval Order; (b) the best notice practicable under the circumstances, including the individual notice to all Members of the Settlement Class who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances to apprise the Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of expenses and Lead Plaintiffs' award; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules. No Settlement Class Member is relieved from the terms of the Settlement, including the releases provided for therein, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice. A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement and to participate in the hearing thereon. The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. §1715, were fully discharged and that the statutory waiting period has elapsed. Thus, the Court hereby determines that all Members of the Settlement Class are bound by this Judgment.

5

11.     The Court has considered any objections to the Settlement submitted under Rule 23(e)(5) of the Federal Rules of Civil Procedure. The Court finds and concludes that each of the objections is without merit, and they are hereby overruled.

12.     Pursuant to, and in accordance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class. Specifically, the Court finds that (a) Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class; (b) the Settlement was negotiated by Lead Plaintiffs and Kiromic at arm's length; (c) the relief provided for the Settlement Class under the Settlement is adequate taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Settlement Class, and the proposed attorneys' fee award; and (d) the Settlement treats members of the Settlement Class equitably relative to each other.  The Lead Plaintiffs, Kiromic and other Defendants (the "Settling Parties") are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

13.     The terms of this Stipulation and this Order shall be forever binding on the Settling Parties and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Proof of Claim and Release Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. [The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this Order.]

14.     The Releases set forth in paragraphs (hh), (ii) (jj) and (kk) of Section IV(1) of the Stipulation, together with the definitions contained in Section IV(1) of the Stipulation

6

relating thereto, are expressly incorporated here in all respects.  The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

a. Without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiffs and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacitates as such, shall be deemed to have, and by operation of law and this Order shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Claim against the Released Parties, and shall forever be barred, enjoined, and estopped from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any or all of the Released Claims, in any capacity, against any of the Released Parties.

b. Without further action by anyone, upon the Effective Date of the Settlement, the Released Parties, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of this Order shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged each and every Settled Defendants' Claims and shall forever be barred, enjoined, and estopped from prosecuting any or all of the Settled Defendants' Claims against any of the Releasing Plaintiffs Parties. [This Release shall not apply to any person or entity listed on Exhibit 1 hereto.]

c. Notwithstanding paragraphs 14(a) – (b) above, nothing in this Order shall bar any action by any of the Settling Parties to enforce or effectuate the terms of the Stipulation or this Order, or any other written agreement between or among the Parties.

7

15.     Upon the Effective Date of the Settlement, the Court hereby permanently bars, enjoins, extinguishes, and discharges to the fullest extent permitted by law: (a) any and all claims for contribution or indemnity (or any other claim or claim-over, however denominated on whatsoever theory, for which the injury claimed is that a person's or entity's alleged liability to Lead Plaintiffs or any Settlement Class Member) among or against the Released Parties arising out of or related to the claims or allegations asserted in the Action, and (b) any other claim of any type, whether arising under statute, federal, common, or foreign law, for which the injury claimed is that person's or entity's actual or threatened liability to Lead Plaintiffs and/or members of the Settlement Class.

16.     Any final verdict or judgment obtained by or on behalf of the Settlement Class or a Settlement Class Member against any person or entity subject to the Bar Order (set forth in paragraph 15, above) shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of Defendants for common damages; or (b) the amount paid by or on behalf of Released Parties to the Settlement Class or Settlement Class Member for common damages.

17.     The Court finds and concludes that the Settling Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

18.     Neither this Order, the Stipulation (whether or not consummated), including any exhibits thereto and the Plan of Allocation (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

8

a.        shall be offered against any of the Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Parties with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Parties or in any way referred to for any other reason as against any of the Released Parties, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

b.        shall be offered against any of the Releasing Plaintiff Parties, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Releasing Plaintiff Parties that any of their claims are without merit, that any of the Released Parties had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Releasing Plaintiff Parties, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

c.        shall be construed against any of the Released Parties as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; provided, however, that the Settling Parties and their respective counsel may refer to this Order and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement; or

9

d.       shall be used or offered in any proceeding for any purpose, except to enforce the terms of the Stipulation, this Order, or any other agreement pursuant to the Settlement, provided, however, that the Released Parties may file the Stipulation and/or this Judgment from this Action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

19.       The Court finds that Kiromic and/or the other Defendants will have satisfied their financial obligations under the Stipulation by paying or causing to be paid Two Million Three Hundred Thousand dollars ($2,300,000) to the Settlement Fund, in accordance with ¶ 2(a) of the Stipulation.

20.       Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, expenses, and interest in the Action; and (d) all parties herein for the purpose of construing, enforcing, and administering the Stipulation.

21.       Separate order(s) shall be entered regarding the approval of the Plan of Allocation and the motion of Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses. Such order(s) shall in no way affect or delay the finality of this Order and shall not affect or delay the Effective Date of the Settlement.  The Fee and Expense Amount shall be distributed in accordance with the terms of the Stipulation.

22.       The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiffs, and all other Settlement Class Members (regardless of whether or not any individual Class Member submits a Proof of Claim and Release Form or seeks or

10

obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

23.     Without further order of the Court, the Lead Plaintiffs and Kiromic may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation. Lead Plaintiffs and Kiromic are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement.

24.     This Action and all Released Claims as to all Released Parties are dismissed with prejudice as provided under the Stipulation. The Settling Parties are to bear their own costs, except as otherwise agreed to in writing by the Lead Plaintiffs and Kiromic or as otherwise provided in the Stipulation or this Judgment.

