# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE KIROMIC BIOPHARMA, INC.

No. 1:22-cv-06690-JHR

AMENDED STIPULATION OF SETTLEMENT

This Stipulation of Settlement, dated as of September 29, 2023 (the "Settlement" or "Stipulation")[1] in the above-captioned consolidated action (the "Action"), is entered into by and between: (i) Lead Plaintiffs Ronald H. Karp, Ari Karp, and Ethan Karp (collectively, "Lead Plaintiffs"), individually and on behalf of all other Settlement Class Members (as defined herein); and (ii) Defendant Kiromic Biopharma, Inc. ("Kiromic" or the "Company"), by and through their respective counsel. Lead Plaintiffs and Kiromic agree on behalf of their respective clients, and with respect to each other defendant – Maurizio Chiriva Internati, Tony Tontat, Gianluca Rotino, Pietro Bersani, Americo Cicchetti, Michael Nagel, Jerry Schneider ("Individual Defendants") and ThinkEquity LLC (collectively, with Kiromic and Individual Defendants, the "Defendants") – that this Stipulation is intended by Lead Plaintiffs and Kiromic (together, "the Parties") to fully, finally, and forever resolve, discharge, release, and settle the Released Claims, as defined below, subject to the approval of this Court and the terms and conditions set forth in this Stipulation.

I.     SUMMARY OF CLAIMS AND PROCEDURAL HISTORY

On August 5, 2022, Plaintiff Ronald Karp filed a complaint on behalf of himself and a putative class against Defendants alleging violations of the Securities Act of 1933 and the

---

[1] All capitalized words and terms that are not otherwise defined in text have the meaning to ascribed to them below in the section entitled "Definitions."

1

Securities Exchange Act of 1934 in the Southern District of New York. *See* No. 22 Civ. 6690, Dkt. No. 1 ("Karp Action").

On October 3, 2022, Joseph Podmore also filed a complaint on behalf of himself and a putative class against Defendants alleging substantially similar violations of the securities laws as Ronald Karp. *See* No. 22 Civ. 8433, Dkt. No. 1 ("Podmore Action").

Then, on October 4, 2022, both Lead Plaintiffs and Joseph Podmore filed competing motions to consolidate the cases, to be appointed as Lead Plaintiff, and for approval of their selection of Lead Counsel. *See* No. 22 Civ. 6690, Dkt. No. 8 and 12. Shortly thereafter on October 18, 2022, Lead Plaintiffs filed a Response to Joseph Podmore's Motion, *See Id.* at Dkt. No. 22, and Joseph Podmore filed a notice of non-opposition to Lead Plaintiffs' Motion. *See Id.* at Dkt. No. 23.

Following this, on October 27, 2022, United States District Judge Victor Marrero ordered the consolidation of the Karp Action and the Podmore Action and assigned the caption *In re Kiromic Biopharma Inc. Securities Litigation*, No. 1:22-cv-6690 to the Action. Judge Marrero further ordered Ronald Karp along with Ari Karp and Ethan Karp to serve as Lead Plaintiffs in the action and appointed Gainey McKenna & Egleston ("GM&E" or "Lead Counsel") as Lead Counsel. *See Id.* at Dkt. No. 31. Lead Plaintiffs then filed a Consolidated Complaint in this Action on December 21, 2022. *Id.* at Dkt. No. 37.

On February 6, 2023, certain Defendants and Lead Plaintiffs entered into a stipulation adjourning all case deadlines for a 45-day Adjournment Period, during which the Parties engaged in settlement discussions. The Parties made progress during that period and certain Defendants and Lead Plaintiffs agreed to extend the Adjournment Period on March 20, 2023, and once again on May 4, 2023, in order to engage in further settlement discussions. Both of these agreements were so-ordered by this Court on April 5, 2023 and May 5, 2023, respectively. *See Id.* at Dkt. Nos. 48 and 50.

2

On August 7, 2023, following extensive settlement discussions, Lead Plaintiffs, through their counsel, wrote to this Court on behalf of the Parties to inform the Court that the Parties had reached a global settlement in principle of the Action. This Court then stayed the proceedings and ordered on August 8, 2023 that the Parties submit the necessary papers seeking preliminary approval of the proposed settlement by September 22, 2023. *See Id.* at Dkt. No. 52. That deadline was extended to September 29, 2023.  ECF No. 54.

## II.    LEAD PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in this Action have merit and that the information developed to date supports their claims. Lead Plaintiffs and their counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals.

Lead Plaintiffs and Lead Counsel have also taken into account the inherent risks of litigation, especially in complex actions such as this, which result in uncertain outcomes, difficulties, and delays, in addition to the costs of continued litigation. Lead Plaintiffs and Lead Counsel are also mindful of the inherent problems of proof and the possible defenses to the securities law violations asserted in this Action. Lead Plaintiffs and Lead Counsel further considered the information uncovered in investigating this Action and during settlement discussions with Kiromic. Lead Plaintiffs and Lead Counsel believe that the settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class and is fair, reasonable, adequate, and in the best interests of Lead Plaintiffs and the Settlement Class.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants deny each and all of the claims alleged by Lead Plaintiffs and the Settlement Class in this Action. Defendants deny all claims of liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in this Action. Defendants deny, among other allegations, the allegations that Lead Plaintiffs and/or