25.     The Court directs entry of this Judgment by the Clerk of the Court.


**IT IS SO ORDERED**


DATED: _____, 2024

                          _____
                          THE HONORABLE JENNIFER H. REARDEN
                          UNITED STATES DISTRICT JUDGE

11

Exhibit 1

[List of Persons and Entities Excluded from the Settlement Class Pursuant to Request]

12

# EXHIBIT H

*Execution Version*

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (the "**Escrow Agreement**") is entered into and effective as of this 7th day of August, 2023, by and among PNC Bank, National Association, a national banking association (the "**Escrow Agent**"), Kiromic Biopharma, Inc., a Delaware corporation (the "**Company**") and Gainey McKenna & Egleston, a law firm with offices in New York and New Jersey ("**Plaintiffs' Counsel**" and together with the Company, sometimes referred to individually as "**Party**" and collectively as the "**Parties**"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Settlement Agreement (as defined below).

**WHEREAS**, Sidley Austin LLP, as counsel to the Company ("**Company's Counsel**"), and Plaintiffs' Counsel have entered into that certain Settlement Term Sheet, dated August 4, 2023 (the "**Settlement Agreement**"), pursuant to which, among other things, the Company has agreed to deposit certain funds into an escrow account (the "**Escrow Account**") in accordance with the payment schedule set forth on Schedule A hereto (the "**Payment Schedule**") by wire transfer of immediately available cash funds, with such funds to be held, invested and disbursed by the Escrow Agent in accordance with the terms and conditions of this Escrow Agreement; and

**WHEREAS**, the Parties desire to set forth their understandings with regard to the Escrow Account established by this Escrow Agreement.

**NOW**, **THEREFORE**, in consideration of the premises herein, the Parties agree as follows:

## I. Terms and Conditions

1.1.    <u>Appointment of and Acceptance by Escrow Agent</u>.  The Company and Plaintiffs' Counsel hereby appoint the Escrow Agent to serve as escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment and agrees to perform its duties as provided herein.

1.2.    <u>Establishment of Escrow</u>.  The Escrow Account shall be funded by the Company in a series of installation payments (each, an "**Installation Payment**") as set forth on the Payment Schedule. On the applicable payment date (each, a "**Payment Date**") set forth on the Payment Schedule, the Company will deposit (or cause to be deposited) into the Escrow Account pursuant to the wire instructions set forth on Schedule B hereto, in immediately available funds, the corresponding amount payable set forth on the Payment Schedule opposite such Payment Date.  The total amount of the Installation Payments, collectively, shall be a maximum of Two Million Three Hundred Thousand Dollars and No Cents ($2,300,000.00), representing the cash consideration referred to in the Settlement Agreement (at any time, the then-current amount of any such funds, together with all interest and earnings thereon, and less any disbursements hereunder,  the "**Escrow Funds**").  The Escrow Agent shall provide confirmation of the receipt of each Installation Payment to the Company and Plaintiffs' Counsel within one Business Day of the receipt of such amounts.

1.3.    <u>Disbursements of the Escrow Funds; Notices and Objections</u>.  The Escrow Agent shall only disburse amounts from the Escrow Funds as follows:

(a)    <u>Disbursement of the Escrow Funds</u>.

i.    <u>Settlement Approval</u>:  Promptly (and in any event, within two Business Days) following receipt of (x) a Written Direction (as defined below) from Plaintiffs' Counsel with respect to the disbursement of all or part of the Escrow Funds, (y) a copy of a final, non-appealable award or order ("**Final Order**") of the United States District Court for the Southern District of New York approving the Settlement

4856-4050-5717

(a "**Settlement Approval**") and (z) a certificate of Plaintiffs' Counsel to the effect that such Settlement Approval is final and non-appealable, the Escrow Agent shall disburse all or part of the Escrow Funds in accordance with such Written Direction. "**Written Direction**" shall mean a written notification, in the form of Exhibit A hereto, delivered to the Escrow Agent and signed by an Authorized Representative of the applicable Party, a list of whom are provided in Exhibit A-1 and Exhibit A-2, respectively, (each, an "**Authorized Representative**").

ii.        Settlement Rejection:  Promptly (and in any event, within two Business Days) after the expiration of the Objection Period following receipt of (x) a Written Direction from the Company with respect to the disbursement of all or part of the Escrow Funds, (y) a copy of an order from of the United States District Court for the Southern District of New York declining to approve the Settlement (a "**Settlement Rejection**") and (z) a certificate of Plaintiffs' Counsel and Sidley Austin LLP to the effect that such Settlement Rejection is final and non-appealable, provided that Plaintiffs' Counsel has not delivered an Objection Notice pursuant to Section 1.3(b), the Escrow Agent shall disburse all or part of the Escrow Funds in accordance with such Written Direction.

iii.        Payment Default:  In the event that the Company defaults on its obligation to make any Installation Payment as provided in the Settlement Agreement and after the expiration of the time period provided under the Settlement Agreement to cure said default, Escrow Agent shall  promptly (and in any event, within two Business Days)  following receipt by the Escrow Agent of a written notice from Plaintiffs' Counsel notifying the Escrow Agent of such default, the Escrow Agent shall disburse all of the Escrow Funds it is holding at the time of such default by wire transfer of immediately available funds to Plaintiffs' Counsel trust account established at JP Morgan Chase Bank, NA, pursuant to wire instructions provided in a Written Direction by Plaintiffs' Counsel to the Escrow Agent.