3

the Settlement Class have suffered any economic loss or damage, allegations that Defendants made false and/or misleading statements and/or material omissions, allegations that Defendants engaged in conduct with any untoward intent or scienter, or that Lead Plaintiffs or the Settlement Class were harmed by the conduct alleged in this Action or that could have been alleged as part of this Action, among all other allegations alleged in this Action or that could have been alleged as part of this Action. Nor do Defendants believe that the claims and allegations alleged in this Action have been sufficiently pleaded to make out any claim against Defendants.  Defendants believe that they acted properly at all times and that this Action is without merit. In addition, Defendants maintain that they have meritorious defenses to all claims and allegations alleged in this Action or that could have been alleged as part of this Action, including that any class could be certified in this Action, and expressly preserve each and every such defense and right.  The foregoing paragraph is defined as "Defendants' Denials and Reservation of Rights".

Nonetheless, Defendants have concluded that continued litigation, with its inherent risks, would be protracted and expensive, and that it is desirable that this Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, without any concession by Lead Plaintiffs that this Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and the Settlement Class Members) and Kiromic, by and through their respective counsel and with respect to each other Released Party that, subject to the approval of this Court, this Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

4

## 1.    Definitions

In addition to the terms that may be defined elsewhere in this Stipulation, the following terms as used in this Stipulation have the meanings specified below:

(a) "Action" means the civil case captioned *In re Kiromic Biopharma Inc. Securities Litigation*, No. 1:22-cv-6690, pending in the United States District Court for the Southern District of New York before the Honorable Judge Jennifer H. Rearden, United States District Judge.

(b) "Alternative Judgment" means a form of judgment with terms materially different from those set forth in the form of judgment that is attached hereto as Exhibit G.

(c) "Authorized Claimant" means a Settlement Class Member who submits a valid and timely Proof of Claim form that is approved for payment by the Claims Administrator or the Court.

(d) "Bar Order" means the language set forth at ¶ 15 of the Proposed Order and Final Judgment, attached hereto as Exhibit G.

(e) "Claim" means the submission to be made by any Settlement Class Member, on the Proof of Claim form attached hereto as Exhibit E, or as may be required by the Court.

(f) "Claims Administrator" means Strategic Claims Services, the firm retained by Lead Counsel, subject to Court approval, which shall mail and publish the various notices, process Proofs of Claim, and distribute the Net Settlement Fund to Authorized Claimants.

(g) "Class Period" means the period between June 25, 2021 and February 2, 2022, both dates inclusive, and subject to 15 U.S.C. § 78u-4(e)(1).

(h) "Court" means the United States District Court for the Southern District of New York and the Honorable Judge Jennifer H. Rearden, United States District Judge, or any successor Judge.

5

(i) "Defendants" means Kiromic Biopharma, Inc., Maurizio Chiriva-Internati, Tony Tontat, Gianluca Rotino, Pietro Bersani, Americo Cicchetti, Michael Nagel, Jerry Schneider, and ThinkEquity LLC.

(j) "Defendants' Denials and Reservation of Rights" is defined above.

(k) "Effective Date," or the date upon which this settlement becomes "effective," means the later of (i) the date of final payment as set forth in § 2, below, and (ii) the date of the Court's Final approval of the Settlement.

(l) "Escrow Account" means the segregated and separate interest-bearing escrow account established by the Escrow Agent pursuant to the Escrow Agreement.

(m) "Escrow Agent" means PNC Bank, National Association, or its duly appointed successor.

(n) "Escrow Agreement" refers to the Escrow Agreement between PNC Bank, Plaintiffs' Counsel, and Kiromic dated August 7, 2023 governing the Escrow Account, attached hereto as Exhibit H.

(o) "Fee and Expense Application" means the application of Lead Counsel for a Fee and Expense Award.

(p) "Fee and Expense Award" means any portion of the Gross Settlement Fund approved by the Court for payment to Lead Counsel who have represented Lead Plaintiffs, including such counsel's attorneys' fees, costs, litigation expenses (excluding Notice and Administration Expenses).

(q) "Final" means, with respect to a Judgment or order of the Court, a Judgment or order as to which there is no pending stay, motion for reconsideration, motion for rehearing, motion to vacate, appeal, petition for writ of certiorari or similar requests for relief; and

    a. If no appeal or review is filed, the time to appeal or petition for review has expired; or

b.  If there is an appeal or review, such Judgment or order has been affirmed or the appeal or review is dismissed or denied, and such Judgment or order is no longer subject to further judicial review, including upon appeal or review by writ of certiorari.

c.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation, or to the Court's Fee and Expense Award to Lead Counsel, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

(r) "Final Approval Hearing" means the hearing scheduled by the Court to determine whether (i) the Settlement is fair, adequate, and reasonable; (ii) the Plan of Allocation is fair, adequate, and reasonable; (iii) a class solely for the purposes of Settlement should be certified; and (iv) Lead Counsel's request for a Fees and Expense Award is reasonable.

(s) "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit G, or an Alternative Judgment, if expressly agreed in writing by all the Parties.

(t) "Kiromic's Counsel" refers, exclusively, to Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Alex J. Kaplan and Yolanda C. Garcia.