iv.        Other Court Order:  Promptly (and in any event, within two Business Days) following receipt of (x) a Final Order of the United States District Court for the Southern District of New York regarding the disbursement of all or part of the Escrow Funds, (y) a copy of such Final Order and (z) a certificate from Plaintiffs' Counsel to the effect that such Final Order is valid, the Escrow Agent shall disburse all or part of the Escrow Funds in accordance with such Final Order.

v.        Class Notice.  Promptly (and in any event, within two Business Days) following receipt of (x) a preliminary approval order of the United States District Court for the Southern District of New York directing the delivery by Plaintiffs' Counsel of pre-settlement notice to all members of the class ("**Class Notice**"), (y) a copy of such preliminary approval order and (z) a certificate from Plaintiffs' Counsel to the effect that such preliminary approval order is valid, the Escrow Agent shall disburse part of the Escrow Funds to cover reasonable costs of such Class Notice in accordance with such preliminary approval order and pursuant to wire instructions provided in a Written Direction by Plaintiffs' Counsel.

(b)        Notices and Objections.

i.        A copy of any Written Direction, notice or other written communication, together with any materials delivered therewith, delivered by a Party to the Escrow Agent (pursuant to Section 1.3(a) or otherwise) shall be concurrently provided to the other Party (collectively, a "**Notice**").

ii.        If a Party objects to a disbursement of Escrow Funds or other action requested pursuant to the terms of this Escrow Agreement (an "**Objecting Party**"), such Objecting Party shall deliver to the Party requesting such disbursement or other action (the "**Requesting Party**") and the Escrow Agent within five Business Days of receipt by such Objecting Party of the applicable Notice (the "**Objection Period**") a written notice describing in reasonable detail such Objecting Party's objection to the disbursement or other

request (an "**Objection Notice**"). The subject matter of an Objection Notice delivered in accordance with this Section 1.3(b)(ii) shall be considered a disagreement for the purposes of Section 2.7.

(c)     For the avoidance of doubt, Section 1.3(a) sets forth the sole and exclusive circumstances under which Escrow Funds may be disbursed by the Escrow Agent to the Company or Plaintiffs' Counsel and neither the Company nor Plaintiffs' Counsel shall have the authority to withdraw, through the PNC PAID (as defined below) or otherwise, any of the Escrow Funds deposited in the Escrow Account.

## II. Provisions as to the Escrow Agent

2.1.     Limited Duties of the Escrow Agent.  The Escrow Agent undertakes to perform only such duties as are expressly set forth in this Escrow Agreement that shall be deemed purely ministerial in nature. Under no circumstance will the Escrow Agent be deemed to be a fiduciary to any Party or any other person under this Escrow Agreement.  This Escrow Agreement expressly and exclusively sets forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Escrow Agreement against the Escrow Agent.  The Escrow Agent shall not be bound by, deemed to have knowledge of, or have any obligation to determine, make inquiry into or consider, any term or provision of any agreement between the Company, Plaintiffs' Counsel and/or any other third party or as to which the escrow relationship created by this Escrow Agreement relates, including without limitation the Settlement Agreement or any other documents referenced in this Escrow Agreement. Notwithstanding the terms of any other agreement between the Parties, the terms and conditions of this Escrow Agreement shall control the actions of the Escrow Agent.Limitations on Liability of Escrow Agent.

(a)     In no event shall the Escrow Agent be liable for incidental, indirect, special or consequential damages of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action in which such damages are sought.  The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent that the Escrow Agent's gross negligence, bad faith or willful misconduct was the cause of any direct loss, damage, claim or expense to either Party.

(b)     Except in the case of the Escrow Agent's willful misconduct, bad faith or gross negligence, the Escrow Agent shall be fully protected (i) in acting in reliance upon any certificate, statement, request, notice, advice, instruction, direction, other agreement or instrument or signature reasonably and in good faith provided by the Company or Plaintiffs' Counsel with respect to such Party's information and reasonably believed by the Escrow Agent to be genuine, (ii) in assuming that any person purporting to give the Escrow Agent any of the foregoing in connection with either this Escrow Agreement or the Escrow Agent's duties has been duly authorized to do so; provided, that such instrument is otherwise in accordance with the requirements hereof, and (iii) in acting in good faith in accordance with the terms of this Escrow Agreement on the advice of a counsel retained by the Escrow Agent.

(c)     The Escrow Agent shall have no liability with respect to the transfer or distribution of any funds effected by the Escrow Agent pursuant to wiring or transfer instructions provided to the Escrow Agent in accordance with the provisions of this Escrow Agreement.  The Escrow Agent shall be entitled to rely upon all bank and account information provided to the Escrow Agent by the applicable Authorized Representative of each of the Company and Plaintiffs' Counsel.  The Escrow Agent shall have no duty to verify or otherwise confirm any written wire transfer instructions except as set forth in Section 2.3 below, but it may do so in its discretion on any occasion without incurring any liability to any party for failing to do so on any other occasion.  The Escrow Agent shall process all wire transfers based on bank identification and account numbers rather than the names of the intended recipient of the funds, even if such numbers pertain to a recipient other than the recipient identified in the payment instructions.  The Escrow Agent shall have no duty to detect any such inconsistencies and shall resolve any such inconsistencies by using

the account number.  In connection with any payments that the Escrow Agent is instructed to make by wire transfer, the Escrow Agent shall not be liable for the acts or omissions of (i) the Company, Plaintiffs' Counsel or other person providing such instructions, including without limitation errors as to the amount, bank information or bank account number; or (ii) any other person or entity, including without limitation any Federal Reserve Bank, any transmission or communications facility, any funds transfer system, any receiver or receiving depository financial institution, and no such person or entity shall be deemed to be an agent of the Escrow Agent.  Any wire transfers of funds made by the Escrow Agent pursuant to this Escrow Agreement will be made subject to and in accordance with the Escrow Agent's usual and ordinary wire transfer procedures in effect from time to time.