(u) "Lead Counsel" means Gainey McKenna & Egleston ("GM&E"), 501 Fifth Avenue, 19th Floor, New York, New York, 10017.

(v) "Lead Plaintiffs" means Ronald H. Karp, Ari Karp, and Ethan Karp.

(w) "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, expenses, provided for herein or approved by the Court, and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

7

(x) "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, Fairness Hearing and Class Members' Rights, which, subject to the Court's approval, shall be substantially in the form attached hereto as Exhibit B.

(y) "Notice and Administration Expenses" means reasonable costs and expenses incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, soliciting claims, assisting with the submission of claims, processing Proof of Claim forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any.

(z) "Offering Documents" means the Company's public offering which closed on July 2, 2021 (the "Offering") and was conducted pursuant to a registration statement filed with the SEC on June 25, 2021 ("Registration Statement") and the final prospectus dated June 29, 2021 (the "Prospectus," with the Registration Statement and any other public document issued by the Company regarding the Offering, the "Offering Documents").

(aa) "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and each of their respective spouses, heirs, predecessors, successors, representatives, or assigns.

(bb) "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. The Plan of Allocation is attached hereto as Exhibit F, but is not part of this Stipulation.  Lead Counsel shall have all responsibility for implementing said Plan of Allocation with the assistance of the Claims Administrator, and for the avoidance of doubt, Defendants shall have no responsibility or liability with respect thereto.

8

(cc) Postcard Notice" means the postcard notice, which, subject to the Court's approval, shall be substantially in the form attached hereto as Exhibit D.

(dd) "Preliminary Approval Hearing" means the hearing scheduled by the Court to determine whether the Settlement could be approved at the Final Approval Hearing.

(ee) "Preliminary Approval Order" means the Order preliminarily approving the Settlement and providing for notice as approved by the Court, substantially in the form attached hereto as Exhibit A.

(ff) "Proof of Claim" means a Proof of Claim and Release Form, which, subject to the Court's approval, shall be substantially in the form attached hereto as Exhibit E.

(gg) "Related Parties" means each Defendant's respective (a) immediate family members and any trust that each Person is the settlor of or which is for their benefit and/or the benefit of their family; and (b) current or former predecessors, successors, parent corporations, sister corporations, subsidiaries, affiliates, assigns, assignors, divisions, joint ventures, heirs, legatees, executors, administrators, estates, receivers and trustees, settlors, beneficiaries, officers, directors, shareholders, employees, agents, consultants, contractors, auditors, partners, insurers, reinsurers, representatives, attorneys, legal representatives, and all persons acting by, through, under, or in concert with them or any of them.

(hh) "Released Claims" means any and all complaints, claims, third-party claims, cross claims, counterclaims, demands, allegations, liabilities, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, damages, costs, losses, debts, charges, expenses (including attorneys' fees, expert fees, and disbursements of counsel and other professionals) of any and every nature whatsoever, whether in law or in equity, whether arising under federal, state, local, or foreign statutory or common law or any other law, rule, or regulation (whether foreign or domestic), whether currently known or unknown (including Unknown Claims (as defined herein)), fixed or contingent, suspected or unsuspected, foreseen

or unforeseen, ripened or unripened, accrued or unaccrued, liquidated or unliquidated, or matured or not matured, whether arising in equity or under the law of contract, tort, malpractice, statutory breach, or any other legal right or duty, whether direct, class, individual, representative, or any other capacity, to the fullest extent that the law permits to be released, that Lead Plaintiffs, or any other member of the Settlement Class: (a) asserted in the Action, or (b) could have asserted against any of the Released Parties in the Action or in any forum that: (i) arise out of, relate to, are connected with, or in any way concern the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations, misrepresentations, or omissions involved, set forth, alleged, or referred to, in this Action, or which could have been alleged in this Action; (ii) arise out of, are based upon, or relate in any way to the purchase or acquisition of the publicly traded common stock of Kiromic on the NASDAQ Capital Market during the Class Period; (iii) arise out of, are based upon, or relate in any way to the Offering; or (iv) otherwise could have been brought against any of the Defendants at law, equity, or otherwise. Released Claims do not include any claims relating to the enforcement of the Settlement.

(ii) "Released Party" or "Released Parties" means each and all of the Defendants and their respective Related Parties.

(jj) "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means Lead Plaintiffs, each and every Settlement Class Member, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, representatives, affiliates, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the respective spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Releasing

10

Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

(kk) "Settled Defendants' Claims" means all known or unknown claims, demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action or in any forum by the Released Parties or any of them against Lead Plaintiffs, Settlement Class Members, and Lead Counsel, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution or the Action (except for claims to enforce the Settlement). "Settled Defendants' Claims" includes "Unknown Claims" as defined in ¶ 1(tt).

(ll) "Settlement" or "Stipulation" is defined above.

(mm) "Settlement Amount" means Two Million Three Hundred Thousand U.S. Dollars ($2,300,000) in cash to be paid into the Escrow Account pursuant to ¶ 2(a) of this Stipulation.