(d)      No provision of this Escrow Agreement shall require the Escrow Agent to risk or advance its own funds or otherwise incur any financial liability or potential financial liability in the performance of its duties or the exercise of its rights under this Escrow Agreement.  The Escrow Agent shall not be obligated to take any legal action or to commence any proceedings in connection with this Escrow Agreement or any property held hereunder or to appear in, prosecute or defend in any such legal action or proceedings.

(e)      The Company understands and acknowledges that The PNC Financial Services Group, Inc., a Pennsylvania corporation ("**PNC**") offers a diversified set of financial products and services, and may currently, or in the future, have relationships with parties whose interest may conflict with those of the Company.

2.3.    <u>Security Procedure For Funds Transfers</u>.  The Escrow Agent shall confirm each funds transfer instruction received in the name of a Party by telephone call-back to an Authorized Representative of such Party, as applicable, at the telephone number specified for such Authorized Party on <u>Exhibit A-1</u> or <u>Exhibit A-2</u>, as applicable.  Once delivered to the Escrow Agent, <u>Exhibit A-1</u> or <u>Exhibit A-2</u> may be revised or rescinded only by a writing signed by an Authorized Representative of the applicable Party.  Such revisions or rescissions shall be effective only after actual receipt and following such period of time as may be necessary to afford the Escrow Agent a reasonable opportunity to act on it.  If a revised <u>Exhibit A-1</u> or <u>Exhibit A-2</u> or a rescission of an existing <u>Exhibit A-1</u> or <u>Exhibit A-2</u> is delivered to the Escrow Agent by an entity that is a successor-in-interest to such Party, such document shall be accompanied by additional documentation satisfactory to the Escrow Agent showing that such entity has succeeded to the rights and responsibilities of the applicable authorized representative of each of the Company and Plaintiffs' Counsel under this Escrow Agreement.  The Company and Plaintiffs' Counsel understand that the Escrow Agent's inability to receive or confirm funds transfer instructions pursuant to the above security procedure may result in a delay in accomplishing such funds transfer, and agree that the Escrow Agent shall not be liable for any loss caused by any such delay.

2.4.    <u>Depository Role</u>.  The Escrow Agent acts hereunder as a depository only, and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of the subject matter of this Escrow Agreement or any part thereof, or of any person executing or depositing such subject matter.

2.5.    <u>No Duty to Notify</u>.  The Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any Party or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

2.6.    <u>Other Relationships</u>.  The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents.  The Escrow Agent and its affiliates, and any of their respective directors, officers or employees may become pecuniarily interested in any transaction in which any of the other Parties may be interested and may contract and lend money to any such Party and

otherwise act as fully and freely as though it were not escrow agent under this Escrow Agreement. Nothing herein shall preclude the Escrow Agent or its affiliates from acting in any other capacity for any such Party.

2.7.    Disputes.  In the event of any disagreement between the Company and Plaintiffs' Counsel, or between either of them and the Escrow Agent, resulting in adverse claims or demands being made in connection with the matters covered by this Escrow Agreement, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any Party for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to refrain from acting until directed by (i) an order of the United States District Court for the Southern District of New York, or (ii) a joint Written Direction delivered by the Company and Plaintiffs' Counsel.

2.8.    Indemnification.  The Company agrees to defend, indemnify and hold harmless the Escrow Agent and each of the Escrow Agent's officers, directors, agents and employees (the "**Indemnitee**") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, reasonable and documented out of pocket costs or expenses (including, without limitation, reasonable and documented out of pocket fees and expenses of one outside counsel and experts and their staffs and all reasonable expense of document location, duplication and shipment) (collectively "**Indemnitee Losses**"), arising out of or in connection with (a) the Escrow Agent's performance of this Escrow Agreement, except to the extent that such Indemnitee Losses are determined by a court of competent jurisdiction to have been caused by fraud, gross negligence, willful misconduct or bad faith of such Indemnitee; and (b) the Escrow Agent's following, accepting or acting upon any instructions or directions from the Parties, whether joint or singular, received in accordance with this Escrow Agreement. Notwithstanding the foregoing, the Company shall not be required to indemnify the Escrow Agent with respect to any claim against the Escrow Agent unless the Company is notified of the written assertion of a claim against it, or of any action commenced against it, promptly after the Escrow Agent shall have received any such written information as to the nature and basis of the claim; provided, however, that failure to provide such notice shall not relieve the Company of any indemnification obligation and/or liability hereunder if no prejudice occurs. The provisions of this section shall survive the termination of this Escrow Agreement and any resignation or removal of the Escrow Agent.

2.9.    Mergers, Consolidations, Etc.  Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business of the Escrow Agent may be transferred, shall be the successor Escrow Agent under this Escrow Agreement and shall have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, in each case without the execution or filing of any instrument or paper or the performance of any further act (other than prompt written notice to the Company and Plaintiffs' Counsel).