(nn) "Settlement Class" means, for the purposes of settlement only, a class consisting of all persons and entities (other than Defendants (defined herein)) that purchased or otherwise acquired (a) Kiromic common stock pursuant and/or traceable to the Offering Documents (defined herein) and/or (b) Kiromic common stock between June 25, 2021 and February 2, 2022, both dates inclusive.  Excluded from the Settlement Class are: (i) Defendants; (ii) the officers and directors of the Company at all relevant times; (iii) members of any Defendant's immediate families; (iv) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (v) the legal representatives, heirs, successors, and assigns of such excluded Persons; (vi) those who purchased or otherwise acquired Kiromic common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010); (vii) the plaintiffs in *Sabby Volatility Warrant Master Fund Ltd., et al. v. Kiromic Biopharma, Inc.*, No. 22-cv-1927(AT) (S.D.N.Y.), and any claims that were or could have been filed or

11

consolidated therewith and (viii) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

(oo) "Settlement Class Member" or "Member of the Settlement Class" means a Person who falls within the definition of the Settlement Class as set forth in ¶ 1(nn) of this Stipulation.

(pp) "Settlement Fund" means the Settlement Amount plus any accrued interest or income earned thereon.

(qq) "Settling Parties" means, collectively, Defendants and their respective Related Parties, and Lead Plaintiffs, on behalf of themselves and Members of the Settlement Class.

(rr) "Summary Notice" means the summary notice for publication, which, subject to approval of the Court, shall be substantially in the same form attached as Exhibit C.

(ss) "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

(tt) "Unknown Claims" means: (i) any and all Released Claims that Lead Plaintiffs or any Settlement Class Member do not know or suspect to exist in his, her, their or its favor at the time of the release of the Released Parties, or might have affected his, her, their, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, themself, or itself from the Settlement Class; and (ii) any Settled Defendant's Claims that any Released Party does not know or suspect to exist in his, her, their, or its favor at the time of the release of Lead Plaintiffs, Settlement Class Members, and Lead Counsel, which if known by him, her, them, or it, might have affected his, her, their, or its decision(s) with respect to the Settlement with and release of the Lead Plaintiffs, Settlement Class Members, and Lead Counsel. With respect to any and all Released Claims and Settled Defendants' Claims, Lead Plaintiffs and Kiromic stipulate and agree that, upon the Effective Date, Lead Plaintiffs and Defendants shall expressly waive, and each of the

12

Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542 and any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Lead Plaintiffs and Settlement Class Members may hereafter discover facts, legal theories, or authorities in addition to or different from those that any of them now knows or believes to be true with respect to this Action, the Released Claims, or the Settled Defendants' Claims, but Lead Plaintiffs and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have fully, finally, and forever settled and released, upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Settled Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiffs and Kiromic acknowledge, and all Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims was separately bargained for and was a material element of the settlement.

### 2. The Settlement

(a)    The Settlement Amount

i.    Kiromic, on behalf of itself and Defendants, shall pay or cause to be paid the Settlement Amount.

ii.    The Settlement Amount has already been paid or will be paid into the Escrow Account in installment payments as follows: (1) $190,000 by August 7, 2023; (2) $150,000 by

13

August 7, 2023; (3) $150,000 by September 1, 2023; (4) $150,000 by October 1, 2023; (5) $150,000 by November 1, 2023; (6) $245,000 by December 1, 2023; (7) $245,000 by January 1, 2024; (8) $245,000 by February 1, 2024; (9) $245,000 by March 1, 2024; (10) $245,000 by April 1, 2024; (11) $245,000 by May 1, 2024; and (12) $40,000 by June 1, 2024.

iii.     Upon the Court's Final approval of the Settlement, and subject to the terms herein, including the Plan of Allocation, GM&E shall distribute such amounts to Lead Plaintiffs and Settlement Class Members in a manner that is standard and customary for such distributions, less a Court approved Fee and Expense Award to Lead Counsel.

iv.     In the event of a payment default, any payments made up to that point would be forfeited to Lead Plaintiffs and subject to distribution to Lead Plaintiffs and Settlement Class Members, and GM&E would be permitted to execute on the Confession of Judgment previously executed by Kiromic pursuant to the relevant Delaware statutory law and Superior Court Rules and subject to the terms of the Confession of Judgment, if the payment default is not cured within (30) days after Kiromic's receipt of written notice of such default. In such event, GM&E would then be permitted to seek the remaining balance, subject to applicable law, along with (1) interest on the remaining balance (which shall accrue in accordance with N.Y. C.P.L.R. § 5004, and become a part of and in addition to the cash consideration described in § 2(a)(ii), above), and (2) all costs of enforcement to collect the remaining balance, including reasonable attorneys' fees.

v.     Other than the Class Action Fairness Act ("CAFA") expenses referred to in ¶ 3(a), which will be paid (or caused to be paid) by Kiromic, Defendants shall have no obligation to make any payment besides the payment of the Settlement Amount in connection with the Settlement. For the avoidance of doubt, nothing in this Stipulation shall be interpreted to mean that ThinkEquity has consented to judgment or otherwise assumed any liability or payment obligations in the event of a default by Kiromic or has waived any defenses. The obligations