2.10.    Resignation; Removal.

(a)    The Escrow Agent may resign and be discharged from its duties and obligations at any time under this Escrow Agreement by providing written notice to the Company and Plaintiffs' Counsel. Such resignation shall be effective on the date set forth in such written notice, which shall be no earlier than thirty (30) days after such written notice has been furnished.  Thereafter, the Escrow Agent shall have no further obligation except to hold the Escrow Funds as depository and cooperate reasonably in the transfer of the Escrow Funds to a successor escrow agent.  The Company and Plaintiffs' Counsel shall promptly appoint a successor escrow agent.  The Escrow Agent shall refrain from taking any action until it shall receive a joint Written Direction from Plaintiffs' Counsel and Company's Counsel designating the successor escrow agent.  However, in the event no successor escrow agent has been appointed on or prior

to the date such resignation is to become effective, the Escrow Agent shall be required to tender into the custody of the Clerk of the United States District Court for the Southern District of New York all funds, equity and other property then held by the Escrow Agent hereunder and the Escrow Agent shall thereupon be relieved of all further duties and obligations under this Escrow Agreement.

(b)      The Company and Plaintiffs' Counsel acting together shall have the right to terminate the appointment of the Escrow Agent upon thirty (30) days' joint written notice to the Escrow Agent specifying the date upon which such termination shall take effect.  Thereafter, the Escrow Agent shall have no further obligation except to hold the Escrow Funds as depository and cooperate reasonably in the transfer of the Escrow Funds to a successor escrow agent.  The Escrow Agent shall refrain from taking any action until it shall receive a joint Written Direction of the Company and Plaintiffs' Counsel designating the successor escrow agent.  However, in the event no successor escrow agent has been appointed on or prior to the date such termination is to become effective, the Escrow Agent shall be required to tender into the custody of the Clerk of the United States District Court for the Southern District of New York all funds, equity and other property then held by the Escrow Agent hereunder and the Escrow Agent shall thereupon be relieved of all further duties and obligations under this Escrow Agreement.

(c)      In the case of a resignation or removal of the Escrow Agent, the Escrow Agent shall have no responsibility for the appointment of a successor escrow agent hereunder.  The successor escrow agent appointed by the Company and Plaintiffs' Counsel shall execute, acknowledge and deliver to the Escrow Agent and the other Parties an instrument in writing accepting its appointment hereunder, and thereafter, the Escrow Agent shall deliver all of the then-remaining balance of the Escrow Funds, less any reasonable and documented fees and expenses then incurred by and unpaid to the Escrow Agent in connection with the performance of its duties hereunder, to such successor escrow agent in accordance with the joint Written Direction of the Company and Plaintiffs' Counsel, and upon receipt of the Escrow Funds, the successor escrow agent shall be bound by all of the provisions of this Escrow Agreement.

2.11.      Compensation of the Escrow Agent.  The Parties agree that upon the execution of this Escrow Agreement, the Company will pay the Escrow Agent as stated in the fee schedule attached hereto as Schedule C.

## III.  Tax Matters

3.1.      Tax Matters.  The Escrow Funds shall be treated as owned by Plaintiffs' Counsel for U.S. federal income tax purposes. All Escrow Account income earned under this Escrow Agreement shall be allocated to the Plaintiffs' Counsel and timely reported by Escrow Agent to the Plaintiffs' Counsel, the IRS or other applicable taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Funds by the Escrow Funds whether or not said income has been distributed during such year.  The Plaintiffs' Counsel shall duly complete such tax documentation or other procedural formalities necessary for Escrow Agent to complete required tax reporting and for the Plaintiffs' Counsel to receive interest or other income without withholding or deduction of tax in any jurisdiction.  Should any information supplied in such tax documentation change, the Plaintiffs' Counsel shall promptly notify Escrow Agent.  Escrow Agent shall withhold any taxes it deems appropriate in the absence of proper tax documentation or as required by law, including without limitation, the Foreign Account Tax Compliance Act ("**FATCA**"), and shall remit such taxes to the appropriate authorities.

## IV.  Miscellaneous

4.1.      Disbursements.  The Escrow Agent shall make no disbursement, investment or other use of funds until and unless it has collected funds.  The Escrow Agent shall not be liable for collection items until such proceeds have been received or the Federal Reserve has given the Escrow Agent credit for the funds.

4.2.      Permitted Investments.  The Escrow Agent shall hold the Escrow Funds in a PNC Interest Bearing Deposit Account.

4.3.      Accounting.  The Escrow Agent shall provide access to the authorized individuals to obtain the account statements through the Escrow Agent's online portal ("**PNC PAID**") in accordance with the PNC PAID access exhibits ("**PNC PAID Access**") as set forth on Exhibit A-3 and Exhibit A-4.  The Parties acknowledge changes to PNC PAID Access should be made in writing to the Escrow Agent. The Escrow Agent shall mail monthly account statements to Plaintiffs' Counsel and the Company at the addresses set forth in Section 4.4, below.

4.4.      Notices.  Any notice, request for consent, report, or any other communication required or permitted by this Escrow Agreement shall be in writing and shall be deemed to have been given when delivered by electronic mail to the e-mail address(es) given below, provided, that written confirmation of receipt is obtained promptly from the recipient, including by return receipt, after completion of the electronic mail transmission.