14

incurred pursuant to this Stipulation shall be in full and final disposition and settlement of all Released Claims. The Settlement Amount paid by Kiromic is the sole monetary responsibility of the Released Parties under this Stipulation, and Releasing Plaintiff Parties who do not timely seek to exclude themselves from the Settlement Class shall not look to any of the Defendants or their Related Parties for satisfaction of any and all Released Claims. The Released Parties are not responsible for payment of Notice and Administrative Expenses, or any out-of-pocket expenses, other than out of the Settlement Account. The Released Parties shall have no responsibility for, interest in, or liability with respect to: (1) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees, in connection with the administration of the Settlement or otherwise; (2) the management, investment, or distribution of the Settlement Fund; (3) the Plan of Allocation; (4) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (5) any loss suffered by, or fluctuation in the value of, the Settlement Fund; or (6) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

(b)    The Escrow Agreement

i.    As provided in the Escrow Agreement, the Parties hereto agree that the Escrow Agent shall perform only such duties as expressly set forth in the Escrow Agreement. Such terms include:

a. The Escrow Agent shall hold the Settlement Funds in a PNC Interest Bearing Deposit Account.

b. The Escrow Agent shall only disburse the Settlement Funds in accordance with the terms and conditions at ¶ 1.3 of the Escrow Agreement and/or pursuant to further order of this Court. ¶ 1.3(a) of the

15

Escrow Agreement sets out the sole and exclusive circumstances under which the Settlement Funds may be disbursed by the Escrow Agent.

c.  The Settlement is non-recapture; *i.e.*, it is not a claims-made settlement. Upon the occurrence of the Effective Date, neither Kiromic nor any other Person who paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, except as set forth in ¶ 7(c) below.

d.  The Settlement Fund shall be treated as owned by Lead Counsel for U.S. federal income tax purposes. All income earned under the Escrow Agreement shall be allocated to the Settlement Fund and timely reported by Escrow Agent to GM&E, the Internal Revenue Service ("IRS") or other applicable taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Settlement Funds by the Settlement Funds whether or not said income has been distributed during such year.

e.  Lead Counsel shall duly complete such tax documentation or other procedural formalities necessary for Escrow Agent to complete required tax reporting and for the Settlement Fund to receive interest or other income without withholding or deduction of tax in any jurisdiction. Should any information supplied in such tax documentation change, GM&E shall promptly notify Escrow Agent.  In all events, the Defendants and their respective Related Persons shall have no liability for Taxes or Tax Expenses.

f.  Escrow Agent shall withhold any taxes it deems appropriate in the absence of proper tax documentation or as required by law, including

16

without limitation, the Foreign Account Tax Compliance Act ("FACTA"), and shall remit such taxes to the appropriate authorities.

(c)     Non-Approval of Settlement

i.      In the event that this Stipulation is not granted Final approval by the Court, the Settlement Fund shall be returned to Kiromic, less any claims administration or notice costs previously incurred by Lead Counsel or its Claims Administrator, and the Settling Parties shall revert to their litigation postures as of the day before the Term Sheet was signed.

ii.     In such event, the Settling Parties will work in good faith to prepare and submit a reasonable schedule to the Court within seven (7) business days.

**3.      Preliminary Approval Order and Final Approval Hearing**

(a)     Shortly after the execution of this Stipulation, Lead Plaintiffs shall submit it together with the exhibits to the Court and apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A, attached hereto, requesting, *inter alia*, the preliminary approval of the settlement set forth in this Stipulation, and approval for the posting of the Notice, Summary Notice, Postcard Notice and Proof of Claim on the Claims Administrator's website, the publication of the Summary Notice, and the mailing of the Postcard Notice. All substantially in the forms of Exhibits B, C and D, attached hereto. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and the date of the Final Approval Hearing. In accordance with CAFA, Defendants, at their own cost, shall serve proper notice of the Settlement upon those who are entitled to notice pursuant to CAFA and shall be solely responsible with respect to issuing such notice and the cost of such notice.  Notice shall be timely pursuant to 28 U.S.C § 1715, and shall not be served later than 10 days after this Stipulation is filed in Court.  In order to comply with Section 1715(d), none of the Parties shall

17

schedule, or request to schedule, a Final Approval Hearing until at least 90 days following service of notice on the appropriate officials.

(b)    The Company shall make reasonable efforts to provide to Lead Counsel, at no cost to Lead Plaintiffs or the Settlement Class, transfer records for purchases and acquisitions of the Company's common stock during the Class Period in a usable electronic format, such as an Excel spreadsheet. It shall be Lead Counsel's sole responsibility to disseminate the Postcard Notice, Notice, Proof of Claim, and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court. Defendants shall not bear any cost or responsibility for class notice, administration, or the allocation of the Net Settlement Fund among Authorized Claimants, besides the payment of the Settlement Amount. Settlement Class Members shall have no recourse as to the Released Parties with respect to any claims they may have that arise from any failure of the notice process. The Settlement Fund shall indemnify and hold each of the Released Parties and their counsel harmless for any Notice and Administration Expenses.

(c)    Lead Counsel shall request that, after notice is given, the Court hold the Final Approval Hearing and approve the settlement of the Action as set forth herein and to enter the Judgment. At or after the Final Approval Hearing, Lead Counsel will also request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4.    Releases**

(a)    Upon the Effective Date, as defined at ¶ 1(k), Lead Plaintiffs shall, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Parties and shall forever be barred, enjoined, and estopped from commencing, instituting, prosecuting, or

18

maintaining any and all of the Released Claims against any and all of the Released Parties, whether or not such Settlement Class Member executes and delivers a Proof of Claim.