If to the Escrow Agent:

PNC Bank, National Association
Attn: Andric Cheong
Email: andric.cheong@pnc.com; pncpaidadmin@pnc.com
and for any claims related correspondence: TMescrowclaims@pnc.com
Phone: 212.907.5795

If to the Company:

Kiromic BioPharma, Inc.
7707 Fannin Street, Suite 200
Houston, Texas 77054
Attention:  Pietro Bersani
            Michael Nagel
Email:      pbersani@kiromic.com
            mnagel@kiromic.com

with a copy (which shall not constitute notice) to

Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
Attention:  Alex J. Kaplan
            Yolanda C. Garcia
Email:      ajkaplan@sidley.com
            ygarcia@sidley.com

If to Plaintiffs' Counsel:

> Gainey McKenna & Egleston
> 501 Fifth Avenue, 19th Floor
> New York, NY 10017
> Attention:  Thomas J. McKenna
>                    Gregory M. Egleston
> Email:       tjmckenna@gme-law.com
>                    egleston@gme-law.com

In all cases, the Parties shall be entitled to rely on a copy or electronic transmission of any document with the same legal effect as if it were the original of such document.  "**Business Day**" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth above is authorized or required by law or executive order to remain closed. The Parties acknowledge that there are certain security, corruption, transmission error and access availability risks associated with using open networks such as the internet and each Party assumes such risks and acknowledges that the security procedures set forth herein are commercially reasonable.

4.5.     Governing Law; Submission to Jurisdiction; Consent to Service of Process.  This Escrow Agreement shall be governed by, and interpreted in accordance with, the internal laws of the State of New York, without regard to conflict of law principles. The Parties hereby irrevocably submit to the jurisdiction of the United States District Court for the Southern District of New York (or, if no federal court in the State of New York accepts jurisdiction, any state court within the State of New York) over all matters and disputes arising out of this Escrow Agreement, and each Party hereby irrevocably agrees that all matters and disputes may be heard and determined in such courts. The Parties hereby irrevocably and unconditionally waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such matter or dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the Parties hereby consents to process being served by any Party to this Escrow Agreement in any matter or dispute hereunder by the delivery of a copy thereof in accordance with the provisions of Section 4.4 (other than by email) along with a notification that service of process is being served in conformance with this Section 4.5. Nothing in this Escrow Agreement will affect the right of any Party to serve process in any other manner permitted by law.

4.6.     Waiver of Jury Trial.  TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, EACH PARTY HEREBY WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING IN WHOLE OR IN PART UNDER, RELATED TO, BASED ON OR IN CONNECTION WITH THIS ESCROW AGREEMENT OR THE SUBJECT MATTER HEREOF, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN TORT OR CONTRACT OR OTHERWISE.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION 4.6 WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH SUCH PARTY TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

4.7.     Assignment; Binding Effect.  Neither this Escrow Agreement nor any rights or obligations hereunder may be assigned by any Party without the express written consent of each of the other Parties. This Escrow Agreement shall inure to and be binding upon the Parties and their respective successors, heirs and permitted assigns.  Notwithstanding the foregoing, any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow agent business of the Escrow Agent may be transferred, shall be the successor Escrow Agent under this Escrow Agreement and shall have and succeed to the rights, powers, duties, immunities and privileges

as its predecessor, in each case without the execution or filing of any instrument or paper or the performance of any further act (other than prompt written notice to the Company and Plaintiffs' Counsel).

4.8.     Amendment and Waiver.  The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the Parties.  No course of conduct shall constitute a waiver of any terms or conditions of this Escrow Agreement, unless such waiver is specified in writing, and then only to the extent so specified.  A waiver of any of the terms and conditions of this Escrow Agreement on one occasion shall not constitute a waiver of the other terms of this Escrow Agreement, or of such terms and conditions on any other occasion.

4.9.     Severability.  If any provision of this Escrow Agreement shall be held or deemed to be or shall in fact, be illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

4.10.    Further Assurances.  If at any time the Escrow Agent shall determine or be advised that any further agreements, assurances or other documents are reasonably necessary or desirable to carry out the provisions of this Escrow Agreement and the transactions contemplated by this Escrow Agreement, the Parties shall execute and deliver any and all such agreements or other documents and do all things reasonably necessary or appropriate to carry out fully the provisions of this Escrow Agreement.

4.11.    No Third Party Beneficiaries.  This Escrow Agreement is for the sole benefit of the Parties, and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Escrow Agreement.

4.12.    Force Majeure.  No Party shall be liable to any other Party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, interruption or malfunctions of communications or power supplies, labor difficulties, actions of public authorities or other similar causes reasonably beyond its control, it being understood that each Party, as applicable, shall use commercially reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as reasonably practicable under the circumstances.  The Party suffering the force majeure event shall give notice to the other Parties, stating the period of time the occurrence is expected to continue and shall use its best efforts to end the failure or delay and ensure the effects of such force majeure event are minimized.

4.13.    Termination.  This Escrow Agreement shall terminate upon the earlier of (i) distribution by the Escrow Agent in accordance with this Escrow Agreement of all funds, equity and property held under this Escrow Agreement or (ii) delivery to the Escrow Agent of a written notice of termination jointly executed by the Company and Plaintiffs' Counsel, or (iii) two Business Days after the expiration of the Objection Period following delivery by the Company or Plaintiffs' Counsel to the Escrow Agent of the Final Order of the United States District Court for the Southern District of New York requiring such termination.

4.14.    Titles and Headings.  All titles and headings in this Escrow Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

4.15.    Counterparts; Electronic Execution.  This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one

and the same instrument.  Delivery of an executed signature page to this Escrow Agreement and agreements, certificates, instruments and documents entered into in connection herewith by facsimile or other electronic transmission (including Adobe PDF format) will be effective as delivery of a manually executed counterpart to this Escrow Agreement or such agreements, certificates, instruments and documents.