(b)     Upon the Effective Date, as defined at ¶ 1(k), each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, and discharged Lead Plaintiffs, Lead Counsel, and each and all of the Settlement Class Members from all Settled Defendants' Claims.

(c)     The Company can elect to be released from the proposed Settlement if shareholders, who are neither employees, officers, and/or directors of the Company, who are holding more than a certain specified percentage of the outstanding shares of the Company provide notice of an intention to opt-out of the Settlement. Lead Counsel must provide Kiromic's Counsel with copies of requests to opt-out as expeditiously as possible, but in any event no later than five (5) business days after the receipt thereof and in any event at least twenty-one (21) calendar days prior to the Final Approval Hearing.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision of the Settlement Fund**

(a)     The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the Claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

(b)     The Settlement Fund shall be applied as follows:

      i.     To pay all Notice and Administration Expenses;

      ii.     To pay the Taxes and Tax Expenses;

      iii.     To pay Lead Counsel's attorneys' fees and expenses, with interest thereon, if and to the extent allowed by the Court following the Fee and Expense Application;

iv.    To pay any case contribution award to Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(4); and

v.    To distribute the Net Settlement Fund to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

(c)    Upon the Effective Date and thereafter, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

(d)    Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Settlement Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form and content of Exhibit E, attached hereto, signed under a penalty of perjury and supported by such documents as are specified in the Proof of Claim.

(e)    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payment pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. Lead Counsel shall have no liability for not accepting late claims.

(f)  All Proofs of Claim must be postmarked or received within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class

20

Member who fails to submit a properly completed Proof of Claim within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Stipulation or from the Net Settlement Fund (unless Lead Counsel in its discretion deems such late submission to be a formal or technical defect and waives the lateness of the submission in the interest of achieving substantial justice, or unless by order the Court approves that Settlement Class Member's untimely submitted Proof of Claim), but will in all other respects be subject to the provisions of this Stipulation and the Judgment (or any Alternative Judgment), including, without limitation, the release of the Released Claims and dismissal of the Action.

(g)    Provided that it is received before the motion for approval of the Settlement Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

(h)    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator who shall determine, under the supervision of Lead Counsel, in accordance with this Stipulation and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court as provided in ¶ 5(l), below.

(i)    Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim, the Claims Administrator shall communicate with the Authorized Claimant to give the Authorized Claimant the opportunity to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Plaintiffs' Counsel, shall notify in a timely fashion and in writing, all Authorized Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons

21

thereof, and shall indicate in such deficiency notice that the Authorized Claimant whose claims are to be rejected has the right to review by the Court if the Authorized Claimant so desires and complies with the requirement of ¶ 5(l) below.

(j)    If any Authorized Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Authorized Claimant must, within twenty (20) calendar days after the date of mailing of the notice required by ¶ 5(i) above, serve upon the Claims Administrator a written statement of reasons indicating the Authorized Claimant's ground for contesting the rejection along with copies of any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

(k)    The administrative determination of the Claims Administrator accepting and rejecting claims shall be presented by Lead Counsel to the Court in a motion for approval by the Court.

(l)    Without regard to whether a Proof of Claim is allowed, each Authorized Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to such Authorized Claimant's claim, and such Authorized Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Authorized Claimant's status as a Settlement Class Member and the validity and amount of the Authorized Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

(m)    Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall otherwise be bound by all of the terms of the Judgment (or

22

Alternative Judgment) to be entered in the Action and the releases provided for in this Stipulation, and will be barred from bringing any action against the Released Parties arising out of or relating to the Released Claims.

(n)    All proceedings with respect to the administration, processing, and determination of claims described in this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

(o)    After the Claims Administrator calculates the recognized losses of each Authorized Claimant, Lead Counsel shall file a motion for distribution of the Net Settlement Fund with the Court, requesting the Court (a) to authorize the payment from the Settlement Fund any as yet unpaid Notice and Administration Expenses; (b) to resolve (if it has not previously done so or been asked to do so) any objections with respect to any rejected or disallowed claims; and (c) approve the distribution of the Net Settlement Fund to the Authorized Claimants upon final resolution of any rejected or disallowed claims. Such motion shall not be filed until after all of the following conditions have been met: (i) the Effective Date has occurred; (ii) all claims have been processed; and (iii) all Authorized Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard by the Claims Administrator concerning such rejection or disallowance.

(p)    After the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their Distribution checks, but no earlier than six (6) months after the Distribution, Claims Administrator shall, if Lead Counsel, in consultation with Claims Administrator, determine that it is cost effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), in which any amounts remaining in the Net Settlement Fund after the Distribution, after deducting Claims Administrator's fees and expenses

23

incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to all Authorized Claimants in the Distribution who cashed their Distribution check and who would receive at least $10.00 from such re-distribution based on their pro rata share of the remaining funds. Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur until Lead Counsel, in consultation with Claims Administrator, determine that further re-distribution is not cost effective.  Thereafter, any balance which still remains in the Net Settlement Fund shall be donated, as a *cy pres* award, to a public interest cause approved by the Court.