4.16.    Entire Agreement; Effect of Settlement Agreement.  This Escrow Agreement constitutes the entire agreement between the Escrow Agent, the Company and Plaintiffs' Counsel in connection with the subject matter of this Escrow Agreement, and no other agreement entered into between the Company and Plaintiffs' Counsel, or either of them, including, without limitation, the Settlement Agreement, shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be deposited with the Escrow Agent or the Escrow Agent may have knowledge thereof.  The Parties acknowledge and agree that the Escrow Agent is not a party to, is not bound by, and has no duties or obligations under the Settlement Agreement, that all references in this Escrow Agreement to the Settlement Agreement are for convenience, and that the Escrow Agent shall have no implied duties beyond the express duties set forth in this Escrow Agreement, or as ordered by the United States District Court for the Southern District of New York.

4.17.    Conflict with Settlement Agreement.  As between the Company and Plaintiffs' Counsel, if any term of this Escrow Agreement conflicts in any way with any term of the Settlement Agreement, then the term of the Settlement Agreement shall prevail, in each case to the extent permitted under applicable law.  It is further clarified that nothing herein shall be deemed to derogate from any right to which the Company, Plaintiffs' Counsel, Company's Counsel and/or Plaintiffs may be entitled pursuant to the Settlement Agreement.

4.18.    Procedures for Opening a New Account.  IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT: in accordance with Section 326 of the USA Patriot Act, to help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. When a party opens an account, the Escrow Agent must obtain each party's name, address, date of birth (as applicable), taxpayer or other government identification number or other appropriate information that will allow the Escrow Agent to identify such party.  The Escrow Agent may also ask to see each party's driver's license, passport or other identifying documents.  For parties that are business or other legal entities, the Escrow Agent may require such documents as it deems necessary to confirm the legal existence of the entity.  The Parties to this Escrow Agreement agree to provide all such information as the Escrow Agent may reasonably request in order to satisfy the requirements of the USA Patriot Act or any other regulatory requirements, and any policy or procedure implemented by the Escrow Agent to comply therewith.

4.19.    Compliance with Laws.  The Company hereby represents that (i) it is not a person that is the target of any sanctions program administered by the U.S. Department of the Treasury Office of Foreign Assets Control ("**Sanctioned Person**"); (ii) it is not directly or indirectly controlled by, or acting hereunder for or on behalf of, any Sanctioned Person; and (iii) none of the funds used to make any payments contemplated under this Escrow Agreement are derived from any illegal activity.

4.19. Compliance with Court Orders.  In the event that a legal garnishment, attachment, levy, restraining notice or court order of the United States District Court for the Southern District of New York is served with respect to any of the Escrow Funds, or the delivery thereof shall be stayed or enjoined by an order of the United States District Court for the Southern District of New York, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all such orders so entered or issued by the United States District Court for the Southern District of New York, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such order it shall not be liable to any

of the Parties or to any other person by reason of such compliance notwithstanding such order be subsequently reversed, modified, annulled, set aside or vacated; provided, that a court's final approval of the Settlement Agreement or the Settlement shall not trigger the provisions of this Section 4.19.

[*Signature Pages Follows*]

IN WITNESS WHEREOF, the Parties have caused this Escrow Agreement to be executed as of the date first above written.

PNC BANK, NATIONAL ASSOCIATION, as the Escrow Agent

By:

Name:      Andric Cheong

Title:      Vice President

*[Signature Page to Escrow Agreement]*

**KIROMIC BIOPHARMA, INC.**

DocuSigned by:

By: *Pietro Bersani*
      43EAD6D320C047E...

Name: Pietro Bersani
Title:   Chief Executive Officer & Director

*[Signature Page to Escrow Agreement]*

**GAINEY MCKENNA & EGLESTON**

By: _____

Name: Thomas J. McKenna

Title: Partner

*[Signature Page to Escrow Agreement]*

**SCHEDULE A**

**Payment Schedule**

| Payment Date | Amount Payable |
|---|---|
| August 7, 2023* | $190,000.00 |
| August 7, 2023* | $150,000.00 |
| September 1, 2023 | $150,000.00 |
| October 1, 2023 | $150,000.00 |
| November 1, 2023 | $150,000.00 |
| December 1, 2023 | $245,000.00 |
| January 1, 2024 | $245,000.00 |
| February 1, 2024 | $245,000.00 |
| March 1, 2024 | $245,000.00 |
| April 1, 2024 | $245,000.00 |
| May 1, 2024 | $245,000.00 |
| June 1, 2024 | $40,000.00 |
| **TOTAL:** | **$2,300,000.00** |

\* Any Installment Payments initiated by the Company on this date shall be
  deemed timely for purposes of this Payment Schedule.

*[Schedule A to Escrow Agreement]*

**SCHEDULE B**

**Escrow Agent**
**Wire Instructions**

PNC Bank, National Association
ABA: 031000053
SWIFT: PNCCUS33
Account: 5050524569
Account Name: Kiromic Biopharma Inc.
Reference: Escrow Agreement
Attention: Andric Cheong

The Tower at PNC Plaza
300 Fifth Avenue
Pittsburgh, PA 15222

*[Schedule B to Escrow Agreement]*

**SCHEDULE C**

**Escrow Agent Fee**

| | |
|---|---|
| Escrow Acceptance Fee | WAIVED |
| Escrow Administration Fee | *$2,500 |
| Terms | Litigation Escrow – Interest Bearing Account |

Annual Escrow Administration fee includes agreement negotiation, account set up and maintenance and due and payable at closing and each subsequent account year.