(q)     No Person shall have any claim against Lead Plaintiffs, Lead Counsel, the Claims Administrator, any other Person designated by Lead Counsel, or any of the Released Parties based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  None of the Released Parties shall have any role in, or any liability, obligation, or responsibility for, the dissemination of the Notice (except as otherwise stated herein), the administration of the Settlement, or the distribution of the Settlement Fund, including with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; or (iii) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

(r)     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an

24

Authorized Claimant's claim set forth therein, is not an essential part of this Settlement and is to be considered by the Court separately from the Court's consideration of the fairness, adequacy, and reasonableness of the Settlement set forth in this Stipulation. Further, any other order or proceeding concerning or relating to the Plan of Allocation shall have no impact whatsoever on this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to this Stipulation.

### 6.    Lead Counsel's Attorneys' Fees and Expenses

(a)    Lead Counsel may submit to the Court a Fee and Expense Application for distributions from the Settlement Fund for: (i) an award of attorneys' fees; plus (ii) expenses incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred, subject to Court approval.

(b)    The fees and expenses awarded by the Court shall be payable to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses notwithstanding any objection thereto.

(c)    Any payment of attorneys' fees and expenses to Lead Counsel is subject to the obligation of Lead Counsel to make repayment to the Settlement Fund, or to Kiromic, if appropriate, of any paid amounts, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is not granted Final approval by the Court, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the Fee and Expense Award is reduced or reversed by Final non-appealable court order. Lead Counsel agrees that it is subject to the jurisdiction of the Court for the purpose of enforcing this paragraph. Lead Counsel shall make the appropriate refund or repayment in full no later than

thirty (30) business days after receiving notice of the termination of the Settlement pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the non-approval of the Settlement by Final non-appealable court order, or by notice of any reduction or reversal of the award of attorneys' fees and/or expenses by Final non-appealable court order.

(d)     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, to be paid out of the Settlement Fund, are not an essential part of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, adequacy, and reasonableness of the Settlement set forth in this Stipulation. Any order or proceeding relating to the Fee and Expense Application or Fee, or any appeal from any Fee and Expense Award or reversal or modification thereof, shall have no impact whatsoever on the Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Action set forth herein.

(e)     Any Fee and Expense Award granted by the Court shall be paid solely from the Settlement Fund. With the sole exception of Kiromic's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶ 2(a), the Released Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Lead Counsel.

**7.     Conditions of Settlement, Effect of Non-Approval**

(a)     The Effective Date of this Stipulation is the later of (i) the date of final payment into the Escrow Account, and (ii) the date of the Court's Final approval of the Settlement.

(b)     Upon the Effective Date, any and all remaining interest or right of Kiromic or any other Person who has made any payments in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

(c)     Unless otherwise ordered by the Court, in the event this Stipulation is not approved by the Court, within twenty (20) business days after written notification of such event

is sent by counsel for Kiromic or Lead Counsel to the Escrow Agent, the Settlement Fund (including any interest or earnings accrued thereon), less any claims administration or notice costs previously incurred by Lead Plaintiffs or their Claims Administrator, shall be refunded by the Escrow Agent pursuant to written instructions from Kiromic's Counsel pursuant to the terms of the Escrow Agreement and/or any further order of the Court. The Claims Administrator shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from Kiromic's Counsel or further order of the Court.  Further, in the event of non-approval of the Settlement, the Settling Parties shall be restored to their respective positions in the Action as of August 6, 2023, the day before the Term Sheet was signed. In such event, the terms and provisions of this Stipulation, with the exception of ¶¶ 1, 2(b) – 2(c), 6(c), 7(c), 8(a), 8(b), and 8(f) hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of attorneys' fees, expenses, and interest awarded by the Court to Lead Counsel shall have any impact whatsoever on this Stipulation.

8.      **Miscellaneous Provisions**

(a)      The provisions contained in this Stipulation, the Term Sheet, and any other agreement pursuant to the Settlement shall not be deemed a presumption, concession, or admission by any Defendant of any fault, liability, or wrongdoing as to any facts or claims that have been or might be alleged in the Action, or in any other action or proceeding.

(b)      Neither this Stipulation, Term Sheet, nor any other agreement pursuant to the Settlement, nor any act performed or document executed pursuant to or in furtherance of this

Stipulation and Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any claim or allegation related to this Action, or of any wrongdoing, liability, or misconduct of any kind by any Released Person; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; (iii) nor used or offered in any proceeding for any purpose, except to enforce the terms of the Term Sheet or this Stipulation or any other agreement pursuant to the Settlement, *provided, however,* that Defendants may file this Stipulation in any action that may be brought against them in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

(c)     Subject to the order of the Court, pending Final determination of whether the Settlement provided for in this Stipulation should be approved, Lead Plaintiffs and all Settlement Class Members are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution, or instigation of any action asserting any claims, whether related or unrelated to this Action, whether known, unknown, or otherwise, either directly, representatively, derivatively, or in any other capacity, against any of the Released Parties. If any claims related to this Action, whether known, unknown, or otherwise, are asserted against any Released Party in any court prior to Final approval of the Settlement, the Settling Parties shall cooperate in obtaining the withdrawal or dismissal of such litigation, including, where appropriate, joining in any motion to dismiss such litigation.