Assumptions:
- PNC is Escrow agent for ~ $2.3M Litigation Escrow (several months); *escrow fees waived for deposits of at least $1M and for at least 12 months in a non-interest bearing deposit, alternatively, $2,500 annual escrow fee will be applicable
- Escrow agent fees are payable at transaction closing

*[Schedule C to Escrow Agreement]*

## EXHIBIT A-1

### Certificate of Incumbency
### (List of Authorized Representatives of the Company)

Client Name: Kiromic BioPharma, Inc.

As an authorized officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity and is authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of the above referenced entity, and that the title, signature and contact number appearing beside each name is true and correct.

| Name | Title | Signature | Contact Number |
|------|-------|-----------|----------------|
| Pietro Bersani | CEO and Director | *Pietro Bersani* (DocuSigned by: 435EAD6D330C047E...) | 346-234-3680 |
| Michael Nagel | Chairperson | *Michael Nagel* (DocuSigned by: D2F613ED22BB450...) | 949-939-6776 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

_____
    Date

By: _____ (DocuSigned by: 9B0844A76C41462...)
Its: Authorized Officer

[*Exhibit A-1 to Escrow Agreement*]

**EXHIBIT A-2**

**Certificate of Incumbency**
**(List of Authorized Representatives of Plaintiffs' Counsel)**

Client Name: Gainey McKenna & Egleston

As an authorized officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity and is authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of the above referenced entity, and that the title, signature and contact number appearing beside each name is true and correct.

| **Name** | **Title** | **Signature** | **Contact Number** |
|---|---|---|---|
| Thomas J. McKenna | Partner | | 914-552-2786 |
| Gregory M. Egleston | Partner | | 929-427-6210 |
| | | | |
| | | | |
| | | | |
| | | | |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

_____
        Date


By:_____
Its: Authorized Representative

*[Exhibit A-2 to Escrow Agreement]*

**EXHIBIT A-3**

PNC PAID ACCESS

The Company instructs the Escrow Agent to grant certain authorized individuals access to information regarding the Escrow Fund through PNC PAID as further detailed below. Each authorized individual must agree to comply with the PNC PAID terms and conditions and any other provisions required by the Escrow Agent to access PNC PAID. The Company must provide written notice to Escrow Agent to change or remove any access previously authorized or granted.

List of authorized individuals:

| Name | Title | Email Address | Contact Number |
|---|---|---|---|
| Pietro Bersani | CEO and Director | pbersani@kiromic.com | 346-234-3680 |
| Michael Nagel | Chairperson | mnagel@kiromic.com | 949-939-6776 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*[Exhibit A-3 to Escrow Agreement]*

## EXHIBIT A-4
## PNC PAID ACCESS

Plaintiffs' Counsel instructs the Escrow Agent to grant certain authorized individuals access to information regarding the Escrow Fund through PNC PAID as further detailed below.  Each authorized individual must agree to comply with the PNC PAID terms and conditions and any other provisions required by the Escrow Agent to access PNC PAID.  Plaintiffs' Counsel must provide written notice to Escrow Agent to change or remove any access previously authorized or granted.

List of authorized individuals:

| Name | Title | Email Address | Contact Number |
|---|---|---|---|
| Thomas J. McKenna | Partner | tjmckenna@gme-law,com | 914-552-2786 |
| Gregory M. Egleston | Partner | egleston@gme-law.com | 929-427-6210 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*[Exhibit A-4 to Escrow Agreement]*

## EXHIBIT B

## WRITTEN DIRECTION

Pursuant to that certain Escrow Agreement, dated as of August 7, 2023, by and among PNC Bank, National Association, a national banking association (the "**Escrow Agent**"), Kiromic Biopharma, Inc., a Delaware corporation (the "**Company**") and Gainey McKenna & Egleston, a law firm with offices in New York and New Jersey ("**Plaintiffs' Counsel**"), [Plaintiffs' Counsel / the Company] hereby instruct[s] the Escrow Agent to release funds from the Escrow Fund in accordance with the following instructions:

| $ [_____] to Plaintiffs' Counsel: | $ [_____] to the Company: |
|---|---|
| Wire Instructions: | Wire Instructions: |
| Account Name:     _____ | Account Name:     _____ |
| Account Number:  _____ | Account Number:  _____ |
| Bank Name:         _____ | Bank Name:         _____ |
| Bank ABA Number: _____ | Bank ABA Number: _____ |
| Bank Address:      _____ | Bank Address:      _____ |
| For credit to:       _____ | For credit to:       _____ |
| Special Instructions: _____ | Special Instructions: _____ |
| Bank Check: | Bank Check: |
| Payee Name:        _____ | Payee Name:        _____ |
| Mailing Address:   _____ | Mailing Address:   _____ |

**IN WITNESS WHEREOF**, [Plaintiffs' Counsel / the Company] [has / have] caused this Written Direction to be executed as of the date first above written.

| [KIROMIC BIOPHARMA, INC.] | [GAINEY MCKENNA & EGLESTON] |
|---|---|
| By:    _____ | By:    _____ |
| Name: _____ | Name: _____ |
| Title:  _____ | Title:  _____ |

*[Exhibit B to Escrow Agreement]*