(d)     Lead Plaintiffs represent and warrant that Lead Plaintiffs are Settlement Class Members and that none of the Released Claims have been assigned, encumbered, or in any manner transferred in whole or in part.

(e)     This Stipulation, Term Sheet, and any other documents executed pursuant to this Settlement shall be binding upon, and insure to the benefit of, the successors and assigns of the parties hereto; provided, however, in the event of any potential or actual conflict between this Stipulation or the Term Sheet, the Parties agree that this Stipulation shall control.

(f)     All agreements made and orders entered during the course of the Action and all Settlement-related proceedings relating to the confidentiality of information shall survive this Stipulation, the Term Sheet, and any other document executed pursuant to this Settlement.

(g)     The Settling Parties intend this Settlement to be a final and complete resolution of all Released Claims and Settled Defendants' Claims. The Settlement resolves Released Claims and Settled Defendants' Claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any Released Claim and Settled Defendants' Claim, or any defense thereto. The Settling Parties agree that, and the Judgment will contain a finding that, during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties further agree that the parties and their counsel acted in good faith with respect to the Action and will not assert otherwise. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis.

(h)     With the exception of the Plan of Allocation, all Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

(i)     This Stipulation may not be terminated, modified, or amended, except by an agreement in writing signed by the Parties or their respective counsel, or the Court.

29

(j)      This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Parties hereto concerning the Settlement and this Stipulation and its exhibits. By executing this Stipulation, and as a condition precedent to any obligations or liabilities of the Parties, each Party expressly acknowledges, represents, and warrants that (i) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Stipulation; (ii) has been provided with the opportunity to discuss all aspects of this Settlement and negotiations relating thereto with legal counsel of its own choosing; (iii) has made its own investigation of the facts, has had a full opportunity to review the terms of this Settlement, and has and is relying solely upon its own knowledge and the advice of its own legal counsel; (iv) has carefully read and understood all of the provisions of this Stipulation; (v) is entering into this Stipulation freely and voluntarily; (vi) knowingly waives any claim that this Stipulation was induced by any misrepresentation, omission, or nondisclosure and any right to rescind or avoid this Stipulation based upon presently existing facts, whether known or unknown; (vii) is the lawful owner of the Released Claims or Settled Defendants' Claims released in this Stipulation; (viii) has full capacity and authority to settle, compromise, and release the Released Claims or Settled Defendants' Claims released herein and to enter into this Stipulation; (ix) no other person or entity has inherited, acquired, or been assigned, or will in the future inherit, acquire, or have any right to assert any portion of the Released Claims or Settled Defendants' Claims released in this Stipulation; and (x) knows of no other person or entity that intends to assert a Released Claim or Settled Defendants' Claim by, through, or under, or on its behalf relating to the Released Claims and Settled Defendants' Claims released in this Settlement Agreement. By entering into this Stipulation, each Party assumes the risk of any mistake of law or fact.  If any Party should later discover that any fact relied upon in entering into this Stipulation is not true, or the Party's understanding of the facts or the law was incorrect, such Party shall not be entitled to recission of the Stipulation by reason

30

thereof. Each Party stipulates that it is relying upon these representations and warranties in entering into this Stipulation. These representations and warranties shall survive the execution of this Stipulation.

(k)    Except as otherwise provided herein, each party shall bear its own costs, inclusive of attorneys' fees.

(l)    Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and is also expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which Lead Counsel deems appropriate.  For the avoidance of doubt, no such modifications or amendments shall be made without the express written agreement of Kiromic's Counsel. Each counsel or other Person executing this Stipulation and any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

(m)    This Stipulation may be executed in one or more counterparts and the signatures may be by facsimile or electronically. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

(n)    Any failure by the Settling Parties to insist upon the strict performance by any other Settling Party of any provision of this Stipulation shall not be deemed a waiver of any of the provisions thereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

(o)    The waiver, express or implied, by any Party of any breach or default by any other Party in the performance of such Party of its obligations under this Stipulation shall not

be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

(p)    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation. Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court, unless otherwise required by an order of the Court.

(q)    This Stipulation and the Exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles, except to the extent that federal law requires that federal law governs. In the event of Kiromic's payment default and Lead Counsel executing the Confession of Judgment against Kiromic, then that Confession of Judgment shall be deemed executed in and governed by the laws, procedures, and Superior Court Rules of the State of Delaware. The Confession of Judgment shall be deemed voided upon the earlier of completion of all payments as described in section 2, above, or the Court's non-approval of the settlement.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated as of September 29, 2023.

32

GAINEY McKENNA & EGLESTON

By:   */s/ Thomas J. McKenna*
      Thomas J. McKenna
      Gregory M. Egleston
      501 Fifth Avenue, 19th Floor
      New York, NY 10017
      Tel: (212) 983-1300
      Fax: (212) 983-0383
      Email: tjmckenna@gme-law.com
      Email: egleston@gme-law.com

      *Lead Counsel for Lead Plaintiffs*


SIDLEY AUSTIN LLP

By:   *Alex J. Kaplan*
      Alex J. Kaplan
      787 Seventh Avenue
      New York, NY 10019
      Tel: (212) 839-5300
      Fax: (212) 839-5599
      Email: ajkaplan@sidley.com

      *Attorneys for Defendant Kiromic BioPharma, Inc.*

33